MICHAEL MOISEYEV (*pro hac vice*)
michael.moiseyev@weil.com
CHANTALE FIEBIG (*pro hac vice*)
chantale.fiebig@weil.com
JEFFREY H. PERRY (*pro hac vice*)
jeffrey.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

DIANE P. SULLIVAN (*pro hac vice*)
diane.sullivan@weil.com
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
Telephone: (609) 986-1100
Facsimile: (609) 986-1199

Attorneys for Defendant META PLATFORMS, INC.

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:22-cv-04325-EJD |
| Plaintiff, | **PARTIES' JOINT STATEMENT REGARDING DISCOVERY DISPUTES** |
| v. | |
| META PLATFORMS, INC., et al., | Dept.: Courtroom 6 – 4th Floor<br>Honorable Edward J. Davila<br>Magistrate Judge Susan van Keulen |
| Defendants. | |

Defendants Meta Platforms, Inc. and Within Unlimited, Inc. move to compel responses from the FTC to Defendants' document requests and interrogatories. The Parties have met and conferred extensively but were unsuccessful in resolving the disputes. The FTC's objections and responses are attached as **Exhibit 1**. A joint chart containing the parties' respective proposed compromises is attached as **Exhibit 2**. Party fact discovery closes on October 26, 2022, 35 days from the date of this filing, and non-party discovery closes on November 18, 2022, 58 days from the date of this filing.

## DEFENDANTS' POSITION

### I. Basic Factual Discovery Regarding the FTC's Alleged Relevant Antitrust Markets

The FTC cannot prevail unless it can prove its allegations that "VR fitness apps" and "Dedicated VR fitness apps" are properly defined. *See FTC v. Freeman Hosp.*, 69 F.3d 260, 268 n.12 (8th Cir. 1995) (affirming denial of preliminary injunction for failure to prove relevant market). But despite having the benefit of its investigation, the FTC has evaded interrogatories about what it contends differentiates the apps in these putative markets from others, and why it contends that apps with those features or characteristics lack reasonable substitutes. FTC Response to Interrogatories Nos. 2-5. Because this evasion is improper, the Court should order supplementation.

The FTC's responses duck the questions asked, refusing to squarely state *the FTC's* factual basis for *its* positions about the putative relevant markets. The FTC asserts that its "preliminary [market share] analysis" relied on certain lists Meta made (for a purpose having nothing to do with market definition) and keyword searches of Meta's app store. Crucially, however, the FTC affirmatively disclaims adopting *any* of this as its *own* position about market definition. *E.g.*, FTC Response to Interrogatory No. 5 (stating that the FTC "does not necessarily agree with" the characterizations on which this analysis relied); *supra* n. 2 (recasting the FTC's position as a reservation of rights to change its market definition position). Moreover, the FTC's responses leave many critical questions unanswered. *E.g.*, FTC Response to Interrogatory No. 5 (failing to explain basis for excluding apps with obvious dedicated fitness benefits, such as "Fitness Bird" and "Gym Class," from "VR dedicated fitness applications" market); FTC Supp. Response to Interrogatory No. 3 (stating generally that "Meta's ordinary course classifications of VR fitness applications" is the basis for the putative markets). And while the FTC's responses refer Defendants to the Complaint for its market definition, those allegations also fail to show

the contours of the alleged markets. *See, e.g.*, Compl. ¶58 (stating without explanation that apps with a "*lower* or *negligible* exercise effect" are excluded from the "VR Fitness App" market) (emphasis added).

The FTC objects that market definition will be a subject of fact and expert discovery. Defendants must be able to target their own discovery – especially of non-parties – and prepare their own expert reports *in a short period*. *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins.*, 166 F. Supp. 3d 988, 997 (N.D. Cal. 2015) ("Plaintiff must provide enough facts [about the relevant market] to enable the opposing party to defend itself effectively."). Further, the FTC (unlike a private plaintiff) "has the benefit of having conducted a lengthy investigation" and was "required to have[] adequate information to support the contentions in its Complaint," including its market-definition allegations. *SEC v. Blackwell*, 2004 WL 6829614, at *3 (S.D. Ohio Jan. 15, 2004). The FTC's cases (*see supra* pp. 4-5) are inapposite because they did not involve expedited preliminary injunction proceedings. This case is not at an "early" stage as the FTC had almost a year of one-sided discovery, fact discovery closes October 26, and Defendants' expert reports are due November 11, 2022.

Rule 26 requires the FTC to identify the information that supports its positions now; if fact discovery yields other relevant information, that is what Rule 26(e) supplementation is for. *See FTC v. Meta Platforms, Inc.*, No. 20-3590 (JEB), Dkt. No. 165 (D.D.C. Aug. 1, 2022) (compelling FTC to supplement market-definition interrogatory response). Either the FTC had a position when it chose to challenge this acquisition and support for it (in which case it must disclose to Defendants' its *unqualified* position and the full basis for it in specific Meta documents or otherwise), or it does not (in which case it must admit that). Rule 26 requires the FTC to say which is true; its current non-answers are improper.

## II.   Discovery Regarding Facts Third Parties Told the FTC About the Acquisition

The FTC's limited production of documents from its investigative file shows that the FTC communicated with approximately 44 third-party companies in connection with its investigation of the acquisition. Yet the FTC did not allege a *single third party* complained about, or opposed the acquisition, and it produced *no* declaration or testimony from anyone. Now, in response to Defendants' requests for the FTC's communications with third parties about the acquisition (RFP Nos. 1-3; Interrogatory No. 1), the FTC has produced only scheduling and non-substantive correspondence. It has refused to produce documents reflecting the *substantive facts provided by the third parties*, claiming instead that underlying

facts communicated by third parties are necessarily privileged.  The FTC is wrong.

First, the FTC has not provided the required declaration to assert deliberative process privilege, and its belated offer to provide one, if ordered, is insufficient to withhold relevant information. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 602 (N.D. Cal. 2009).  Second, factual information that third parties conveyed to the FTC is not privileged. *See United States v. Dean Foods Co.*, No. 2:10-cv-00059-JPS, (E.D. Wis. Oct. 8, 2010), Dkt. No. 54 (overruling work-product objection and compelling government to provide factual information from its notes obtained from third parties).  Third, regardless of whether the deliberative process privilege and work product doctrine extend to such documents (notably, Defendants are not seeking FTC internal memoranda incorporating these third-party facts), none of the cases cited by the FTC holds that these privileges are absolute, and Defendants have demonstrated a substantial need for the factual information that third parties have conveyed to the FTC. *In re Enf't of Subpoena Issued by F.D.I.C.*, No. 3:11-MC-80066-CRB, 2011 WL 2559546, at *3 (N.D. Cal. June 28, 2011).  Requiring Defendants to attempt to duplicate the FTC's long pre-complaint investigation on this case's compressed discovery schedule is unduly burdensome on Defendants and third parties.  Defendants' compromise—asking the FTC to state in an interrogatory response the facts that this small group of third parties told the FTC about the acquisition—is narrow and easily separable from any purported work product in the FTC's notes.

## PLAINTIFF'S POSITION

**I.      The FTC Has Fully Answered Meta's Relevant Market Interrogatories**

The FTC has provided the factual bases for the two relevant markets in the FTC's Complaint—the VR Fitness App market and the VR Dedicated Fitness App market.  Specifically, the FTC has produced the facts underlying its current market analysis as reflected in its Emergency Motion for a Temporary Restraining Order, as well as the underlying data and calculations in the Snyder Declaration that accompanied that motion.[1]  The FTC has also identified every application that it currently contends is in the relevant markets, and provided the methodology and criteria for making that assessment.

---

[1] The FTC's statement that it does not necessarily agree with app "characterizations by Meta in its submissions to the FTC" merely reserved the FTC's rights to continue to develop its case based on the evidence as discovery advances, which is consistent with the Federal Rules.  Fed. R. Civ. P. 26(e).

1  Finally, the FTC has identified all new market entrants to date. That is all Defendants' requests seek, and the FTC has no additional non-privileged information to provide at this stage.

Defendants bear the burden to justify early use of contention interrogatories and must "show that there is good reason to believe that answers to [their] well-tailored questions will contribute meaningfully to clarifying the issues in the case" such as by "narrowing the scope of the dispute." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 388-39 (N.D. Cal. 1985). Defendants' vague assertions that the FTC's responses leave "critical questions unanswered" fail to meet this standard and strain credulity. Indeed, Meta itself classifies VR apps as "dedicated" and "incidental" fitness apps, indicating that Meta is well-positioned to seek discovery now to test the FTC's market definitions. *United States v. Bazaarvoice, Inc.*, 2013 WL 1739472, at *1 (N.D. Cal. Apr. 22, 2013) (denying motion to compel when responses relied on defendant's business records). Moreover, it is well-settled that a plaintiff need not put forward—even at the merits stage—exacting details about the contours of its market delineations. *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 611 (1953).

Behind a cloak of a request for additional "facts," what Defendants actually—and improperly— seek are additional *analysis and explanations* that support the market definitions. *See supra* at 1-2 (complaining about assertions "without explanation" or the FTC "failing to explain"). The FTC properly objected to Defendants' inquiries into the FTC's analysis as either premature expert disclosure or attorney work product. *E.g., Heredia v. Sunrise Senior Living LLC*, 2020 WL 12584277, at *5 (C.D. Cal. July 20, 2020). On this score, Defendants' reliance on *FTC v. Meta Platforms, Inc.*, No. 20-3590 (JEB), Dkt. No. 165 (D.D.C. Aug. 1, 2022) is misplaced. There, the Court instructed the FTC to provide information that could be relevant to performing a market share computation based on the time users spend engaging in certain activities. Here, the FTC has already provided all information necessary for Defendants to understand what applications are in the relevant markets and to compute market shares. Likewise, *S.E.C. v. Blackwell*, 2004 WL 6829614 (S.D. Ohio Jan. 15, 2004), is inapposite. Unlike that case, where the SEC declined to provide any narrative response after a two-year investigation, *id.* at *3, the FTC has produced robust narrative responses—and done so after an accelerated review under the Hart-Scott-Rodino Act and prior to any depositions or meaningful document discovery in this litigation.

In sum, the FTC has provided the factual bases, to date, to support its current position regarding

market definitions.  To the extent the FTC learns additional facts to support its market definition, the FTC has agreed to provide that information in due course.

**II.       Defendants Are Not Entitled to a Summary of the FTC's Notes and Memoranda**

The FTC's memoranda concerning third-party interviews are protected by the attorney work-product and deliberative process privileges.  *See Hatamian v. Adv. Micro Devices, Inc.*, 2016 WL 2606830, *3 (N.D. Cal. May 6, 2016); *Oceana v. Ross*, 2020 WL 2128853, *1 (N.D. Cal. May 5, 2020) (van Keulen, M.J.).  Not surprisingly, courts have almost universally rejected similar discovery demands. *See, e.g., FTC v. Staples*, 2016 WL 259642, *1 (D.D.C. Jan. 21, 2016); *U.S. v. US Airways*, 2013 WL 12341600, at *3 (D.D.C. Oct. 10, 2013); *U.S. v. Nat'l Cinemedia*, 1:14-cv-08732 (S.D.N.Y. Feb. 5, 2015) (Dkt. No. 50 at 2).  For instance, the *Staples* court held in nearly identical circumstances that the FTC's interview memoranda were protected work product and need not be produced.  2016 WL 259642, at *1, 3-4.  Notably, the *Staples* court assumed (without deciding) that the relevant memoranda were "fact work product."  *Id.* at *3, * 4 at n. 4.  In this circuit, however, attorney memoranda are "opinion work product," *Hatamian*, 2016 WL 2606830, at *3, and "receive[] greater protection than ordinary work product and [are] discoverable only upon a showing of rare and exceptional circumstances." *Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005).  *Staples* also concluded that the FTC need not compile "factual information" from these interviews in response to a nearly identical interrogatory because defendants could obtain that information from the third parties themselves—even under a compressed timeline.  *Id.* at *3-4.  So too here.

Defendants' primary authority, *Dean Foods*, is unpersuasive.  In that case, the court determined that no work product protection applied.  That conclusion is foreclosed by this circuit's authority and has been rejected by later courts.  *See Nash v. U.S. Dep't of Justice*, 310 Fed. App'x 165, 166 (9th Cir. 2009); *Staples*, 2016 WL 259642 at *4 n.3 (citing *US Airways*).  *Dean Foods* also failed to consider deliberative process privilege, which applies here.  *EEOC v. Chipotle Mex. Grill*, 2019 WL 3811890, at *3 (N.D. Cal. Aug. 1, 2019).  Defendants complain the FTC has not yet provided a declaration attesting that deliberative process privilege applies, but they first made this request on September 19, 2022.  If a declaration would be helpful to the Court, the FTC will provide one promptly.

| | | |
|---|---|---|
| 1 | Dated: September 21, 2022 | Respectfully submitted, |
| 2 | | WEIL, GOTSHAL & MANGES LLP |
| 3 | | By: */s/ Bambo Obaro* |
| 4 | | BAMBO OBARO (Bar No. 267683) |
| | | bambo.obaro@weil.com |
| 5 | | WEIL, GOTSHAL & MANGES LLP |
| | | 201 Redwood Shores Parkway, 6th Floor |
| 6 | | Redwood Shores, CA 94065-1134 |
| | | Telephone: (650) 802-3000 |
| 7 | | Facsimile: (650) 802-3100 |
| 8 | | MICHAEL MOISEYEV (*pro hac vice*) |
| | | michael.moiseyev@weil.com |
| 9 | | CHANTALE FIEBIG (*pro hac vice*) |
| | | chantale.fiebig@weil.com |
| 10 | | JEFFREY H. PERRY (*pro hac vice*) |
| | | jeffrey.perry@weil.com |
| 11 | | WEIL, GOTSHAL & MANGES LLP |
| | | 2001 M Street, NW, Suite 600 |
| 12 | | Washington, DC 20036 |
| | | Telephone: (202) 682-7000 |
| 13 | | Facsimile: (202) 857-0940 |
| 14 | | DIANE P. SULLIVAN (*pro hac vice*) |
| | | diane.sullivan@weil.com |
| 15 | | WEIL, GOTSHAL & MANGES LLP |
| | | 17 Hulfish Street, Suite 201 |
| 16 | | Princeton, NJ 08542 |
| | | Telephone: (609) 986-1100 |
| 17 | | Facsimile: (609) 986-1199 |
| 18 | | ERIC S. HOCHSTADT (*pro hac vice*) |
| | | eric.hochstadt@weil.com |
| 19 | | WEIL, GOTSHAL & MANGES LLP |
| | | 767 Fifth Avenue |
| 20 | | New York, NY 10153 |
| | | Telephone: (212) 310-8000 |
| 21 | | Facsimile: (212) 310-8007 |
| 22 | | Mark C. Hansen (*pro hac vice*) |
| | | mhansen@kellogghansen.com |
| 23 | | Geoffrey M. Klineberg (*pro hac vice*) |
| | | gklineberg@kellogghansen.com |
| 24 | | Aaron M. Panner (*pro hac vice*) |
| | | apanner@kellogghansen.com |
| 25 | | KELLOGG, HANSEN, TODD, FIGEL & |
| | | FREDERICK, P.L.L.C. |
| 26 | | 1615 M Street, N.W., Suite 400 |
| | | Washington, D.C. 20036 |
| 27 | | Telephone: (202) 326-7900 |
| 28 | | Attorneys for Defendant META PLATFORMS, INC. |

| | |
|---|---|
| 1 | |
| 2 | Christopher J. Cox (Bar No. 151650)<br>HOGAN LOVELLS US LLP |
| 3 | 855 Main St., Suite 200<br>Redwood City, CA 94063 |
| 4 | Telephone No.:  (650) 463-4000<br>Facsimile No.:  (650) 463-4199 |
| 5 | chris.cox@hoganlovells.com |
| 6 | Lauren Battaglia (*pro hac vice*)<br>Logan M. Breed (*pro hac vice*) |
| 7 | Benjamin Holt (*pro hac vice*)<br>Charles A. Loughlin (*pro hac vice*) |
| 8 | HOGAN LOVELLS US LLP<br>Columbia Square |
| 9 | 555 Thirteenth St., NW<br>Washington, D.C. 20004 |
| 10 | Telephone No.:  (202) 637-5600<br>Facsimile No.:  (202) 637-5910 |
| 11 | lauren.battaglia@hoganlovells.com<br>logan.breed@hoganlovells.com |
| 12 | benjamin.holt@hoganlovells.com<br>chuck.loughlin@hoganlovells.com |
| 13 | Counsel for Within Unlimited, Inc. |

*/s/ Susan A. Musser*
Susan A. Musser
Abby L. Dennis
Peggy Bayer Femenella
Joshua Goodman
Jeanine Balbach
Michael Barnett
E. Eric Elmore
Justin Epner
Sean D. Hughto
Frances Anne Johnson
Andrew Lowdon
Lincoln Mayer
Adam Pergament
Kristian Rogers
Anthony R. Saunders
Timothy Singer
James H. Weingarten

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2381

Erika Wodinsky
90 7th Street, Suite 14-300

1
2                                                    San Francisco, CA 94103
                                                     Tel: (415) 848-5190
3
                                                     *Counsel for Plaintiff Federal Trade Commission*
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28