MICHAEL MOISEYEV (*pro hac vice*)
michael.moiseyev@weil.com
CHANTALE FIEBIG (*pro hac vice*)
chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

MARK C. HANSEN (*pro hac vice*)
mhansen@kellogghansen.com
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

Attorneys for Defendant META PLATFORMS, INC.

Christopher J. Cox (Bar No. 151650)
HOGAN LOVELLS US LLP
855 Main St.
Suite 200
Redwood City, CA 94063
Telephone No.: (650) 463-4000
Facsimile No.: (650) 463-4199
chris.cox@hoganlovells.com

Attorney for Defendant WITHIN UNLIMITED, INC.

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:22-cv-04325-EJD |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO FTC'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES** |
| v. | |
| META PLATFORMS, INC., et al., | |
| Defendants. | Date:   October 21, 2022<br>Time:  11:00 a.m.<br>Dept.:  Courtroom 4 – 5th Floor<br>Judge: Honorable Edward J. Davila |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................4

    A.    META'S REPEATED CHALLENGES TO CHAIR KHAN'S
         PARTICIPATION ...................................................................................4

    B.    THE FTC REFUSES TO PRODUCE DISCOVERY ON ITS AFFIRMATIVE
         CASE AND META'S DEFENSES ..........................................................6

LEGAL STANDARD....................................................................................................9

ARGUMENT ..............................................................................................................10

I.     THE COURT SHOULD NOT STRIKE META'S AFFIRMATIVE DEFENSES [#14,
      17, 18, 19, 20, 21] ............................................................................................10

    A.    BIAS-RELATED DEFENSES [#18, 19, 21] ......................................11

         1.    The Bias Defenses Go To Core Issues In This Case And Are Within This
              Court's Jurisdiction....................................................................11

         2.    The Bias Defenses Are Well-Pleaded And Plausible ...............................15

    B.    STRUCTURAL ARTICLE II DEFENSE [#17].....................................19

    C.    EQUITABLE DEFENSES [#20].........................................................20

    D.    SELECTIVE ENFORCEMENT [#14].................................................23

II.   THE FTC'S REQUEST TO STRIKE WITH PREJUDICE IS UNFOUNDED ..............24

CONCLUSION...........................................................................................................24

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Abbott Labs v. Gardner*,
   387 U.S. 136 (1967)................................................................................................................ 20

5

*Am. Cyanamid Co. v. FTC*,
   363 F.2d 757 (6th Cir. 1966) .................................................................................. 12, 17, 23

6

7

*Am. Gen. Ins. Co. v. FTC*,
   589 F.2d 462 (9th Cir. 1979) ................................................................................................ 18

8

9

*Axon Enter., Inc. v. FTC*,
   986 F.3d 1173 (9th Cir. 2021) .......................................................................................*passim*

10

*CFTC v. Mintco LLC*,
   2016 WL 3944101 (S.D. Fla. May 17, 2016) .................................................................... 21

11

12

*Cinderella Career & Finishing Schs., Inc. v. FTC.*,
   425 F.2d 583 (D.C. Cir. 1970).......................................................................................*passim*

13

14

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019)................................................................................................... 7, 16

15

*EEOC v. UPS, Inc.*,
   2017 WL 9482105 (E.D.N.Y. Mar. 9, 2017) .................................................................... 21

16

17

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) .................................................................................................................. 14

18

19

*Erceg v. LendingClub Corp.*,
   475 F. Supp. 3d 1071 (N.D. Cal. 2020) ................................................................... 9, 17, 21

20

*Firearms Pol'y Coal. Second Amend. Def. Comm. v. Harris*,
   192 F. Supp. 3d 1120 (E.D. Cal. 2016)............................................................................. 15

21

22

*Fodera v. Equinox Holdings, Inc.*,
   2021 WL 23294 (N.D. Cal. Jan. 4, 2021) ................................................................... 16, 17

23

24

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ............................................................................... 9

25

*FTC v. Facebook, Inc.*,
   581 F. Supp. 3d 34 (D.D.C. 2022) ............................................................................... 17, 19

26

27

*FTC v. Golden Empire Mortg., Inc.*,
   2009 WL 4798874 (C.D. Cal. Dec. 10, 2009) ............................................................. 13, 16

28

*FTC v. Simeon Mgmt. Corp.*,
   532 F.2d 708 (9th Cir. 1976) ................................................................................. 11

*FTC v. Staples, Inc.*,
   190 F. Supp. 3d 100 (D.D.C. 2016) ...................................................................... 12

*FTC v. Staples, Inc.*,
   239 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................... 12

*FTC v. Warner Commc'ns, Inc.*,
   742 F.2d 1156 (9th Cir. 1984) ........................................................... 11, 13, 15, 22

*FTC v. Weyerhaeuser Co.*,
   665 F.2d 1072 (D.C. Cir. 1981) ............................................................................ 22

*FTC v. World Wide Factors, Ltd.*,
   882 F.2d 344 (9th Cir. 1989) ................................................................................... 8

*GEOMC Co. v. Calmare Therapeutics Inc.*,
   918 F.3d 92 (2d Cir. 2019) ............................................................................... 2, 10

*Goobich v. Excelligence Learning Corp*,
   2020 WL 1503685 (N.D. Cal. Mar. 30, 2020) ........................................ 10, 16, 24

*Hatamian v. Advanced Micro Devices, Inc.*,
   2015 WL 511175 (N.D. Cal. Feb. 6, 2015) ................................................... 10, 24

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
   816 F.3d 550 (9th Cir. 2016) ........................................................................... 12, 19

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ........................................................................................ 19, 20

*Jarkesy v. SEC*,
   803 F.3d 9 (D.C. Cir. 2015) .................................................................................. 14

*Kohler v. Flava Enterprises, Inc.*,
   779 F.3d 1016 (9th Cir. 2015) ................................................................................. 9

*Lindsey v. Normet*,
   405 U.S. 56 (1972) .......................................................................................... 13, 20

*Martin-Marietta Corp. v. Bendix Corp.*,
   690 F.2d 558 (6th Cir. 1982) ................................................................................. 15

*N.L.R.B. v. RELCO Locomotives, Inc.*,
   734 F.3d 764 (8th Cir. 2013) ................................................................................. 13

*Neo4j, Inc. v. Graph Found. Inc.*,
   2020 WL 2793577 (N.D. Cal. 2020) ................................................................. 9, 22

*Olga C. v. Cnty. of Santa Clara*,
    2017 WL 4642449 (N.D. Cal. Oct. 17, 2017)........................................................... 2, 9, 10

*Oracle v. Micron Tech., Inc.*,
    817 F. Supp. 2d 1128 (N.D. Cal. 2011) ...................................................................... 2, 10

*In re Otto Bock HealthCare North America, Inc.*,
    2019 WL 5957363 (Nov. 1, 2019)..................................................................................... 20

*SEC v. Hold Bros. On-line Inv. Servs. LLC*,
    216 F. Supp. 3d 422 (D.N.J. 2016) ................................................................................. 23

*SEC v. Nacchio*,
    438 F. Supp. 2d 1266 (D. Colo. 2006) ........................................................................... 21

*SEC v. Nat. Diamonds Inv. Co.*,
    2020 WL 95065 (S.D. Fla. Jan. 8, 2020) ....................................................................... 21

*SEC v. Ripple Labs, Inc.*,
    2022 WL 748150 (S.D.N.Y. Mar. 11, 2022) ................................................................. 10

*Seila L. LLC v. CFPB*,
    140 S. Ct. 2183 (2020).......................................................................................................... 19

*Stivers v. Pierce*,
    71 F.3d 732 (9th Cir. 1995) ........................................................................................*passim*

*Texaco, Inc. v. FTC*,
    336 F.2d 754 (D.C. Cir. 1964)........................................................................................... 19

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994).............................................................................................................. 14

*TRW, Inc. v. FTC*,
    647 F.2d 942 (9th Cir. 1981) ....................................................................................... 20, 21

*United States v. Armstrong*,
    517 U.S. 456 (1996).............................................................................................................. 23

*United States v. Innovative Biodefense*,
    2019 WL 6971054 (N.D. Cal. Aug. 22, 2019) ...................................................... 20, 23

*United States v. Sellers*,
    906 F.3d 848 (9th Cir. 2018) ............................................................................................ 24

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016)..................................................................................................... 16, 18, 21

*Wyshak v. City Nat'l Bank*,
    607 F.2d 824 (9th Cir. 1979) ............................................................................................... 9

**Statutes and Regulations**

15 U.S.C. § 53(b) ...................................................................................................... 1, 18

16 C.F.R. § 3.26 ........................................................................................................... 18

16 C.F.R. § 4.17 ............................................................................................................. 6

**Other Authorities**

Fed. R. Civ. P. 12(f) ............................................................................................... *passim*

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 10, 24

5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1380 (3d ed., Apr. 2022 update) .................................. 6

5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1381 (3d ed., Apr. 2022 update) .................................. 9

1

**PRELIMINARY STATEMENT**

2      The Federal Trade Commission seeks a preliminary injunction to prevent Meta Platforms, Inc.

3 from closing its acquisition of a virtual reality startup (Within Unlimited, Inc.) until after it adjudicates

4 a pending administrative challenge to the transaction. To prevail, the FTC must make "a proper showing

5 that, weighing the equities," both public and private, "and considering the Commission's likelihood of

6 ultimate success," the requested injunction "would be in the public interest." 15 U.S.C. § 53(b)(2). As

7 Defendants will prove at the evidentiary hearing, the FTC's antitrust claims are inconsistent with settled

8 law and mischaracterize the dynamic competition Meta's virtual reality offerings face at every turn; the

9 Court should reject the FTC's bid for an injunction on that ground alone.

10     But the FTC's bid for a preliminary injunction fails for another, independently sufficient reason:

11 Lina Khan, the Chair of the FTC, has made numerous public statements that demonstrate her bias against

12 Meta and prejudgment that Meta can never be allowed to acquire another company, and thus her inability

13 to fairly adjudicate Meta's proposed acquisition of Within. Her participation, both as the deciding vote

14 to authorize this case (reportedly over the contrary recommendation of the FTC Staff) and as an

15 adjudicator in the FTC's Part 3 proceeding, has irrevocably tainted the federal-court lawsuit and the

16 related administrative proceeding, such that any order enjoining or prohibiting the Within acquisition

17 cannot be entered or survive appeal as a matter of law. *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir.

18 1995) (agency official acting as adjudicator must recuse if a disinterested observer would conclude she

19 has prejudged the case); *Cinderella Career & Finishing Schs., Inc. v. FTC.*, 425 F.2d 583 (D.C. Cir.

20 1970) (reversing FTC judgment where biased commissioner participated in the administrative

21 proceeding). Even a neutral FTC would have a very slim chance of "ultimate success" with these

22 theories, and *this* FTC can never issue an administrative judgment barring the transaction that an Article

23 III court could let stand on appeal. Further, it cannot demonstrate a balance of the equities in its favor,

24 when the case is tainted by patently improper and inequitable conduct.

25     Chair Khan's continued participation in this proceeding, notwithstanding her actual and apparent

26 bias, is the context for the FTC's motion to strike certain of the affirmative defenses asserted by

27 Defendants. For obvious reasons, the FTC wishes to remove the issue of Chair Khan's bias from the case

28 and thereby avoid independent judicial examination of both the improper manner in which the case was

1  commenced and the inequitable and unconstitutional nature of a proceeding before an adjudicator who
2  has inarguably prejudged the transaction. The FTC is also, improperly, using the motion to strike as the
3  basis for withholding relevant and discoverable evidence in this litigation, including documents that
4  would further establish Chair Khan's bias. But the FTC has no valid grounds for hiding its misconduct
5  from this Court's scrutiny, and its attempt to paper over that misconduct only highlights the need to have
6  these issues resolved in a fair and constitutionally appropriate forum.

7      In a word, the FTC's argument that the Court should strike certain affirmative defenses is
8  meritless. Motions to strike are granted only if "it is clear that the matter to be stricken could have no
9  possible bearing on the subject matter of the litigation." *Olga C. v. Cnty. of Santa Clara*, 2017 WL
10 4642449, at *3 (N.D. Cal. Oct. 17, 2017) (Davila, J.) (citation omitted); *Oracle v. Micron Tech., Inc.*,
11 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011) ("A court must deny the motion to strike if there is any
12 doubt whether the allegations in the pleadings might be relevant in the action."). Chair Khan's bias goes
13 to the issues this Court must decide: likelihood of success on the merits and balance of the equities. The
14 affirmative defenses that the FTC seeks to strike clearly have a bearing on the subject matter of this
15 litigation. The FTC has offered no valid reason for striking them, and its motion must be denied.

16     ***First***, the FTC argues that Defendants' affirmative defenses are inadequately pleaded. But the
17 FTC has ample notice of the facts underlying the defenses, which is all Rule 12(f) requires. In its Answer,
18 Meta refers to Chair Khan's public statements showing her bias and prejudgment of this matter, and
19 explains the basis of the defenses arising from her disqualification, citing applicable case law. None of
20 this is a surprise to the FTC, as Meta also cross-references a recusal petition that has been pending before
21 the Commission since before this lawsuit was authorized or filed, and which lays out the facts in even
22 more detail. Further, the pleading standard for affirmative defenses is liberal, and the law favors
23 resolution on the merits. To the extent the *Twombly* plausibility standard applies to affirmative defenses,
24 it does not require the same specificity as complaint allegations, *see GEOMC Co. v. Calmare
25 Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019), and Meta more than meets that standard here. The
26 Court should reject the FTC's cursory arguments to the contrary.

27     ***Second***, as a fallback, the FTC argues that this Court lacks jurisdiction to hear Defendants'
28 constitutional defenses under *Axon*. This argument misapprehends both the defenses asserted and the

import of *Axon*. The plaintiff there, knowing the FTC would imminently commence an administrative proceeding against it, filed its *own* action in district court to enjoin the administrative proceeding on various constitutional grounds (among them, the patent unfairness of a tribunal in which the FTC has rigged the rules to emerge as the victor every time). The Ninth Circuit held that the district court lacked jurisdiction to entertain those arguments, finding that they could be addressed in the circuit court of appeals after an agency judgment. The Supreme Court has granted review of the *Axon* ruling. But even if *Axon* remains good law, Meta is not seeking to enjoin anything; it is seeking to defend itself, appropriately, on the ground that the FTC cannot prevail on the merits of its challenge to the Within transaction where the entire proceeding has been tainted by the improper participation of a biased adjudicator. The Court here must make a predictive judgment, which necessarily involves not only the agency's likelihood of affirming its own decision to block the merger (a near certainty, as the *Axon* court noted), but also the likelihood of a Commission vote to block the acquisition—with Chair Khan among the adjudicators—surviving appeal (nil, according to settled law). That defect, which makes it both *unlikely* the agency will succeed through appeal and *inequitable* to grant an injunction in these circumstances, goes directly to issues the Court must decide in this matter.

Accordingly, the FTC's motion to strike is not proper under Rule 12(f). It fails to account for the applicable liberal pleading standards, and its jurisdictional arguments are specious. Moreover, even if any of the FTC's arguments gained traction, there would be no basis for dismissal "with prejudice"; rather, Meta can and should be given leave to amend. But again, this motion is not really a challenge to Meta's pleading at all. Rather, the FTC is trying to convince this Court to artificially narrow the issues for trial and conceal discoverable evidence—so that it can seek extraordinary equitable relief without having to carry its burden on likelihood of success or on the equitable factors. Most importantly, the FTC does not want to explain—to Meta, this Court, or the public—how Chair Khan could possibly continue to participate in this matter notwithstanding her actual and apparent bias, which is disqualifying under the standard the FTC itself has identified as applicable to proceedings like this one. The Court should reject this gamesmanship and deny the FTC's motion.

1

## **BACKGROUND**

2

### A.    Meta's Repeated Challenges to Chair Khan's Participation

3

Chair Khan's anti-Meta statements and her objections to all future Meta acquisitions regardless

4

of the merits—which form the basis of the affirmative defenses that the FTC now seeks to strike—are

5

no surprise to, and are well understood by, the FTC. Meta has brought these specific statements to the

6

Commission's attention several times in petitions, briefs, and administrative motions. Chair Khan and

7

the Commission have thus far refused to decide whether they require recusal.

8

On July 25, 2022, after the Staff concluded its investigation of the Within transaction but before

9

the Commission was scheduled to vote on whether to approve it, Meta petitioned the FTC for Chair

10

Khan's recusal from the vote and any further participation in the proceeding. Meta explained that Chair

11

Khan must recuse herself before the vote because her "public statements and writings reflect her belief

12

that the government should block future acquisitions by Meta, regardless of the merits of the

13

transaction." July 25, 2022 Meta Recusal Petition (**Obaro Decl. Ex. 1**), at 2. Meta cited Chair Khan's

14

pre-FTC work for the Open Market Institute, where she advocated for the FTC to "[p]rohibit all future

15

acquisitions by Facebook for at least five years," as well as her public statements that she "hope[d]" that

16

"if Facebook tomorrow announces it is acquiring another company, . . . the FTC would look at that very

17

closely and block it."[1] Meta also referred to her statements on Twitter in 2020 (again, before she became

18

Chair), in which she prejudged Meta's entire acquisition strategy as unlawful and called upon

19

20

---

21

[1] *See id.* at 1-2 (citing Press Release, Open Markets Inst., *Fines for Facebook Aren't Enough: The Open*

22

*Markets Institute Calls on FTC to Restructure Facebook to Protect Our Democracy* (Mar. 22, 2018),

23

https://www.openmarketsinstitute.org/publications/fines-for-facebook-arent-enough-theopen- markets-

24

institute-calls-on-ftc-to-restructure-facebook-to-protect-our-democracy [https://perma.cc/P4AU-C4CZ]

25

(accessed Sept. 20, 2022); Sen. Bernie Sanders, *The Bernie Sanders Show: The Greatest Threat to Our*

26

*Democracy?*,          YouTube          (May          15,          2018)          (starting          at          20:29),

27

https://www.youtube.com/watch?v=wuCAy10hlHI (accessed Sept 20, 2022).

28

"enforcers" to block future transactions.[2]

In its petition, Meta also appended and referred to another petition that it had filed with the agency about a year earlier, seeking Chair Khan's recusal from the FTC's ongoing lawsuit in *FTC v. Facebook, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.). That petition quoted many other of Chair Khan's anti-Meta statements and writings—for example, her claims that Meta was "associated with a host of social ills," including "serving as a tool for the incitement of genocide in Myanmar" and "amplifying the influence of 'fake news,' conspiracy theories, bot-generated propaganda, and inflammatory and divisive content more broadly." July 14, 2021 Meta Recusal Petition (**Obaro Decl. Ex. 2**) at 16.[3] As the petition notified the FTC, Chair Khan has made a career of targeting Meta. She has maintained, consistently and very publicly, that Meta is a serial antitrust violator that must not be allowed to acquire other companies. *Id.*[4]

Chair Khan has not disavowed or explained any of these statements since her appointment. Nonetheless, without any public ruling on—or acknowledgement of—the pending recusal petition, the Commission voted 3-2 to authorize the present Complaint for a preliminary injunction pending the agency adjudication of the Within transaction, with Chair Khan casting the decisive third vote.[5] Two

---

[2] *Id.* (citing Lina M. Khan (@linamkhan), Twitter (Dec. 9, 2020, 4:20PM), https://web.archive.org/web/20210614143417/https://twitter.com/linamkhan/status/133682805669513 6259) (accessed Sept. 20, 2022).

[3] *Id.* (citing Lina M. Khan & David E. Pozen, *A Skeptical View of Information Fiduciaries*, 133 Harv. L. Rev. 497, 498 (2019)).

[4] The FTC declined to address Meta's July 14, 2021 Petition, claiming it did not have a mechanism for addressing the issue; Meta then filed a motion to dismiss the FTC's amended complaint in *Facebook*, again citing the numerous statements that established her anti-Meta bias. *See* Memorandum of Law In Support of Facebook, Inc.'s Motion To Dismiss Amended Complaint, *FTC v. Facebook, Inc.*, No. 1:20-cv-3590-JEB, at 38-39 (D.D.C. Oct. 4, 2021), DE 83-1 (**Obaro Decl. Ex. 3**).

[5] Leah Nylen, *FTC's Khan Overruled Staff to Sue Meta Over VR App Deal*, Bloomberg (July 29, 2022), https://www.bloomberg.com/news/articles/2022-07-29/ftc-s-khan-overruled-staff-to-sue-meta-over-

---

weeks after it filed this Complaint, the Commission initiated the agency adjudication, voting to institute the administrative complaint, still without acknowledging or ruling on Meta's pending recusal petition. *See* Admin. Complaint, Dkt. No. 9411 (F.T.C. Aug. 11, 2022) (**Obaro Decl. Ex. 5**). The FTC subsequently informed Meta that it will consider the recusal petition as a disqualification motion under FTC Rule 4.17. *See* 8/24/22 FTC Letter (**Obaro Decl. Ex. 6**). Yet no response to it has been filed, and no ruling has been made—even though Meta filed its petition about two months ago, before the Complaint in this case was authorized.

And Chair Khan continues to make prejudicial statements about this case, even as she oversees the Part 3 proceeding. She recently provided written testimony to a Senate subcommittee in which she evidently prejudged the merits of the Within transaction as advancing an incipient monopoly. *See Oversight of the Enforcement of the Antitrust Laws, Prepared Statement of the FTC Before the Subcomm. on Competition Policy, Antitrust, and Consumer Rights of the Senate Judiciary*, 117th Cong. (2022), at 6, https://www.ftc.gov/system/files/ftc_gov/pdf/P210100SenateAntitrustTestimony09202022.pdf (accessed Sept. 22, 2022) (**Obaro Decl. Ex. 7**) (stating that "[t]he FTC takes seriously its Congressional mandate to arrest monopolies in their incipiency," which is "demonstrated, in particular, by its July 2022 challenge to Meta's proposed acquisition of Within Unlimited"). Notably, in the same testimony, Chair Khan declined to "comment[ ] on the merits" of the Illumina acquisition of Grail, since that case "is currently pending in an administrative proceeding." *Id.*

Meta has also moved to stay the administrative proceeding in part based on Chair Khan's bias, referring again to the recusal petitions and appended exhibits. *See* Motion to Stay, *In re Meta Platforms, Inc. et al.*, Dkt. No. 9411 (F.T.C. Aug. 26, 2022) (**Obaro Decl. Ex. 8**). The FTC's Complaint Counsel opposed the motion, arguing that Meta's objection to Chair Khan's participation did not constitute cause for a stay. Motion to Stay Opp., *In re Meta Platforms, Inc. et al.*, Dkt. No. 9411 (F.T.C. Sept. 6, 2022) (**Obaro Decl. Ex. 9**).

### B.    The FTC Refuses to Produce Discovery on Its Affirmative Case and Meta's Defenses

In its Answer to the Complaint in this Court, Meta raised Chair Khan's bias as part of its

---

virtual-reality-deal (accessed Sept. 20. 2022) (**Obaro Decl. Ex. 4**).

1  affirmative defenses, as both an independent basis for dismissal and grounds for denying the equitable

2  relief sought by the FTC. *See* Answer and Affirmative Defenses of Meta Platforms, Inc. [ECF No. 84],

3  Affirmative Defense Nos. 14 (Complaint reflects improper selective enforcement); 17 (FTC violates

4  Article II); 18 (FTC is not entitled to relief because of Chair Khan's disqualification ); 19 (Chair Khan's

5  disqualification prevents FTC from proving elements necessary for equitable relief); 20 (FTC cannot

6  obtain equitable relief under doctrine of unclean hands, estoppel, or other equitable defenses); and 21

7  (Due Process Clause barred FTC from commencing action). Meta concisely and clearly pleaded the

8  factual basis for these defenses, namely that "Chair Khan has made numerous public statements that

9  demonstrate her bias against Meta, and in particular its acquisitions, demonstrating her lack of

10  impartiality with respect to Meta's proposed acquisition." *Id.* at 17. Meta also cross-referenced the

11  recusal petition—incorporating it and its contents by reference—which is now part of the administrative

12  record in the related agency proceeding.

13  Meta then requested discovery relevant to Chair Khan's bias, including her and the FTC's non-

14  public communications with third parties and officials in other government offices related to Meta. *See*

15  Meta First Request for Production (Aug. 16, 2022) (**Obaro Decl. Ex. 10**); Meta First Set of

16  Interrogatories (Aug. 16, 2022) (**Obaro Decl. Ex. 11**). These requested documents and communications

17  are relevant and discoverable. In evaluating due process defenses based on an agency official's actual

18  and apparent bias, courts routinely consider (1) the official's communications with third parties, (2) the

19  official's public speeches, (3) procedural irregularities in the agency process, (4) indications of the

20  official's intent to harass or delay the defendant, and (5) the official or board going against the advice of

21  the agency's legal counsel. *See, e.g.*, *Stivers*, 71 F.3d at 741-45 (official's private communication with

22  third party relevant to claim of bias); *Cinderella*, 425 F.2d at 583 (official's public statements and speech

23  relevant to bias claim). Meta also asserted a defense that the FTC is not entitled to relief under the

24  Administrative Procedure Act, *see* Affirmative Defense No. 18, which requires "reasoned

25  decisionmaking" by the Agency; and a reviewing court may ensure that the agency action is not based

26  on unlawful, arbitrary, or "contrived reasons." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574-

27  75 (2019) (considering extra-record evidence in vacating Secretary of Commerce's decision under the

28  APA).

1     Moreover, Chair Khan's bias and Meta's discovery requests regarding that issue are relevant to

2  the FTC's own affirmative case. Having invoked this Court's equitable jurisdiction, the FTC has the

3  burden to demonstrate a likelihood of success on the merits *and* that the public and private equities weigh

4  in favor of a preliminary injunction. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir.

5  1989). As the defendant, then, Meta is entitled to submit counter-proof that the FTC is unlikely to

6  succeed on the merits—including because a court of appeals would ultimately overturn any adverse

7  judgment from the Commission as tainted by the Chair's bias—and to demonstrate that the equities tip

8  the other way. Chair Khan's bias is relevant to both inquiries.

9     Nonetheless, the FTC refused to produce "communications between the FTC and other

10  government entities in response to Request No. 4 and internal FTC documents or communications in

11  response to Requests No. 10-12." 9/8/22 FTC Letter (**Obaro Decl. Ex. 12**). In its Letter, the FTC

12  indicated it would not even search for these documents because it intended to move to strike the

13  affirmative defenses; but the Agency did not ask Meta to meet and confer, or to amend its defenses to

14  provide more definite statements. *Id.* Within a day of sending the Letter, the FTC filed the present motion

15  to strike. Meta continued to demand discovery—with fact discovery set to close on October 26, 2022—

16  and explained that a motion to strike does not constitute a unilateral stay of discovery unless and until

17  the FTC obtains a protective order. 9/11/22 Meta Letter (**Obaro Decl. Ex. 13**). The FTC responded that

18  it would not produce responsive documents unless and until this Court denies its motion to strike. 9/12/22

19  FTC Letter (**Obaro Decl. Ex. 14**).

20     As of this writing, the FTC continues to impede and delay discovery. Although it eventually

21  agreed to search for relevant intergovernmental communications involving Chair Khan, it still declined

22  to produce the requested documents until after the Court resolves this motion to strike; likewise, while

23  the motion to strike is pending, the FTC refuses to respond to Meta's interrogatory and identify persons

24  with whom Chair Khan has communicated about the Within transaction. 9/22/2022 FTC Letter (**Obaro**

25  **Decl. Ex. 15**). The FTC also refuses to produce documents in which Chair Khan has discussed Meta or

26  its founder, *id.*, even though such documents are critical to Defendants' bias defenses, *see supra*. Again,

27  the FTC improperly treats its motion to strike as a unilateral stay of discovery—which begs the questions

28  of how many responsive, non-public documents the FTC is withholding and what it has to hide with

respect to Chair Khan. 9/22/2022 FTC Letter. The FTC's misuse of Rule 12(f) to avoid producing relevant documents that it admits it has is reason enough to deny the motion to strike.[6]

## **LEGAL STANDARD**

A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1169 (N.D. Cal. 2019); *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1075 (N.D. Cal. 2020) (court should not strike defense unless "questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed"); *Olga C.*, 2017 WL 4642449, at *3 (motions to strike are granted only if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation").

The Ninth Circuit has long held that an affirmative defense is sufficient if it gives the plaintiff fair notice of the defense. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *see also Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) ("[T]he fair notice required by the pleading standards only requires describing the defense in general terms" (citation omitted)).[7] The Ninth Circuit has not extended the *Twombly* plausibility standard to affirmative defenses, though courts in this district generally have. *See, e.g.*, *Neo4j, Inc. v. Graph Found. Inc.*, 2020 WL 2793577, at *3 (N.D. Cal. 2020) (Davila, J.). When they apply *Twombly*, district courts "view the pleading in the light most

---

[6] Meta reserves the right to move to compel production of documents the FTC is withholding. The FTC briefly complains that Meta is on a "fishing expedition," Mot. 6, but ignores the numerous public statements that Chair Khan has made castigating Meta and its founder, in addition to procedural irregularities during the investigation that make this defense highly plausible.

[7] *See also* 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1381 (3d ed., Apr. 2022 update) ("The better view is that the plausibility standard only applies to the pleading of affirmative claims for relief," and "a Rule 12(f) motion is an inappropriate vehicle for challenging legally sufficient defenses that lack the level of factual detail that would be required to satisfy plausibility pleading").

1   favorable to the nonmoving party." *Id*. Some courts have also recognized that the *Twombly* plausibility

2   standard is "context-specific," and that "[t]he key aspect of the context relevant to the standard for

3   pleading an affirmative defense is that an affirmative defense, rather than a complaint, is at issue."

4   *GEOMC*, 918 F.3d at 98. Courts thus review defenses with a lesser "degree of rigor," because while

5   "[t]he pleader of a complaint has the entire time of the relevant statute of limitations to gather facts

6   necessary to satisfy the plausibility standard[,] the pleader of an affirmative defense has only the 21-day

7   interval to respond to an original complaint." *Id.*; *SEC v. Ripple Labs, Inc.*, 2022 WL 748150, at *4

8   (S.D.N.Y. Mar. 11, 2022) ("[C]ourts generally apply a lower plausibility threshold when evaluating

9   motions to strike affirmative defenses as opposed to motions to dismiss because the pleader has less time

10  to gather facts and craft a response.").[8]

11      Lastly, "[w]hen a court strikes an affirmative defense, leave to amend should be freely given so

12  long as there is no prejudice to the moving party." *Goobich v. Excelligence Learning Corp.*, 2020 WL

13  1503685, at *2 (N.D. Cal. Mar. 30, 2020) (Davila, J.) (citing *Wyshak*, 607 F.2d at 826); *see also* Fed. R.

14  Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In the

15  absence of prejudice, "courts have denied Rule 12(f) motions even though the offending matter literally

16  was within one or more of the categories set forth in Rule 12(f)." *Hatamian v. Advanced Micro Devices,*

17  *Inc.*, 2015 WL 511175, at *1 (N.D. Cal. Feb. 6, 2015) (citation and brackets omitted).

18              **ARGUMENT**[9]

19  **I.    THE COURT SHOULD NOT STRIKE META'S AFFIRMATIVE DEFENSES [#14, 17,**
20  **18, 19, 20, 21]**

21      The Court should reject the FTC's request to strike six of Meta's affirmative defenses. These

22  defenses are clearly related to "the subject matter of the litigation." *Olga C.*, 2017 WL 4642449, at *3;

23  *Oracle*, 817 F. Supp. 2d at 1131. The FTC cannot proceed, and certainly cannot prevail, without

24  ---

25  [8] While the FTC had almost a year to file its Complaint, Meta had only 30 days to file its responsive

26  pleading. *See* Joint Stipulated Case Management Order [ECF No. 69], at 13.

27  [9] Within joins these arguments as applicable to its Affirmative Defenses Nos. 17-19. *See* Answer and

28  Affirmative Defenses of Within Unlimited, Inc. [ECF No. 83].

confronting the issue of Chair Khan's bias.

For the FTC to obtain the *only* relief it seeks in this Court, a temporary injunction, the agency has the burden of proving that it is likely to succeed on the ultimate merits—that is, succeed on appeal, and not just at the agency level. Meta's affirmative defenses are thus integral to this Court's decision whether to grant relief. If the administrative proceeding including this related lawsuit are unauthorized and unconstitutional, the FTC cannot ultimately win on appeal (even if it prevails at the administrative stage in a decision that would be subject to review in a federal court of appeals of Meta's choosing), and therefore cannot obtain a temporary injunction to obtain the preliminary relief it seeks. Further, Meta's defenses are integral to the balance of the equities, on which the FTC also carries the burden of proof. The FTC's jurisdictional arguments therefore miss the mark, as does its reading of *Axon*, which is fundamentally different from this case.

Meta also pleads its affirmative defenses with sufficient factual allegations and the FTC cannot (and does not) contend that it lacks notice of the bases for these defenses. The defenses are plausible under binding case law and should be litigated on the merits with a full evidentiary record, not in the context of a procedural Rule 12(f) motion. The FTC contends that Meta's equitable and selective prosecution defenses are legally deficient, but all of its arguments amount to counterfactual challenges that are premature and inappropriate at the pleading stage.

### A. Bias-Related Defenses [#18, 19, 21]

#### 1. The Bias Defenses Go To Core Issues In This Case And Are Within This Court's Jurisdiction

To obtain a preliminary injunction, the FTC is required to prove a likelihood of *ultimate* success on the merits—that is, success in the court of appeals, and not just in the agency adjudication. *See FTC v. Simeon Mgmt. Corp.*, 532 F.2d 708, 715-16 (9th Cir. 1976) ("[A] favorable initial decision [in the agency] does not necessarily assure the FTC of ultimate success. In predicting whether such success is likely, it is necessary to determine whether the FTC's initial decision applied the proper legal standard."); *see also FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984) (explaining that the Commission must carry its burden to establish a likelihood of success upon "determination by the FTC in the first instance *and ultimately by the Court of Appeals*") (emphasis added) (quoting *FTC v. Nat'l*

1 *Tea Co*., 603 F.2d 694, 698 (8th Cir. 1979)) (cited at Mot. 12).

2      Although the FTC cites *Warner*—a decision that does not endorse its view that the Court should

3 look only to the likelihood that the Commission will prevail in its home forum (which it always does)—

4 it also cites *FTC v. Staples, Inc*., 239 F. Supp. 3d 1, 5 (D.D.C. 2017), for the proposition that the

5 likelihood-of-success element turns on whether the Agency can prevail at administrative hearings. *See*

6 Mot. 12-13. But that district court order involved an attorney's fees dispute, and the quoted language is

7 *dictum*; at the preliminary injunction stage in that case, the district court recognized that the FTC must

8 show a likelihood of success "*in the first instance and ultimately by the Court of Appeals*." *FTC v.*

9 *Staples, Inc*., 190 F. Supp. 3d 100, 115 (D.D.C. 2016) (emphasis added). If it were otherwise, the

10 likelihood-of-success inquiry would be perfunctory, as the "FTC has not lost a single case in the past

11 quarter-century" in its administrative forum. *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir.

12 2021), *cert. granted in part*, 142 S. Ct. 895 (2022); *see also id.* ("Axon raises legitimate questions about

13 whether the FTC has stacked the deck in its favor in its administrative proceedings…. Indeed, a former

14 FTC commissioner acknowledged that the FTC adjudication process might unfairly favor the FTC given

15 the agency's stunning win rate.").

16      Chair Khan's bias bears directly on this Court's predictive inquiry into the likelihood of the

17 Agency's success on appeal, an essential element of the FTC's claim. The FTC *cannot* succeed here

18 because Chair Khan's bias means she was disqualified at the outset, could not lawfully participate in the

19 authorizing vote, and rendered the Complaint void *ab initio* under governing law in multiple circuits

20 where Meta could lodge an appeal of an adverse administrative decision. *See Stivers*, 71 F.3d at 741;

21 *Cinderella*, 425 F.2d at 591; *see also Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 554-55

22 & n.2 (9th Cir. 2016) (affirming dismissal of petition for injunctive relief that agency official lacked

23 ability to authorize); *Am. Cyanamid Co. v. FTC*, 363 F.2d 757, 767 (6th Cir. 1966) (disqualified

24 commissioner's participation violated due process and required court to vacate FTC order). Moreover,

25 Chair Khan's bias and prejudgment help to explain why this far-fetched and implausible case was

26 brought in the first place, with her (and, by a 3-2 vote, the Commission) reportedly overriding the

27 professional Staff's recommendation.

28      This Court has jurisdiction to consider Meta's bias-related defenses when deciding whether to

issue the temporary injunction—which requires a predictive inquiry and balancing of the equities, both elements of the FTC's claim for relief. And the FTC cannot dispute that the federal court of appeals that would review an administrative decision adverse to Meta—i.e., the ultimate arbiter of success on the merits—could consider these bias defenses (as several *already have* in reversing FTC decisions).

Contrary to the FTC's contention, *Axon* is beside the point. There, the Ninth Circuit recognized that a structural challenge to the FTC could be raised in the court of appeals after an agency adjudication. *Axon*, 986 F.3d at 1176. If anything, then, *Axon* reaffirms that the court of appeals can and will address Chair Khan's bias, and this inevitable resolution of the recusal issue must be factored into this Court's forward-looking inquiry into the likelihood of the Agency's success. *See Warner*, 742 F.2d at 1162 (district court must evaluate success on appeal in determining whether to issue preliminary injunction).

Moreover, in addition to this Court's ability to predict how Meta's defenses implicate the FTC's ultimate likelihood of success on the merits before an appellate court, *this Court* clearly has jurisdiction to decide these issues. The FTC chose to sue Meta and invoke this Court's jurisdiction (unlike in *Axon*). Having made that choice, it cannot argue the Court simultaneously lacks jurisdiction to hear defenses against its own lawsuit. In fact, due process *guarantees* Meta the right to raise all applicable defenses, including that the Complaint was not constitutionally authorized and that the FTC is not entitled to relief. *See, e.g.*, *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense."); *see also N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 797 (8th Cir. 2013) ("[A] challenge to the legal composition of an agency is an affirmative defense that can be waived if it is not timely raised."); *FTC v. Golden Empire Mortg., Inc.*, 2009 WL 4798874, at \*2 (C.D. Cal. Dec. 10, 2009) (sustaining affirmative defense that the FTC lacked authority to bring action). For that reason, the FTC does not (and cannot) cite any case holding that a federal court lacks jurisdiction to hear a defendant's legitimate affirmative defenses against the government, in the same court where the government brought suit. It is doubtful the government has ever made such an argument.[10]

---

[10] In response to Meta's motion to dismiss in *Facebook*, for example, the FTC did not argue that *Axon* deprived the district court of jurisdiction to consider Meta's bias-related due process arguments. *See generally* Plaintiff FTC's Memorandum of Law In Opposition To Defendant Facebook, Inc.'s Motion

---

*Axon* does not hold otherwise. There the FTC initiated only an agency adjudication against the respondent, not a federal lawsuit seeking an injunction; but the respondent filed its own, separate lawsuit in federal court to enjoin the ongoing agency proceeding. *See Axon*, 986 F.3d at 1176. Unlike in *Axon*, Meta advances defenses in this lawsuit against *this* lawsuit—brought by the FTC—and is seeking to deny the relief *the FTC* seeks. Although the FTC acknowledges the fundamental difference between this case and *Axon*, it still tries to fit a square peg into a round hole using the *Thunder Basin* factors. *See* Mot. 13 (noting that the cases are different because the private plaintiff in *Axon* brought "an entirely separate suit, including a request to enjoin the FTC from pursuing its administrative enforcement action"). But the *Thunder Basin* doctrine asks only whether a federal statute "prevents a district court from exercising subject-matter jurisdiction over a *pre-enforcement* challenge to the Act." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 202 (1994) (emphasis added). Meta has not brought a pre-enforcement challenge, and so the *Thunder Basin* doctrine is inapplicable.[11]

Recognizing the fundamental flaw in its *Axon* argument, the FTC tries to recast Meta's defenses as a "sleight of hand" to hide a collateral attack on the FTC's administrative proceeding. Mot. 12. But the Agency uses circular logic to obfuscate a simple point: *it* is still the plaintiff in this federal lawsuit. Nothing about the affirmative defenses is a "sleight" nor is it "collateral" just because the Agency labels it as such. Defendants have not filed a lawsuit in another forum, have not filed counterclaims, and are not seeking any affirmative relief. The defenses are not "collateral" attacks at all; they are affirmative defenses, which the Court always has jurisdiction to address.[12]

----

To Dismiss Amended Complaint, *FTC v. Facebook, Inc.*, No. 1:20-cv-3590-JEB, at 42 (D.D.C. Nov. 17, 2021), ECF No. 85 ("FTC Opp.") (**Obaro Decl. Ex. 16**).

[11] Likewise, the other cases the FTC cites do not support its position. In *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), and *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015), for example, the respondents collaterally attacked ongoing agency proceedings by filing new lawsuits in federal court. Again, that is not true here.

[12] Even if the FTC's jurisdictional arguments under *Axon* had some merit (which they do not), the Supreme Court has granted certiorari, 142 S. Ct. 895 (2022), and the FTC's jurisdictional argument may

Finally, the FTC ignores the other equitable factors that it has to prove to obtain relief in this Court, and to which Chair Khan's bias is clearly relevant—bringing the affirmative defenses squarely within the Court's jurisdiction. The FTC's own authority says that the "decision whether to grant preliminary relief turns on a determination of the likelihood of the Commission's success on the merits *and on a balance of the equities*." *Warner*, 742 F.2d at 1162 (emphasis added). Accordingly, Chair Khan's bias is important, not only to the likelihood-of-success inquiry, but also to the balance of the public and private considerations. On the public side, it is well-established that "the public has no interest in the enforcement of laws in an unconstitutional manner." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *Firearms Pol'y Coal. Second Amend. Def. Comm. v. Harris*, 192 F. Supp. 3d 1120, 1129 (E.D. Cal. 2016) ("The public has no interest in enforcing unconstitutional laws."). On the private side, Meta would suffer harm if this Court were to enjoin the Within transaction without affording Meta the opportunity to challenge the legitimacy, and constitutionality, of this action as a result of Chair Khan's improper involvement. These key issues are for trial after discovery (including the information that the FTC is trying to hide from Meta and this Court), and not for a procedural Rule 12(f) motion to strike. The FTC does not offer any reason why the Court cannot or should not consider Chair Khan's bias in weighing public and private equities, and *Axon* simply does not speak to this situation.[13]

## 2.    The Bias Defenses Are Well-Pleaded And Plausible

The FTC also suggests that defenses related to Chair Khan's bias are inadequately pleaded, but

---

be further undermined by a forthcoming Supreme Court decision.

[13] Nor does it matter that Meta's recusal petition is still pending before the FTC. Mot. 15 n.6. Given that two months have passed since it was filed, there is no guarantee the FTC will even decide it before the evidentiary hearing. And if and when the FTC does decide the disqualification issue, that decision will only be one more consideration in evaluating Meta's defenses at that hearing. Meta brought the issue to the Agency's attention to forestall any argument based on a failure to exhaust administrative remedies, but Chair Khan's bias and the implications of her continued participation must ultimately be decided by an Article III Court.

1   it does not offer any argument or explanation. *See* Mot. 10. Nor could it. In its Answer, Meta describes

2   Chair Khan's public statements about Meta and its acquisitions, raises the issue of her bias, and cites the

3   relevant case law. *See* Answer at 16-17 ("Chair Khan has made numerous public statements that

4   demonstrate her bias against Meta, and in particular its acquisitions, demonstrating her lack of

5   impartiality with respect to Meta's proposed acquisition."). The Court should reject the agency's cursory

6   arguments that the defenses are not sufficiently pleaded. *See Fodera v. Equinox Holdings, Inc*., 2021

7   WL 23294, at *2 (N.D. Cal. Jan. 4, 2021) ("Motions to strike are generally disfavored because they are

8   often used as delaying tactics and because of the limited importance of pleadings in federal practice."

9   (citation omitted)). The FTC also cannot seriously contend that it lacks fair notice of these issues, as they

10  are not only clearly alleged in the Answer, but they are laid out in detail in Meta's petition, which Meta

11  incorporated by reference here and which also is part of the administrative record in the related agency

12  proceeding. *Goobich*, 2020 WL 1503685, at *2 (fair notice is primary concern of Rule 12(f)).[14]

13        Accepting the well-pleaded allegations as true and drawing inferences in Meta's favor—as the

14  Court must—Chair Khan's anti-Meta statements and her prejudgment of the Within transaction provide

15  a basis for dismissing this case or denying the FTC relief, and are plausible defenses. *See Stivers*, 71

16  F.3d at 741; *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("[A]n unconstitutional potential for bias

17  exists when[ever] the same person serves as both accuser and adjudicator in a case."); *see also Dep't of*

18  *Commerce*, 139 S. Ct. at 2575 ("contrived" reasoning underlying agency action is a basis for vacatur

19  under the APA); *Golden Empire*, 2009 WL 4798874, at *2 (lack of agency authority is a viable

20

---

[14] Here it is "reasonable for the court to take account of any written stipulations entered into by the

21

22  parties, as these, in a sense, are 'within' the pleadings." Wright & Miller, *supra* § 1380. The FTC is not

23  a private litigant. It is a federal agency, currently litigating against Meta in three forums where Meta has

24  raised Chair Khan's bias in petitions, briefs, and administrative motions, laying out the relevant

25  statements and writings in substantial detail. The Agency therefore cannot feign ignorance of the

26  underlying facts. This is precisely the type of "tactical" and wasteful Rule 12(f) motion that courts

27  routinely deny. *Fodera*, 2021 WL 23294, at *2.

28

affirmative defense). Indeed, Meta's well-pleaded allegations about Chair Khan's prejudgment of Meta's future acquisitions—including this one—and her statements castigating Meta for a host of "social ills" are far more serious than statements found to be disqualifying in other cases. *See Cinderella*, 425 F.2d at 591 (FTC Commissioner disqualified for giving a public speech in which he appeared to prejudge the defendants' culpability, but did so without mentioning the defendants by name); *Am. Cyanamid*, 363 F.2d at 763, 767 (FTC Chair disqualified for serving as counsel to a Senate subcommittee that investigated many of the same facts, issues, and parties involved in the FTC proceeding).

Proving that it clearly has notice of the substance of Meta's defenses, the FTC even tries to take on Meta's bias defenses on the merits, arguing that Chair Khan was lawfully permitted to vote to authorize this Complaint, regardless of her bias, because she was acting as a prosecutor rather than an adjudicator. *See* Mot. 14 n.5 (citing *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 63-64 (D.D.C. 2022)). This contention contradicts the allegations in Meta's Answer, and therefore cannot be resolved on a motion to strike. *See, e.g.*, *Erceg*, 475 F. Supp. 3d at 1075 ("Before a motion to strike is granted[,] the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed."); *Fodera*, 2021 WL 23294, at *2 ("Any doubt concerning the import of the allegations to be stricken weigh[s] in favor of denying the motion to strike.").

Moreover, the Agency is wrong on the standard applicable to Chair Khan's participation. Chair Khan is acting as an adjudicator in the administrative proceeding, of which this lawsuit is a part, and as a result she is subject to the heightened "prejudgment" standard applicable to adjudicatory officials, including with respect to her vote to authorize this Complaint and the administrative complaint. Tellingly, the Agency does not and cannot argue that Chair Khan would satisfy that rigorous standard of judicial impartiality. *See* Mot. 14 n.5. In other words, the FTC implicitly concedes that if the adjudicator standard applies, then Chair Khan's participation is unlawful, improper, and inequitable.

The FTC invokes *Facebook*, in which Judge Boasberg held that Chair Khan was acting more like a prosecutor than an adjudicator and therefore was subject to a less stringent recusal standard. *See Facebook*, 581 F. Supp. 3d at 68. In that particular case, however, Chair Khan voted to authorize an amended complaint in a standalone federal lawsuit seeking a *permanent* injunction, without any

corresponding agency adjudication. *Id.*

By contrast, here the Agency has filed an action for a temporary injunction and will "adjudicate the merger's legality in an administrative proceeding." Compl. [ECF No. 1] ¶¶ 2:10-14, 22-23, 15:20-23; *see also* 15 U.S.C. § 53(b)(2) (before filing preliminary injunction action, the Commission must vote on whether it has reason to believe that it is in the public interest to enjoin conduct "pending the issuance of [an administrative] complaint by the Commission"); 16 C.F.R. § 3.26 (preliminary injunction action is in "aid of the adjudicative proceeding"). Because the Commissioners, including Chair Khan, will adjudicate the legality of the transaction in the Agency's home tribunal, they are adjudicators for *all* purposes and at all times, including when they voted to authorize this preliminary injunction action as part of the administrative proceeding. Commissioners cannot serve as adjudicators and prosecutors in the same case. *Williams*, 579 U.S. at 8 (structural error occurs when the "same person serves as both accuser and adjudicator in a case," and an individual could not serve as a prosecutor in criminal case and then a judge in civil post-conviction case); Brief for the FTC at 43, *AMG Cap. Mgmt., LLC v. FTC*, No. 19-508 (U.S. Nov. 30, 2020) (arguing that the FTC's adjudicatory and prosecutorial paths are "mutually exclusive").

Because Chair Khan *in this case* is acting in a "judicial or quasi-judicial capacity," she must recuse if she "prejudged" or "reasonably appears to have prejudged" the issue in question. *See Stivers*, 71 F.3d at 741; *Cinderella*, 425 F.2d at 591; *see also* FTC Opp. at 42 ("[A]ny prohibition on prejudgment applies to officials acting in a judicial or quasi-judicial capacity."). Chair Khan was and remains subject to the rigorous standard of judicial impartiality; having failed that standard (as, notably, the FTC does not dispute in its motion to strike), her participation irretrievably tainted the vote to authorize this Complaint. *See Hooks*, 816 F.3d at 554-55 & n.2 (dismissing NLRB petition for injunctive relief that lacked "valid authorization"); *see also Am. Gen. Ins. Co. v. FTC*, 589 F.2d 462, 465 (9th Cir. 1979) ("[T]he Commission's final order … is infected with invalidity by reason of Commissioner Collier's participation, and the matter is hereby remanded to the Commission for further proceedings in conformity with this opinion."); *Texaco, Inc. v. FTC*, 336 F.2d 754, 760 (D.C. Cir. 1964), *vacated and remanded on other grounds*, 381 U.S. 739 (1965) (holding that biased Chairman's participation in violation of due process "invalidated the order under review"). In short, the affirmative defenses are

well-pleaded and plausible, and the FTC's cursory effort to defend Chair Khan's participation fails on the pleadings just as it will fail at the hearing.[15]

### B. Structural Article II Defense [#17]

The Agency complains about the lack of "explanation" for Meta's Article II defense, *see* Mot. 10—but there is no secret here. The modern FTC exercises executive power yet the Commissioners are insulated from removal by the President; accordingly, the Agency's structure violates the separation of powers. As the Supreme Court has recently noted, the exception applied in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), "depend[ed] upon the characteristics of the agency before the Court" at the time—i.e., the "New Deal-era FTC"—and, "[r]ightly or wrongly," *Humphrey's Executor* "viewed the FTC (as it existed in 1935) as exercising no part of the executive power." *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2198, 2200 (2020) (citation omitted). As the Court further recognized in *Seila*, the "conclusion that the FTC did not exercise executive power has not withstood the test of time." *Id.* at n.2; *see also id.* at 2218 (Thomas, J., concurring) (noting that multimember agencies with for-cause removal protection cannot wield "substantial executive power," and that the FTC today does, in fact, wield such power). The FTC is currently litigating or has recently litigated the constitutionality of its structure against several other parties who have asserted Article II and separation-of-powers challenges.[16]

---

[15] Even if the FTC were correct that the procedural posture of this case is analogous to *Facebook* (it is not), Meta has still plausibly alleged that Chair Khan would fail even the less rigorous standard of recusal for prosecutors, as it is plausible that she has an "axe to grind." *Facebook*, 581 F. Supp. 3d at 64 (quoting *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984)). Defendants are thus still entitled to litigate the affirmative defense, obtain the requested discovery, and prove at the evidentiary hearing that Chair Khan is biased under *either* standard.

[16] *See, e.g.*, Motion to Dismiss, *FTC v. Walmart*, No. 1:22-cv-03372-MSS (N.D. Ill. Aug. 29, 2022), at 8-13 (FTC lacks authority to seek monetary and injunctive relief because it wields executive power); Post-Trial Br., *In re Illumina*, Dkt. No. 9401, at 231-44 (arguing that FTC violates Article II); Pet. Writ Cert., *Axon Enter., Inc. v. FTC*, No. 21-86 (U.S.) (petitioning for review of whether the FTC's dual-layer

This structural defense is thus not only plausible, but it takes on additional importance in this case because Chair Khan has evaded the standards of judicial impartiality, demonstrating that she intends to wield executive power in a manner that is the opposite of the nonpartisan, impartial adjudicatory role that is the sole doctrinal basis for the *Humphrey's Executor* exception. *See* 295 U.S. at 624 (noting the FTC was designed as "nonpartisan" multimember body with for-cause removal protection, such that it "must, from the very nature of its duties, act with *entire impartiality*" (emphasis added)). Accordingly, even if the modern FTC's structure were not unconstitutional in all instances, Chair Khan's actions would make it so in the context of this case. For the reasons above, moreover, the Court has jurisdiction to consider this affirmative defense. Meta is not raising the unconstitutionality of the Commission's structure to collaterally attack or enjoin a separate agency proceeding; it is doing so to challenge the FTC's authority to initiate and maintain *this* action. Once the FTC invoked this Court's jurisdiction, Meta obtained a corresponding due process right to raise this defense and any other defenses available to it. *See Lindsey*, 405 U.S. at 66 (due process guarantees defendant ability to raise all defenses).

### C.     Equitable Defenses [#20]

The FTC invoked the equity jurisdiction of this Court to seek a temporary injunction. Defendants are thus entitled to assert all defenses cognizable at equity against that request for relief. *See, e.g.*, *Abbott Labs v. Gardner*, 387 U.S. 136, 155 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("[I]njunctive remedies are equitable in nature," and so "equitable defenses may be interposed"). Chair Khan's participation in this lawsuit, despite her bias and disqualification, gives rise to at least two, plausible equitable defenses: unclean hands and estoppel.

At the outset, the FTC does not dispute that it is subject to both unclean hands and estoppel, *see* Mot. 15-18, and so there is no basis for striking the equitable affirmative defenses as legally deficient. *See, e.g.*, *TRW, Inc. v. FTC*, 647 F.2d 942, 951 (9th Cir. 1981) (estoppel available against the government). *United States v. Innovative Biodefense*, 2019 WL 6971054, at *5 (N.D. Cal. Aug. 22, 2019)

for-cause removal protection violates Article II); *In re Otto Bock HealthCare North America, Inc.*, Dkt. No. 9378, 2019 WL 5957363, at *48 (Nov. 1, 2019) (describing respondent's Article II Appointments Clause challenge).

1    (unclean hands available against the government). The FTC complains only that Defendants did not

2    recite each element of the defenses and support them with sufficient factual allegations. *See* Mot. 15-18.

3    But they adequately allege the type of affirmative misconduct by the government that these equitable

4    defenses require—the knowing participation by a biased and disqualified government official that rises

5    to the level of a due process violation. *See CFTC v. Mintco LLC,* 2016 WL 3944101, at *5 (S.D. Fla.

6    May 17, 2016) (refusing to strike unclean hands defense against the government when misconduct

7    alleged results in constitutional violation); *TRW*, 647 F.2d at 951 ("[T]he government action upon which

8    estoppel is to be based must amount to affirmative misconduct."). And courts routinely deny motions to

9    strike equitable defenses against the government as premature without a full evidentiary record.[17]

10        The FTC will have ample opportunity to respond to these defenses with its own evidence—that

11    is the purpose of the evidentiary hearing. But the affirmative defenses cannot be decided on the

12    pleadings. For example, the FTC argues that the defense of unclean hands is insufficient to establish

13    "affirmative misconduct." Mot. 17-18. Whether the FTC's actions (and inactions, including refusing

14    even to rule on the recusal petition) rise to the level of "affirmative misconduct" that would support the

15    application of unclean hands is a factual question—based in part on evidence not yet produced—that the

16    Court should decide on a full record. *See Erceg*, 475 F. Supp. 3d at 1075 (a court should not grant a

17    motion to strike unless it is "convinced that any questions of law are clear and not in dispute, and that

18    under no set of circumstances could the claim or defense succeed").

19        The FTC also argues its alleged unclean hands bear no relation to the conduct alleged in the

20    Complaint because, it presumes, even if Chair Khan had been disqualified, the remaining Commissioners

21    could still challenge the Within Transaction. Mot. 18. That argument is incorrect legally, as Chair Khan's

22    unclean hands tainted the vote and caused structural error. *See Williams*, 579 U.S. at 14 ("For the reasons

---

23    [17] *See, e.g.*, *SEC v. Nat. Diamonds Inv. Co*., 2020 WL 95065, at *3 (S.D. Fla. Jan. 8, 2020) (declining to

24    strike unclean hands defense against government, as it is "a drastic remedy"); *EEOC v. UPS, Inc*., 2017

25    WL 9482105, at *12 (E.D.N.Y. Mar. 9, 2017) (sustaining estoppel defense before discovery); *SEC v.*

26    *Nacchio*, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006) (sustaining unclean defense as "a matter that

27    cannot be adjudicated on the face of the pleadings").

1   discussed below, the Court holds that an unconstitutional failure to recuse constitutes structural error

2   even if the judge in question did not cast a deciding vote."); *Stivers*, 71 F.3d at 747-48 (even when a

3   multimember "tribunal's vote was unanimous," that "does not mean that the bias of one member had no

4   effect on the result"); *Am. Cyanamid*, 363 F.2d at 767 (biased commissioner's participation violated due

5   process even though his "vote was not necessary for a majority," as "[l]itigants are entitled to an impartial

6   tribunal whether it consists of one man or twenty and there is no way which we may know of whereby

7   the influence of one upon the others can be quantitatively measured") (citation omitted).

8            In any event, the FTC's argument is counterfactual—speculation as to what might have happened

9   had Chair Khan appropriately recused—and therefore inappropriate at this stage, where inferences are

10  drawn in Meta's favor. *Neo4j*, 2020 WL 2793577, at *3. As noted, Meta plausibly asserts that this lawsuit

11  has been driven by Chair Khan's personal animus, not by a fair application of the law. Both this

12  Complaint and the administrative complaint were authorized by 3-2 votes, meaning that if Chair Khan

13  had recused herself (as Meta alleges she was required to do) neither this action nor the administrative

14  proceeding would have proceeded.[18]  And if she is subsequently disqualified (as she must be), then both

15  this action and the administrative proceeding must be terminated. Meta is thus entitled to discovery to

16  prove its plausible and dispositive allegations at the evidentiary hearing. There is, in short, a *direct*

17  connection between the Commission's "unclean hands" and the Complaint.

18           The FTC also assumes that any public interest in this lawsuit is not outweighed by private harm

19  to Meta, and it therefore argues that unclean hands should not be strictly enforced, that the public will

20  suffer if the Agency is estopped from bringing the lawsuit, and that the application of equitable doctrines

21  against it would be "patently inequitable." Mot. 16, 18. The Agency has it backwards. To obtain relief,

22  the FTC must prove on competent evidence that the public interest is not outweighed by private harms.

23  *See Warner*, 742 F.2d at 1160 (in addition to considering whether FTC is likely to succeed on the merits,

24  district courts must "balance the equities" before granting injunctive relief); *FTC v. Weyerhaeuser Co.*,

25  _____

26  [18] Indeed, in her recent testimony to the Senate Judiciary Subcommittee, Chair Khan purported to offer

27  views on behalf of the entire FTC, not in her individual capacity, even as she prejudged the merits of the

28  Within transaction as advancing an incipient monopoly. Obaro Decl. Ex. 16 at 1 n.1, 6.

665 F.2d 1072, 1081 (D.C. Cir. 1981) (rejecting FTC's argument that private equities cannot be considered in whether to grant FTC preliminary injunction). The FTC cannot assume its own premise that the public interests outweigh the private, and that this lawsuit is "equitable," particularly not to argue that the affirmative defenses are *implausible* at the pleading stage. These are questions for the evidentiary hearing, not for a Rule 12(f) motion. *See SEC v. Hold Bros. On-line Inv. Servs. LLC*, 216 F. Supp. 3d 422, 425 (D.N.J. 2016) (denying government's motion to strike unclean hands defense, and noting that the government "puts the cart before the horse" when it argues that its request for relief is "in the public interest"); *Innovative Biodefense*, 2019 WL 6971054, at *5 (refusing to strike equitable defenses, even though the government argued that it was acting in the public interest).

### D.   Selective Enforcement [#14]

As for the selective enforcement defense, the FTC argues that Defendants failed to allege sufficient facts and failed to meet the *Twombly* standard. Mot. 5-10. But the FTC makes only untimely, pre-discovery arguments of failure to "make a showing" and "presented no evidence" of selective enforcement. Mot. 9. It then claims that it is not plausible "that there are any additional similarly situated defendants given the unique factual posture of each civil antitrust merger case." Mot. 9-10. The Court must accept Defendants' allegations as true and draw inferences in their favor; it need not accept without the benefit of discovery the assertion that there are not similarly situated companies.

Defendants will demonstrate at trial that the FTC cleared other similar transactions—for example, Sony's $3.6 billion acquisition of Bungie,[19] among others—and that the challenge in this case was driven by Chair Khan's anti-Meta bias rather than an Agency policy of treating like cases alike. Those facts—as well as the procedural irregularities during the investigation—form the plausible basis of both selective enforcement and prosecution defenses. *See United States v. Armstrong*, 517 U.S. 456, 464-65 (1996) (a defendant may prove selective prosecution if the administration of law is "directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive that the

---

[19] Sarah E. Needleman, *Sony to Buy Videogame Maker Bungie in $3.6 Billion Deal*, Wall St. J. (Jan. 31, 2022), https://www.wsj.com/articles/sony-to-buy-videogame-maker-bungie-in-3-6-billion-deal-11643653787 (accessed Sept. 20, 2022) (**Obaro Decl. Ex. 17**).

1  system of prosecution amounts to 'a practical denial' of equal protection of the law" (citation omitted));

2  *United States v. Sellers*, 906 F.3d 848, 851 n.5 (9th Cir. 2018) (defendant entitled to less rigorous

3  standard for selective enforcement when he "takes issue with how he was targeted at the outset of the

4  operation"). The FTC may have an explanation, but that is a question for the evidentiary hearing rather

5  than a basis to strike the defense at the pleadings stage.

6  **II.   THE FTC'S REQUEST TO STRIKE WITH PREJUDICE IS UNFOUNDED**

7  Remarkably, the FTC asks this Court to strike all of the challenged defenses *with prejudice*. *See*

8  Mot. 1, 19. Even if the Agency were correct (it is not) that any of the defenses were inadequately pleaded

9  or are otherwise objectionable, the Court should grant leave to amend to allow Defendants to address

10  any legitimate concerns. The FTC does not give any reason why leave should be denied, nor does it

11  argue it would be prejudiced if leave were granted. That waiver suffices to deny the FTC's request. *See,*

12  *e.g.*, *Hatamian*, 2015 WL 511175, at *1; *see also Goobich*, 2020 WL 1503685, at *2 ("When a court

13  strikes an affirmative defense, leave to amend should be freely given so long as there is no prejudice to

14  the moving party." (citing *Wyshak*, 607 F.2d at 826)); *see also* Fed. R. Civ. P. 15(a)(2). Moreover, aside

15  from the jurisdictional arguments—which are meritless—the FTC does not raise colorable arguments

16  that any of the defenses are legally defective, such that dismissal with prejudice could even possibly be

17  warranted. All of the FTC's arguments go to the adequacy of the pleadings or are otherwise premature,

18  fact-based arguments on the merits. To the extent the Court has any concerns with the adequacy of the

19  pleadings, Defendants should be given the opportunity to address them.[20]

20  **CONCLUSION**

21  For the foregoing reasons, the Court should deny the FTC's motion to strike in its entirety.

[20] Because the affirmative defenses are adequately pleaded and the FTC's Motion is so defective, Meta
is not submitting herewith any proposed amendments. However, Meta is prepared to submit proposed
amendments to any and all of the affirmative defenses at issue promptly upon request from the Court.

Dated: September 23, 2022

Respectfully submitted,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

By:  /s/  Mark C. Hansen

Christopher J. Cox (Bar No. 151650)
HOGAN LOVELLS US LLP
855 Main St.
Suite 200
Redwood City, CA 94063
Telephone No.:  (650) 463-4000
Facsimile No.:  (650) 463-4199
chris.cox@hoganlovells.com

Lauren Battaglia (*pro hac vice*)
Logan M. Breed (*pro hac vice*)
Benjamin Holt (*pro hac vice*)
Charles A. Loughlin (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth St., NW
Washington, D.C. 20004
Telephone No.:  (202) 637-5600
Facsimile No.:  (202) 637-5910
lauren.battaglia@hoganlovells.com
logan.breed@hoganlovells.com
benjamin.holt@hoganlovells.com
chuck.loughlin@hoganlovells.com

Attorneys for Defendant WITHIN UNLIMITED INC.

MARK C. HANSEN (*pro hac vice*)
mhansen@kellogghansen.com
GEOFFREY M. KLINEBERG (*pro hac vice*)
gklineberg@kellogghansen.com
AARON M. PANNER (*pro hac vice*)
apanner@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

BAMBO OBARO (Bar No. 267683)
bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

MICHAEL MOISEYEV (*pro hac vice*)
michael.moiseyev@weil.com
CHANTALE FIEBIG (*pro hac vice*)
chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

DIANE P. SULLIVAN (*pro hac vice*)
diane.sullivan@weil.com
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ  08542
Telephone: (609) 986-1100
Facsimile:  (609) 986-1199

ERIC S. HOCHSTADT (*pro hac vice*)
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant META PLATFORMS, INC.