Mark C. Hansen (*pro hac vice*)
mhansen@kellogghansen.com
Aaron M. Panner (*pro hac vice*)
apanner@kellogghannsen.com
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999

Michael Moiseyev (*pro hac vice*)
michael.moiseyev@weil.com
Chantale Fiebig (*pro hac vice*)
chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
*Counsel for Defendant Meta Platforms, Inc.*

Christopher J. Cox (Bar No. 151650)
chris.cox@hoganlovells.com
HOGAN LOVELLS US LLP
855 Main Street, Suite 200
Redwood City, CA 94063
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
*Counsel for Defendant Within Unlimited, Inc.*

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:22-cv-04325-EJD |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| META PLATFORMS, INC., et al., | Complaint Filed:  July 27, 2022 |
| Defendants. | Judge:        Hon. Edward J. Davila |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 17, 2022, at 9:00 a.m., or as soon thereafter as this matter can be heard, Defendants Meta Platforms, Inc. ("Meta") and Within Unlimited, Inc. ("Within") shall move and hereby do respectfully move this Court for an order dismissing the Amended Complaint for a Preliminary Injunction Pursuant to Section 13(b) of the Federal Trade Commission Act by Plaintiff Federal Trade Commission ("FTC") in its entirety and with prejudice. *See* Dkt. 101-1 ("Am. Compl.").  On October 7, 2022, the parties stipulated to the filing of the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  *See* Dkt. 101.

This Motion To Dismiss is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; all other pleadings on file in this action; and any other written or oral argument that Defendants may present to the Court to support this Motion.

DATED:  October 13, 2022                           Respectfully submitted,

By: /s/ *Mark C. Hansen*

DEFENDANTS' MOTION TO DISMISS                           Case No. 5:22-cv-04325-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

STATEMENT OF REQUESTED RELIEF ................................................................................1

MEMORANDUM AND POINTS OF AUTHORITIES .............................................................1

INTRODUCTION ......................................................................................................................1

BACKGROUND ........................................................................................................................3

      A.     Meta's Investments in the VR Industry ........................................................3

      B.     The Within Transaction ..................................................................................4

      C.     Procedural History ........................................................................................5

LEGAL STANDARD .................................................................................................................7

ARGUMENT ..............................................................................................................................7

I.     The FTC Claim Fails for Lack of Facts Establishing Plausible Claim of
      Non-Competitive Market ..................................................................................9

      A.     The FTC Fails To Allege Interdependent or Parallel Behavior ..............9

      B.     The FTC Fails To Allege Facts Establishing a Concentrated Market with
           High Barriers to Entry ..................................................................................10

II.    The FTC's Perceived Potential Competition Theory Fails Because the FTC Does
      Not Allege Facts Establishing That Fear of Meta Actually Prevented Oligopolistic
      Behavior .........................................................................................................15

III.   The FTC's Actual Potential Competition Theory Is Legally Invalid as Fatally
      Speculative and Fails the FTC's Own Standard ...........................................16

CONCLUSION ...........................................................................................................20

DEFENDANTS' MOTION TO DISMISS                Case No. 5:22-cv-04325-EJD

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 7

*B.A.T. Indus., Ltd., In re*, 1984 WL 565384 (FTC Dec. 17, 1984) .................................... 2, 11, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 2, 7, 8, 12, 13, 16, 19

*BOC Int'l Ltd. v. FTC*, 557 F.2d 24 (2d Cir. 1977) ........................................... 17

*DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758 (9th Cir. 2018) ............................ 14, 18

*DeSoto Cab Co. v. Uber Techs., Inc.*, 2018 WL 10247483 (N.D. Cal. Sept. 24, 2018) .............. 12

*DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................... 13

*Fraser v. Major League Soccer, L.L.C.*:

     97 F. Supp. 2d 130 (D. Mass. 2000) ................................................. 17

     284 F.3d 47 (1st Cir. 2002) ......................................................... 11

*FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977) .................................... 1, 2, 11, 16, 19

*FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015) ....................................... 1

*FTC v. Tenneco, Inc.*, 433 F. Supp. 105 (D.D.C. 1977) ............................................ 1

*Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943 (E.D. Mo. 2009),
     *aff'd*, 623 F.3d 1229 (8th Cir. 2010) ............................................... 18

*Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834
     (N.D. Cal. Mar. 11, 2008) ........................................................... 15

*Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422 (9th Cir. 1993) ........................... 12, 13

*Milpitas Mobile Home Estates v. City of Milpitas*, 2014 WL 4244246
     (N.D. Cal. Aug. 26, 2014) ............................................................ 7

*Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851 (2d Cir. 1974) ...................... 9-10

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2017 WL 4310767
     (N.D. Cal. Sept. 28, 2017) ........................................................... 15

*PNY Techs., Inc. v. SanDisk Corp.*, 2012 WL 1380271 (N.D. Cal. Apr. 20, 2012) ................... 15

DEFENDANTS' MOTION TO DISMISS          Case No. 5:22-cv-04325-EJD

*Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) ............................ 11, 12, 13

*Republic of Texas Corp. v. Board of Governors of Fed. Rsrv. Sys.*, 649 F.2d 1026
    (5th Cir. Unit A June 1981) ................................................................ 9

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ..................................................... 7

*Tenneco, Inc. v. FTC*, 689 F.2d 346 (2d Cir. 1982) ........................................................ 18

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022
    (10th Cir. 1992) .................................................................................. 12

*United States v. Aetna Inc.*, 240 F. Supp. 3d 1 (D.D.C. 2017) ....................................... 17

*United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729 (D. Md. 1976) ............................... 14

*United States v. Crocker-Anglo Nat'l Bank*, 277 F. Supp. 133 (N.D. Cal. 1967) ........................ 14

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973) ........................................ 16

*United States v. Hughes Tool Co.*, 415 F. Supp. 637 (C.D. Cal. 1976) ....................................... 11

*United States v. Marine Bancorporation, Inc.*, 418 U.S. 602 (1974) ..................... 1, 2, 3, 8, 9, 10,
    11, 14, 15, 16, 18, 19

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980) ..................................... 1, 11, 17, 19

*United States v. Syufy Enters.*, 903 F.2d 659 (9th Cir. 1990) ........................................... 11, 12, 13

*Yamaha Motor Co. v. FTC*, 657 F.2d 971 (8th Cir. 1981) ........................................... 17

**STATUTES AND RULES**

Clayton Act, 15 U.S.C. § 12 *et seq.* ..................................................................... 1

    § 7, 15 U.S.C. § 18 ............................................................................ 1, 6, 7, 17, 19

Sherman Act, 15 U.S.C. § 1 *et seq.* ..................................................................... 15

    § 2, 15 U.S.C. § 2 ............................................................................... 15

Fed. R. Civ. P.:

    Rule 8 ....................................................................................................... 19

    Rule 12(b)(6) .......................................................................................... 1

DEFENDANTS' MOTION TO DISMISS           Case No. 5:22-cv-04325-EJD

1

**ADMINISTRATIVE MATERIALS**

2

U.S. Dep't of Justice, *Herfindahl–Hirschman Index*,
  https://www.justice.gov/atr/herfindahl-hirschman-index ................................................... 13

U.S. Dep't of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines*
  (Aug. 19, 2010) ............................................................................................................... 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS       Case No. 5:22-cv-04325-EJD

**STATEMENT OF REQUESTED RELIEF**

Meta and Within respectfully request that the Court dismiss with prejudice the FTC's

Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM AND POINTS OF AUTHORITIES**

**INTRODUCTION**

The Federal Trade Commission seeks to enjoin a vertical merger between Meta, which sells

the Quest 2 Virtual Reality ("VR") headset, and Within, which offers a VR fitness application

called Supernatural.  On October 7, 2022, the FTC amended its Complaint to abandon its claim that

the challenged transaction between Meta and Within would lessen competition in a supposed

market for VR fitness apps – defined to include both "dedicated" and "incidental" fitness apps.

This amendment leaves only the FTC's claim that "potential competition" in a supposed market

limited to "dedicated" VR fitness apps would be lessened, either because Within may have *believed*

that Meta might enter with its own product or because Meta *would* have actually offered a VR

fitness app to compete with Supernatural.  In the past four decades, no court has accepted a

"potential competition" theory to find an acquisition in violation of Section 7 of the Clayton Act; on

the contrary, every time the FTC has sought to enjoin such a transaction on that theory, the court

has denied injunctive relief.[1]  Because the FTC's Amended Complaint makes clear that the FTC has

no viable claim here as a matter of law, Defendants are promptly moving to dismiss the sole

remaining claim with prejudice.

*First*, the Supreme Court has made clear that any "potential competition" claim requires

facts demonstrating that the relevant market is not functioning competitively.  *See United States v.*

*Marine Bancorporation, Inc.*, 418 U.S. 602, 630 (1974) ("If the target market performs as a

competitive market in traditional antitrust terms, the participants in the market will have no

---

[1] *See FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977); *FTC v. Steris Corp.*,

133 F. Supp. 3d 962 (N.D. Ohio 2015); *FTC v. Tenneco, Inc.*, 433 F. Supp. 105 (D.D.C. 1977);

*see also United States v. Siemens Corp.*, 621 F.2d 499, 504-05 (2d Cir. 1980) (affirming denial of

Department of Justice preliminary injunction).

DEFENDANTS' MOTION TO DISMISS                    Case No. 5:22-cv-04325-EJD

occasion to fashion their behavior to take into account the presence of a potential entrant.").  The market must be "oligopolistic" – mature, protected by high barriers to entry, and dominated by a small number of firms with stable market shares that engage in interdependent parallel conduct to the detriment of consumers.  Here, the FTC claims only that *Within* – *not* Meta – ████████████ ████ and says nothing about purported oligopolistic behavior at all.  On the contrary, the FTC's own Amended Complaint alleges that the "VR industry is currently characterized by a high degree of innovation and growth."  Am. Compl. ¶ 25.  The VR space is highly competitive, with hundreds of third-party apps, and more to come.  *See id.* ¶¶ 28, 83, 98.  The alleged market is brand new (3 years old), rapidly growing, and characterized by rapid entry – *according to the FTC*.  That alone forecloses any "potential competition" claim as a matter of law.

*Second*, the FTC's theory of "*perceived* potential competition" rests on nothing more than the speculation that Within and others may have "competed harder" for fear of entry by Meta or others.  *Id.* ¶ 11.  But the Supreme Court has held that more is required, as a matter of both pleading standards (*Twombly*, which held that such conclusory allegations – *including* specifically allegations about likely market entry – must be disregarded) and substantive antitrust law, which requires that the FTC allege facts establishing that supposed fear of Meta entry, and Meta entry alone, *actually restrained* "oligopolistic behavior" by Within or other VR fitness app providers.  *Marine Bancorporation*, 418 U.S. at 623-25; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  No such facts are pleaded here.  The FTC's "perceived potential competition" theory does not even come close to the high bar set by the Supreme Court.

*Third*, the FTC's alternative theory of "*actual* potential competition" invokes a dead-letter doctrine.  The Supreme Court has pointedly declined to adopt it, this Circuit has never applied it, and no other Circuit has accepted it in a case involving a new product not already offered by the acquiring firm.  If the doctrine has validity at all, it requires facts nowhere pleaded in the Amended Complaint.  The FTC itself has recognized that the proponent of this theory must provide "clear proof that independent entry would have occurred but for the merger or acquisition."  *In re B.A.T. Indus., Ltd.*, 1984 WL 565384, at *10 (FTC Dec. 17, 1984); *see Atlantic Richfield*, 549 F.2d at 300.  Moreover, such entry must have been "imminent."  *Marine Bancorporation*, 418 U.S. at 623 n.22.

2

The FTC does not allege that Meta ever had any plan or intention to offer its own fitness app – much less imminently – but merely asserts that Meta's entry was "a reasonable probability" in a "reasonable period of time."  Am. Compl. ¶¶ 62, 87.  Such admitted speculation cannot state a claim, as the Supreme Court held in *Marine Bancorporation* and as the FTC itself has recognized, if the doctrine even exists.

The FTC conducted a long investigation and has already amended once.  The Court should accordingly grant the motion to dismiss with prejudice.

## BACKGROUND

### A.      Meta's Investments in the VR Industry

Meta aims to make VR "the next wave of computing" – a general computing "platform" with multiple use cases to compete with mobile smartphones, tablets, and PCs.  Am. Compl. ¶ 7. The "VR industry is currently characterized by a high degree of innovation and growth."  *Id.* ¶ 25. "Global sales" within the industry "are predicted to more than double in just three years, from $5 billion in 2021 to more than $12 billion in 2024."  *Id.*  Of that $5 billion in global sales, Meta's VR division ("Reality Labs") earned "revenues of $2.274 billion in 2021," which includes both sales of VR headsets and revenue from Meta's "best-selling VR software," such as the "popular Beat Saber" game.  *Id.* ¶ 22.

Meta has invested billions of dollars to grow VR, beginning "in 2014 when it acquired Oculus VR" (a "VR headset manufacturer").  *Id.* ¶ 3.  "In 2021," Meta "spent more than $12 billion on its Reality Labs division" (compared to its approximately $2 billion in revenue).  *Id.* ¶ 60.  That spending on research and development has increased in recent years, from "more than $7.7 billion in 2020," to "$12.4 billion in 2021," and "$3.6 billion in the three-month period ending in March 2022."  *Id.* ¶ 58.  "In a recent earnings report, Meta announced that it anticipated spending some $10 billion across its Reality Labs division" and "that it is committed to increasing those investments over the next several years."  *Id.* ¶ 93.

Despite Reality Lab's "breakneck" growth, *id.* ¶ 22, Meta sold just "8.7 million Quest 2 headsets" in 2021, *id.* ¶ 27 – compared to the "more than three billion regular users" of its other services, *id.* ¶ 2.  Accordingly, the FTC alleges that, "to attract users" to its VR platform, Meta

3

"subsidizes" VR devices (the hardware) or sells them "at cost." *Id.* ¶ 3.  Meta also tries attracting

app "developers" to its VR platform because the "acquisition of new users, content, and developers

each feed into one another." *Id.* ¶ 6.  More content attracts more users to buy more headsets, which

then encourages more developers to build apps for the Quest.  *See id.* "This market dynamic can

spur companies to compete harder in beneficial ways by, for example, adding useful product

features or hiring additional employees." *Id.*

   VR platforms like Meta's Quest depend on stocking the virtual shelves of VR app stores that

distribute the many "apps that run on VR headsets," running "the gamut of genres from rhythm

games to shooters to e-sports to creation and exploration and more." *Id.* ¶ 29.  For example, Meta

connects consumers and app developers on its VR platform through the "Quest Store," which has

"more than 400 apps available for download." *Id.* ¶ 28.  VR consumers can also download apps and

games from "[o]ther VR app stores" not owned by Meta, including "Valve's Steam Store and

SideQuest." *Id.*  On its Quest Store, Meta distributes both first-party titles (which Meta owns), as

well as third-party titles (from independent app developers).  *See id.* ¶ 45.

   Developers can build apps from scratch – for example, Within built Supernatural "from the

ground up into the ███████ VR dedicated fitness app," ██████████████████████

████████████████████████████████. *Id.* ¶ 61.  As such, there are many VR

app developers:  among the hundreds of third-party apps available on the Quest Store, *see id.* ¶ 28,

there are multiple games and fitness apps, *see id.* ¶ 45, with more to come.  As one of Within's

founders stated, ██████████████████████ *Id.* ¶ 98.

**B.**  **The Within Transaction**

   Meta reached an agreement to acquire Within and its Supernatural fitness app for

approximately ████████.  *See* Am. Compl. ¶¶ 1, 24.  The FTC alleges that Supernatural is a

"dedicated fitness" app, ████████████████████████████████████

██████████████████. *Id.* ¶ 70.  It further alleges that, "[a]mong VR apps, dedicated or

deliberate fitness is █████████████████████████████████████████████

████████ *Id.* ¶ 33.  According to the FTC, Meta wants to acquire Supernatural to enter this ███████

DEFENDANTS' MOTION TO DISMISS      Case No. 5:22-cv-04325-EJD

1     ██████████████ and thereby "reach new categories of consumers," as ███████████

2 ████████████████████████████████████ *Id.* ¶¶ 33, 71.

3        The FTC claims this is part of Meta's ███████████████████████ on VR,

4 which includes "█████████ platform-level tools such as Oculus Move, a calorie and time counter

5 that runs in the background of other Quest apps and displays to users data about their activity levels

6 while in VR." *Id.* ¶ 33. Meta views fitness as a █████████ in VR and is █████████████

7 █████████ including by offering appealing hardware (such as the VR headsets and Oculus Move

8 calorie-tracking functionality) as well as software (through apps like Supernatural). *Id.* ¶¶ 33, 64,

9 93.

10        The FTC alleges that Meta views Supernatural as a "killer app[]" that can "prove the value

11 of the technology" to users and drive adoption of the VR platform. *Id.* ¶ 7. There are multiple other

12 fitness apps on VR – including "FitXR, Holofit from Holodia, VZFit form Virzoom, and Les Mills

13 Body Combat from Odders Lab," *id.* ¶ 45 – in addition to other competing fitness products like non-

14 VR "smart at-home fitness solutions" (e.g., the "Peloton smart bicycle"), *id.* ¶ 44.

15 **C.  Procedural History**

16        A divided FTC voted (3-2) to file a complaint seeking a temporary restraining order and

17 preliminary injunction blocking Meta's acquisition of Within. *See* Dkt. 1 ("Compl."). At the time

18 of filing, the FTC had not addressed Meta's petition seeking the recusal of Chair Khan on the

19 ground that her biased participation would render the proceeding constitutionally and procedurally

20 improper. Chair Khan, instead of recusing, cast the deciding vote in favor of commencing this

21 action, reportedly against the advice of FTC staff, despite the FTC having taken zero depositions.

22        The FTC's original Complaint alleged two contradictory claims. First, the FTC asserted that

23 it was "reasonably probable" that Meta would have made its own "dedicated fitness" app to

24 compete with Supernatural "by means other than this Acquisition"; or, in the alternative, that

25 Within perceived Meta's entry to be likely and was motivated to compete harder because of this.

26 *See* Compl. ¶¶ 71-116. Second, the FTC alleged that Supernatural competes with the Meta app

27 Beat Saber and several other VR apps providing "incidental" fitness benefits – and Meta should not

28

DEFENDANTS' MOTION TO DISMISS          Case No. 5:22-cv-04325-EJD

own two successful competitors in this "broader relevant market for VR fitness apps."  *Id.* ¶ 1; *see also id.* ¶¶ 117-130.

To support its initial allegation that Supernatural competes with these "incidental fitness" apps on VR, the FTC claimed that Beat Saber was one of "the most significant VR fitness apps," *id.* ¶ 12, and that, "[a]s of June 2022, a search" in the Quest Store "for the keyword 'exercise' returns 15 apps, including both Supernatural and Beat Saber," *id.* ¶ 120.  Other apps in the "incidental fitness category" that "allow users to get a workout as a byproduct of their use" – which thereby allegedly exert competitive pressure on Supernatural – include "'rhythm' games like Beat Saber, Pistol Whip, and OhShape, where a user must dodge, strike, or shoot targets along to music, as well as active sports games like Thrill of the Fight, a boxing simulator."  *Id.* ¶ 51; *see id.* ¶ 50 ("This broader market includes both VR dedicated fitness apps and incidental fitness apps, such as rhythm and active sports games – including Meta's ███████ Beat Saber.").  The FTC alleged that "ongoing competition between Beat Saber and Supernatural" – and the other "incidental" fitness apps on VR in this "broader market" – ████████████████████████████████████ ████████████████████████████████████  *Id.* ¶¶ 109, 117, 123.

Defendants responded to this traditional Section 7 claim – which the FTC argued would subject the transaction to a presumption of unlawfulness upon showing a certain market concentration, *see* Dkt. 11 at 20 – by answering and filing several affirmative defenses, *see* Dkt. 83.  Defendants also propounded interrogatories asking the FTC to identify its "basis" and "methodology used to derive the alleged relevant markets," as well as to identify "all applications or products included in the 'VR dedicated fitness applications' and 'VR fitness applications' markets."  Dkt. 98-1 at 10, 15.

The FTC's responses to these interrogatories were both revealing and insufficient.  For instance, the FTC stated that, "based on discovery to date and public information," two new apps – "Les Mills' Body Combat VR and Liteboxer VR" – had "entered the VR Dedicated Fitness App market in 2022," Dkt. 91-1 at 31, increasing the number of firms the FTC claims exist in that market by 40 percent (from 5 to 7) in 2022 alone.  But the FTC did not adequately disclose its

DEFENDANTS' MOTION TO DISMISS                    Case No. 5:22-cv-04325-EJD

methodology for deciding which apps were in or out of its originally alleged markets.  Meta

therefore moved to compel disclosures responsive to these interrogatories.

On September 30, 2022, Magistrate Judge Van Keulen ordered the FTC to identify "*all* facts

currently known to it that support its methodology to derive the alleged relevant markets" and

"*all* applications or products currently known to it that are included in the relevant markets alleged"

– by October 3, 2022.  Dkt. 98-1 at 6, 10, 15 (emphases in original).

Instead of making a serious effort to respond to that order, on September 30, 2022 – the

same day as Magistrate Judge Van Keulen's decision – the FTC voted (4-0, with one abstention) to

amend the Complaint by abandoning the claim that Supernatural and Beat Saber are competitors in

a broader "VR fitness app" market, such that the acquisition would unlawfully combine horizontal

competitors in violation of Section 7.

The FTC is now pursuing only its "potential competition" theories:  that Meta was a

"perceived" or "actual" potential competitor in the alleged "VR Dedicated Fitness" market.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, [if] accepted as true, to state a claim

to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted), and that rises "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  The Court "need not accept as true legal conclusions cast in the form of factual

allegations."  *Milpitas Mobile Home Estates v. City of Milpitas*, 2014 WL 4244246, at *2 (N.D. Cal.

Aug. 26, 2014) (Davila, J.).  "Dismissal under Rule 12(b)(6) is proper when the complaint either

(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal

theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

## ARGUMENT

Having abandoned its claim that Meta and Within compete for fitness consumers, the FTC

proceeds only on the claim that Meta and Within *could* compete, and that the fear of such

competition drives Within and others to compete more strenuously.  The FTC argues both

"perceived potential competition" and "actual potential competition" as grounds for blocking this

vertical transaction.  But these "potential competition" theories of Section 7 liability have not been

7

successfully employed for many decades.  And for good reason.  The Supreme Court made clear in *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602 (1974), that no "potential competition" theory can proceed in the absence of factual allegations that the affected market is not functioning as a competitive market.  *Id.* at 625.  No such facts have been pleaded here.  On the contrary, the FTC itself alleges that the putative market is highly competitive:  brand new, rapidly developing, growing fast, and subject to significant entry.  (Part I *infra*.)

In addition, the FTC's "perceived" potential competition theory runs headlong into *Marine Bancorporation*'s express requirement that it allege facts to establish that fear of Meta's possible entry, and that alone, *actually* restrained anticompetitive, oligopolistic behavior by the current participants in the "VR Deliberate Fitness" market.  No such facts are alleged.  On the contrary, all that is alleged is the empty conclusion that Within and others are motivated to do better by the possibility that Meta and others will compete with them.  That pleading fails *Twombly* as well as *Marine Bancorporation*.  This demanding requirement explains why no court since *Marine Bancorporation* has ever upheld such a claim.  (Part II *infra*.)

Finally, the FTC's alternate theory ("actual potential competition") rests on speculation that Meta would have eventually developed its own fitness product if it had not acquired Within.  Unlike "perceived potential competition," which the Supreme Court acknowledged as at least an abstract possibility (though one with requirements no litigant has since met), the Supreme Court has repeatedly and conspicuously declined to endorse this inherently speculative theory.  And no other court has endorsed it in a case like this one, involving a claim that an acquirer might on some future date offer a product that it had not offered before.  The FTC itself, following *Marine Bancorporation*, adopted as an element of the claim "clear proof" of independent entry, and that entry must have been "imminent" at the time of the acquisition.  Indeed, assuming the theory is viable at all, the FTC must plead facts alleging the acquirer's *imminent* entry to the high standard of "clear proof" – the mere possibility of entry at some undefined future time is never enough.  The Amended Complaint lacks any factual allegation that Meta was ever in fact planning to offer its own fitness app – much less imminently – or would actually have done so if its plan to acquire Within could not be accomplished.  The FTC substitutes its own business judgment for Meta's and

8

relies entirely on its speculation about what might have made sense for Meta in the absence of its decision to acquire Within.  That is patently insufficient.  (Part III *infra*.)

**I.    The FTC Claim Fails for Lack of Facts Establishing Plausible Claim of Non-Competitive Market**

In *Marine Bancorporation*, the Supreme Court was careful to instruct that any "potential competition" claim requires facts establishing that the alleged market is not functioning as a competitive market, because "the participants in the [already-competitive] market" will already be acting competitively and "will have no occasion to fashion their behavior to take into account the presence of a potential entrant."  418 U.S. at 630.  There is "no need for concern about the prospects of long-term deconcentration of a market which is in fact genuinely competitive."  *Id.* at 631.

Accordingly, the "potential-competition doctrine . . . comes into play *only* where there are dominant participants in the target market engaging in interdependent or parallel behavior *and* with the capacity effectively to determine price and total output of goods or services."  *Id.* at 630 (emphases added).  No such facts are pleaded in the Amended Complaint.  Importantly, both anticompetitive behavior *and* structure must be alleged.  The FTC's failures to plead facts showing *either* (a) present oligopolistic conduct or (b) a concentrated market with high barriers to entry therefore bar its claims.  *See Republic of Texas Corp. v. Board of Governors of Fed. Rsrv. Sys.*, 649 F.2d 1026, 1044 (5th Cir. Unit A June 1981) (holding that proof of an oligopolistic market was "necessary before [courts] could evaluate the viability of this controversial [potential competition] antitrust theory").

**A.    The FTC Fails To Allege Interdependent or Parallel Behavior**

To state a plausible claim that the "dominant participants in the target market" are "engaging in interdependent or parallel behavior," the FTC must come forward with facts showing a stable market that is afflicted by coordinated, profit-maximizing behavior among participants.  *Marine Bancorporation*, 418 U.S. at 630; *see Republic of Texas*, 649 F.2d at 1044.  "The vices of an oligopolistic market lie in price and other agreements among the oligopolists . . . – or what amounts to nearly the same thing – their slothful acquiescence in a state of affairs beneficial to all."  *Missouri*

9

*Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 860 (2d Cir. 1974) (Friendly, J.) (rejecting potential competition claims).

The FTC alleges nothing close.  There is no allegation that the market is stable or even that Within is profitable.  There is no allegation that Within or its rivals charge similar or supracompetitive prices.  *See* Am. Compl. ¶ 45 (alleged rivals include FitXR, Holofit, VZFit, and Les Mills Body Combat).  There also is no allegation that these VR Dedicated Fitness apps restrict output or decline to innovate or compete.  There is no allegation that they coordinate in any way, expressly or tacitly.

In fact, the FTC pleads the opposite of an oligopolistic market.  Far from a stable, "slothful" oligopoly, in 2021, ███████████████████████████████████████████ ████████████████████████████████ *Id.* ¶ 70; *see id.* ¶ 72 (alleging the market's ████████████████).  And far from oligopolistic coordination, ███████████████ ███████████████████████████████████████████ *Id.* ¶ 53.  The FTC even affirmatively alleges that Within sees itself as operating in an intensely competitive space, for it ██████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* ¶ 98; *see id.* ¶¶ 99-101 ███████████████████████████ ████████████████████████.

The FTC's failure to plead that the market is afflicted by anticompetitive, oligopolistic behavior requires dismissal, because that is a necessary element of any valid potential competition claim that may still exist.  *See Marine Bancorporation*, 418 U.S. at 630.

**B.**     **The FTC Fails To Allege Facts Establishing a Concentrated Market with High Barriers to Entry**

Equally dispositive is the lack of any facts showing that the FTC's claimed market here is concentrated or protected by high barriers to entry.  The facts the FTC does plead establish the opposite.

DEFENDANTS' MOTION TO DISMISS                    Case No. 5:22-cv-04325-EJD

1.      Where many firms could enter a market, even existing firms with high market shares
will not have "the capacity effectively to determine price and total output of goods or services."
*Marine Bancorporation*, 418 U.S. at 630; *see Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421,
1439 (9th Cir. 1995) (explaining that, for a firm or firms to have "the power to control prices, entry
barriers must be significant"); *United States v. Syufy Enters.*, 903 F.2d 659, 671 n.21 (9th Cir. 1990)
("[T]he lack of entry barriers prevents the government from prevailing on its Clayton Act claim, as
Syufy's acquisition of its competitors was not likely to substantially lessen competition."); *Fraser v.
Major League Soccer, L.L.C.*, 284 F.3d 47, 71 (1st Cir. 2002) (Boudin, J.) (noting that potential
competition theories are invalid "in the absence of significant market power in the hands of existing
firms").

Accordingly, courts – and the FTC itself – have consistently rejected potential competition
claims because of the absence of facts establishing that entry barriers are high or potential entrants
scarce. *See In re B.A.T. Indus., Ltd.*, 1984 WL 565384, at *8 (FTC Dec. 17, 1984) (affirming ALJ
decision dismissing complaint) ("[T]he acquiring firm must be one of only a few equally likely
actual potential entrants, since eliminating one of many potential entrants could not be expected to
eliminate substantial future competition.").  In *United States v. Siemens Corp.*, 621 F.2d 499 (2d
Cir. 1980), the Second Circuit rejected the government's suit because "there [we]re at least six other
companies which [we]re potential entrants into the market." *Id.* at 509 (internal quotation marks
omitted).  In *FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977), the court similarly
rejected a potential competition claim because there were many potential and recent entrants. *See
id.* at 300 ("[I]n the past ten years, seven firms have entered uranium production by internal
expansion . . . .  It is, therefore, unlikely that even were [the defendant] to be a potential entrant, its
loss would have a significant anticompetitive effect.").  And in *United States v. Hughes Tool Co.*,
415 F. Supp. 637 (C.D. Cal. 1976), the court rejected the government's claim where various firms'
responses to a court questionnaire revealed many other potential entrants. *See id.* at 646.

2.      The FTC here alleges nothing more than time and money as entry barriers.  To state
the obvious, time and money are always required for new enterprises.  But the FTC must point to
more than the time and money required to make any app and to barriers besides the fear of

11

"efficient, aggressive competition." *Syufy*, 903 F.2d at 667.  "Entry barriers are 'additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants,' or 'factors in the market that deter entry while permitting incumbent firms to earn monopoly returns.'"  *Rebel Oil*, 51 F.3d at 1439 (quoting *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1427-28 (9th Cir. 1993)).  "The main sources of entry barriers are:  (1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preferences for established brands; (4) capital market evaluations imposing higher capital costs on new entrants; and, in some situations, (5) economies of scale." *Id.* (footnote omitted).

Paragraphs 104-107 mark the FTC's meager attempt to plead barriers to entry:

*First*, without any detail, let alone the factual allegations *Twombly* requires, the FTC asserts that new entrants will face constraints of "time, . . . ongoing development and content creation costs, post-launch support, capital, brand recognition, . . . the need for consumers to be able to discover the app," and the need to hire talented employees.  Am. Compl. ¶ 104.  All of those are required to succeed in every industry, even the most easily entered; they are not antitrust barriers to entry.  *See DeSoto Cab Co. v. Uber Techs., Inc.*, 2018 WL 10247483, at *8-9 (N.D. Cal. Sept. 24, 2018) (dismissing federal antitrust claim for failure to allege valid barriers to entry).  Indeed, capital costs cannot constitute an entry barrier absent some plausible allegation – lacking here – that "capital costs for new entrants and incumbents in the market differ, or that it is any more difficult for new entrants to obtain financing than incumbents." *Los Angeles Land*, 6 F.3d at 1428.  The *facts* the FTC alleges regarding entry belie any such showing:  startup Within "built Supernatural from the ground up" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Am. Compl. ¶ 61, and dedicated fitness is ▮▮▮▮▮▮▮▮▮▮▮▮▮ on the Quest platform, *id.* ¶ 70.  And the FTC further alleges that a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 62, 77.

*Second*, the FTC mentions "network effects" as a barrier to entry.  *Id.* ¶ 104.  This conclusory invocation of "network effects" does not move the needle.  *See TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) ("The use of antitrust 'buzz words' does not supply the factual circumstances necessary to support [plaintiff]'s conclusory

allegations.").  There are no facts alleged to explain how "network effects" matter to consumers who want to use VR apps to exercise.  A network effect exists where "the utility that a user derives from consumption of the good increases with the number of other agents consuming the good," e.g., "demand to use" a "telephone network increases with the number of other users on the network." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1137-38 (N.D. Cal. 2010) (cleaned up). The FTC alleges nothing of the sort as to VR Dedicated Fitness apps.  Indeed, the "network effects" to which the FTC gives passing mention are expressly alleged as to the VR "platform" itself, and not as to specific fitness apps on that platform.  Am. Compl. ¶¶ 5-7.  And such hypothesized effects have not stopped the expansion of firms to at least five at the time the FTC filed the original Complaint.  *See id.* ¶ 45.

*Third*, the FTC asserts that Meta could in the future ██████████████████████ ██████ and that this possibility will deter other firms, which will not want "to compete with a deep-pocketed platform operator."  *Id.* ¶ 107.  But fear of competition is not a barrier to entry as a matter of law.  *See Syufy*, 903 F.2d at 667; *Los Angeles Land*, 6 F.3d at 1427 (reversing jury award on federal antitrust claim; "threatening to compete" does not create "any actual barrier[] to [new] entry into the market").  And the FTC's theorizing that Meta might keep developers *off* the Quest platform is speculative, ungrounded by any concrete facts, and fails *Twombly* – not least because it contradicts other allegations that "Meta seeks to exploit the network-effects dynamic in VR" by recruiting *more* developers (and thus users) to the Quest platform.  Am. Compl. ¶ 7.  Indeed, the FTC's surmise that Meta will one day "entrench[]" Supernatural implies that there are not currently any such "entrenched buyer preferences for established brands" in this new and fast-evolving market.  *Rebel Oil*, 51 F.3d at 1439.

**3.**     The FTC's allegation regarding market share does not suffice to plead concentration or remove the need to plead high barriers to entry.  The FTC does not allege any specific HHI[2] for the VR Dedicated Fitness market.  Setting aside conclusory statements that the market is

_____

[2] The Herfindahl-Hirschman Index ("HHI") is a standard measure of industry concentration. *See* https://www.justice.gov/atr/herfindahl-hirschman-index.

1   concentrated, *see* Am. Compl. ¶¶ 48-54, █████████████████████████████████

2   █████████████████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████. But the FTC

4   does not allege that these historical █████████ are likely to persist, where there is ███████

5   ███████████████████████████████████████████████████████████████████████

6   ████████████████. *Id.* ¶¶ 70, 98-99; *see id.* ¶¶ 82-83 ██████████████████████████

7   ████████████████.

8         The FTC's snapshot of ███████████████ cannot alone raise an inference of market

9   concentration, because such an inference would make *any* new product market automatically

10  "concentrated." The reality, as the FTC itself pleads, is exactly the opposite – the alleged market is

11  brand new. While the first successful firm in a new market may temporarily gain much of the

12  ███████, that growth soon attracts entry, as the FTC claims is occurring here. *See id.* ¶¶ 70-71, 92-

13  96, 98. Moreover, the FTC conspicuously declines to plead facts establishing that ██████████

14  ████████████████████████████████████████████████ – is a valid basis from

15  which to calculate a market share or claim concentration in this market. *See United States v.*

16  *Crocker-Anglo Nat'l Bank*, 277 F. Supp. 133, 164 (N.D. Cal. 1967) (rejecting concentration claim

17  because "plaintiff's concentration figures" are "inconsistent with plaintiff's theories of market,

18  unreliable and unsound") (capitalization omitted); *cf. Marine Bancorporation*, 418 U.S. at 609, 631

19  (calculating share based on "total deposits," ██████████); *United States v. Black & Decker Mfg.*

20  *Co.*, 430 F. Supp. 729, 748 (D. Md. 1976) (share based on "units" sold, ██████████); U.S. Dep't of

21  Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines* § 5.2, at 17 (Aug. 19, 2010) (██

22  ████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████).

24                              *      *      *

25         In sum, the FTC's conclusory, speculative, and contradictory allegations do not plausibly

26  plead any facts to establish that any supposed market for VR Deliberate Fitness apps is

27  "oligopolistic" as to either behavior or structure. That requires dismissal. *See DeHoog v.*

28  *Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 764-65 (9th Cir. 2018) (affirming dismissal for failure

                                        14

to plausibly allege elements of potential competition claim); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2017 WL 4310767, at *9 (N.D. Cal. Sept. 28, 2017) (Davila, J.) (dismissing analogous Sherman Act Section 2 claim because "[t]he Complaint does not plausibly allege significant barriers to entry" and "[a]llegations describing barriers to expansion are also conspicuously missing"); *PNY Techs., Inc. v. SanDisk Corp.*, 2012 WL 1380271, at *9 (N.D. Cal. Apr. 20, 2012) (similarly dismissing for failure to allege "significant barriers to entry and that existing competitors lack the capacity to increase their output"); *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008) (dismissing claim because facts alleged undermined claim of market power).

## II.   The FTC's Perceived Potential Competition Theory Fails Because the FTC Does Not Allege Facts Establishing That Fear of Meta Actually Prevented Oligopolistic Behavior

The FTC's perceived potential competition claim also fails for the independent reason that the Amended Complaint contains no facts making a plausible claim that fear of possible Meta entry, and Meta entry alone, *actually* restrained anticompetitive behavior by Within and other VR Deliberate Fitness app providers.  The Supreme Court in *Marine Bancorporation* expressly required that "the acquiring firm's premerger presence on the fringe of the target market *in fact* tempered oligopolistic behavior on the part of existing participants in that market."  418 U.S. at 624-25 (emphasis added).

The Amended Complaint neither alleges any oligopolistic behavior – no stable market shares, no price agreements or coordination, no output restriction, no other parallel conduct – nor pleads facts establishing that such anticompetitive behavior was halted only by the looming supposed presence of Meta at the edge of the market.  Certainly that is a demanding requirement, but the last and authoritative guidance on such claims from the Supreme Court was careful to limit the doctrine to extreme cases, lest it be deployed casually to prevent beneficial acquisitions based on speculation about merely conceivable as opposed to actual effects of an acquirer's perceived presence at the edge of the market.

What the FTC has alleged comes nowhere close to that requirement.  The FTC alleges only that generalized fear of possible entry by Meta is a spur to competition.  *See* Am. Comp. ¶¶ 97-102.

15

There are no facts alleged as to why only Meta has that effect.  Indeed, ███████████

██████████████████████████████.  *See id*. ¶ 98.  And there is nothing other than

empty rhetoric about what positive benefits have resulted specifically from the supposed

competitive spur caused by possible Meta entry.  The FTC's argument is speculative, based on no

specific facts, and could be made in almost every case.  It can always be argued that possible

independent entry by an acquiring firm serves as a motivator.  But no court has ever found such

weak facts sufficient, and the Supreme Court has made clear that they are not.

### III.   The FTC's Actual Potential Competition Theory Is Legally Invalid as Fatally Speculative and Fails the FTC's Own Standard

The FTC's backup theory – "actual potential competition" or the notion that Meta might

develop its own fitness application to compete with Supernatural – has no sound legal foundation.

Since *Marine Bancorporation* pointedly refused to endorse it, noting the inherently speculative

nature of such claims, the Court has decided another seminal case that makes such speculation

insufficient as a matter of law.  *See Twombly*, 550 U.S. at 555 ("[f]actual allegations must be

enough to raise a right to relief above the speculative level").  The FTC's claim here is both

speculative and insufficient even to satisfy the FTC's own standards for making the claim.

1.     As the Supreme Court warned in declining to accept the viability of actual potential

competition as a concept, even before *Twombly*, "proof" – beyond mere speculation – "that an

acquiring firm actually would have entered de novo but for a merger is rarely available."  *Marine*

*Bancorporation*, 418 U.S. at 624; *see also United States v. Falstaff Brewing Corp.*, 410 U.S. 526,

537 (1973) (declining "to reach the question" whether actual potential competition is a cognizable

theory).  Since *Marine Bancorporation*, that has proven fatal to every actual potential competition

claim that involved a new product.[3]  *See Atlantic Richfield*, 549 F.2d at 294 ("The novelty of the

---

[3] More than 40 years ago, the Eighth Circuit upheld an FTC challenge to a joint venture

based on the claim that it blocked geographic entry by an *existing*, actual competitor that produced

and sold the relevant product in every developed country except the highly concentrated U.S.

market and where that competitor had already tried to enter the United States on two occasions and

16

[actual potential competition] doctrine and the absence of definitive authority sanctioning it and defining its parameters could well serve as a basis for denial of a preliminary injunction under § 13(b), since it is difficult, if not impossible, to determine FTC's chances of ultimate success when the law is so uncertain and the parameters of the doctrine obscure.").

Indeed, neither the Ninth Circuit nor this Court – nor any other federal appellate court – has accepted actual potential competition as a reason to bar an acquisition. Instead, many courts have doubted the theory's viability precisely because it is inherently speculative. The notion that a firm *could* one day decide to enter, which *could* lead to deconcentration of a market that would otherwise have remained oligopolistic, is no basis for a Section 7 claim. *See Siemens*, 621 F.2d at 504 ("[o]ne possible reason for the Supreme Court's reluctance to embrace the doctrine is that it rests on speculation"); *BOC Int'l Ltd. v. FTC*, 557 F.2d 24, 25 (2d Cir. 1977) (stating "the issue of the doctrine's basic validity" is unresolved); *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 75 (D.D.C. 2017) (describing "potential competition" as "a never-embraced theory for antitrust liability").

**2.** It is therefore quite unlikely that "actual potential competition" survives as a valid legal theory. Furthermore, to the extent it survives at all, the FTC has not come close to pleading the rare – never before seen – case in which actual potential competition is not speculative because there are *facts* to establish "clear proof" of imminent entry at the time of the acquisition. The FTC alleges no facts to show that Meta would actually enter the putative "VR Dedicated Fitness App" market if it did not purchase Within. All that the FTC alleges is its speculation that it might make sense for Meta to develop its own product. For example, the FTC states: "Meta *could* have chosen to try to compete with Within on the merits." Am. Compl. ¶ 5 (emphasis added). It likewise alleges

---

was prevented from doing so again only by the joint venture agreement at issue in the case. *See Yamaha Motor Co. v. FTC*, 657 F.2d 971, 974 (8th Cir. 1981). There was thus no need to speculate about whether the potential competitor could one day develop a rivalrous product – it already had. As the court in *Fraser v. Major League Soccer, L.L.C.*, 97 F. Supp. 2d 130 (D. Mass. 2000), explained in distinguishing *Yamaha*, "[t]he businesses already existed; it was the competition between them that was only 'potential.'" *Id.* at 141.

DEFENDANTS' MOTION TO DISMISS                    Case No. 5:22-cv-04325-EJD

that "Meta *could* build instead of buy," *id.* ¶ 62 (emphasis added), or it "*could*" have acquired a different studio that "*could* support" Meta in efforts to make a new fitness product, *id.* ¶ 57 (emphases added).  Such naked speculation is insufficient as a matter of law.  *See Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943, 948 (E.D. Mo. 2009) (dismissing potential competition claim on the pleadings, rejecting as speculative allegations based upon the potential entrant's "size and financial strength" or as an "industry leader"), *aff'd*, 623 F.3d 1229 (8th Cir. 2010).

The FTC intimates that Meta might have had an "incentive to develop its own competing app from scratch, add new features to Beat Saber," or acquire an unnamed studio, Am. Compl. ¶ 10 – but it alleges no facts to show that Meta actually planned to do any of that or would have done so but for the Within transaction.  The closest the FTC gets to a factual allegation is the claim ███

████████████████████████████████████████████████████████████████████████████████

████████████████████████████  *Id.* ¶ 75.  But that negotiating tactic is itself nothing more than a reference to mere "possibilities." ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████  *Id.* ¶¶ 62, 73-74.  Such trafficking in possibilities has *always* doomed actual potential competition claims like the FTC's as inherently speculative.  *See Marine Bancorporation*, 418 U.S. at 622-23 ("[Section] 7 deals in 'probabilities,' not 'ephemeral possibilities.' ").

The FTC likewise fails to allege facts showing that such entry was "imminent."  *Id.* at 623 n.22.  It does not even try to make that claim.  Instead, the FTC merely alleges that Meta "could build instead of buy within a reasonable period of time."  Am. Compl. ¶ 62.  Especially after a full investigation, such guesswork falls far short of a fact-based allegation that Meta had any imminent plans to enter.

The FTC's mere speculation – Meta "could" have done this or "considered" that – fails as a matter of law.  *See DeHoog*, 899 F.3d at 765 (rejecting potential competition claim as "classic speculative conclusion" where the complaint "offers only speculation as to how" the competitors could behave but for the transaction); *Tenneco, Inc. v. FTC*, 689 F.2d 346, 352-54 (2d Cir. 1982) (claim that defendant could have built production facilities from scratch "is based on the kind of unsupported speculation that the Supreme Court condemned").  And that conclusion is reinforced

18

by the Supreme Court's decision in *Twombly*, which not only affirmed that speculation is insufficient to meet the pleading requirements of Rule 8, but did so in the context of a conspiracy claim that was itself based on speculation that the defendants would have entered new markets but for the alleged agreement.  *See Twombly*, 550 U.S. at 569 (holding speculation about entry insufficient at the pleading stage, noting that "firms do not expand without limit and none of them enters every market that an outside observer might regard as profitable") (brackets omitted).

      **3.**      It is significant that the FTC itself, in attempting to preserve this claim for its arsenal, recognized just how severely limited it must be.  Taking its cue from *Marine Bancorporation* – where the Court expressed skepticism about the viability of the doctrine because such "[u]nequivocal proof" of entry "is rarely available," 418 U.S. at 624 – the FTC administratively endorsed a standard that requires "clear proof" of entry.  The FTC held that "clear proof that independent entry would have occurred but for the merger or acquisition should be required to establish that a firm is an actual potential competitor."  *B.A.T. Indus.*, 1984 WL 565384, at *10; *see id.* at *4 (explaining that it should be "*virtually certain* that, but for the merger or acquisition, the prospective entrant would have entered the market involved on an independent basis in the near future") (emphasis added); *see also Siemens*, 621 F.2d at 506-07 (affirming order denying preliminary injunction under Section 7 where there was no "clear proof that entry would occur"); *Atlantic Richfield*, 549 F.2d at 294 (similar; finding nothing to support that "entry by internal expansion would appear to have been certain").

      The Amended Complaint notably disregards the FTC's own construction of the legal requirement for this claim.  It asks the Court to use a "reasonable probability" standard in assessing the likelihood of Meta's independent entry.  *See* Am. Compl. ¶ 87 (asserting only "a reasonable probability that Meta would have exercised one of its other available options to enter").  But the facts alleged in the Amended Complaint are nothing more than the FTC's speculation about what Meta might have done, and they can satisfy *neither* the reasonable-probability standard nor the far more demanding "clear proof" standard that the FTC itself has determined is the high bar it must cross.

DEFENDANTS' MOTION TO DISMISS              Case No. 5:22-cv-04325-EJD

1

**CONCLUSION**

2       The motion to dismiss should be granted, and the Amended Complaint should be dismissed

3   with prejudice.

4

5

6   DATED:  October 13, 2022                Respectfully submitted,

7                                           By: /s/ *Mark C. Hansen*

8   Christopher J. Cox (Bar No. 151650)     Mark C. Hansen (*pro hac vice*)
    HOGAN LOVELLS US LLP                    Aaron M. Panner (*pro hac vice*)
9   855 Main Street, Suite 200              Julius P. Taranto (*pro hac vice* pending)
    Redwood City, CA 94063                  Alex A. Parkinson (*pro hac vice* pending)
10  Telephone:  (650) 463-4000              Ana N. Paul (*pro hac vice* pending)
    Facsimile:  (650) 463-4199              L. Vivian Dong (*pro hac vice* pending)
11  chris.cox@hoganlovells.com              KELLOGG, HANSEN, TODD, FIGEL &
                                                FREDERICK, P.L.L.C.
12  Lauren Battaglia (*pro hac vice*)       1615 M Street, NW, Suite 400
13  Logan M. Breed (*pro hac vice*)         Washington, DC 20036
    Benjamin Holt (*pro hac vice*)          Telephone:  (202) 326-7900
14  Charles A. Loughlin (*pro hac vice*)    Facsimile:  (202) 326-7999
    HOGAN LOVELLS US LLP                    mhansen@kelloghansen.com
15  Columbia Square                         apanner@kelloghansen.com
    555 Thirteenth Street, NW               jtaranto@kelloghansen.com
16  Washington, DC 20004                    aparkinson@kelloghansen.com
    Telephone:  (202) 637-5600              apaul@kelloghansen.com
17  Facsimile:  (202) 637-5910              vdong@kelloghansen.com
18  lauren.battaglia@hoganlovells.com
    logan.breed@hoganlovells.com            Bambo Obaro (Bar No. 267683)
19  benjamin.holt@hoganlovells.com          WEIL, GOTSHAL & MANGES LLP
20  chuck.loughlin@hoganlovells.com         201 Redwood Shores Parkway, 6th Floor
                                            Redwood Shores, CA 94065-1134
21  *Counsel for Defendant Within Unlimited,*  Telephone:  (650) 802-3000
    *Inc.*                                  Facsimile:  (650) 802-3100
22                                          bambo.obaro@weil.com
23                                          Michael Moiseyev (*pro hac vice*)
24                                          Chantale Fiebig (*pro hac vice*)
    WEIL, GOTSHAL & MANGES LLP
25                                          2001 M Street, NW, Suite 600
                                            Washington, DC 20036
26                                          Telephone:  (202) 682-7000
27                                          Facsimile:  (202) 857-0940
                                            michael.moiseyev@weil.com
28                                          chantale.fiebig@weil.com

20

Diane P. Sullivan (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
Telephone:  (609) 986-1100
Facsimile:  (609) 986-1199
diane.sullivan@weil.com

Eric S. Hochstadt (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
eric.hochstadt@weil.com

*Counsel for Defendant Meta Platforms, Inc.*

21