Abby L. Dennis, DC Bar No. 994476
Peggy Bayer Femenella, DC Bar No. 472770
Joshua Goodman, NY Bar (No Number)
Jeanine Balbach, MD Bar (No Number)

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2381

*adennis@ftc.gov; pbayer@ftc.gov; jgoodman@ftc.gov; jbalbach@ftc.gov*

[Additional counsel identified on signature page in accordance with Local Rule 3-4(a)(1)]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:22-cv-04325-EJD |
| Plaintiff, | **PARTIES' SECOND JOINT STATEMENT REGARDING DISCOVERY DISPUTES** |
| v. | |
| META PLATFORMS, INC., et al., | Dept.: Courtroom 6 – 4th Floor |
| Defendants. | Honorable Edward J. Davila<br>Magistrate Judge Susan van Keulen |

Plaintiff Federal Trade Commission ("FTC") moves to compel Defendant Meta Platforms, Inc. ("Meta") to produce all non-privileged information responsive to the FTC's discovery requests, namely responses to the FTC's Interrogatories Nos. 2, and 4 and Request for Production ("RFP") Nos. 4 and 9. The Parties have met and conferred extensively but were unsuccessful in resolving the disputes. Meta's objections and responses, as well as its supplemental objections and responses, are attached as **Exhibits 1-3**. A joint chart containing the parties' respective proposed compromises is attached as **Exhibit 4**. The FTC's First Set of Interrogatories and First Set of Requests for Production are attached as **Exhibits 5 and 6**. Fact discovery closes on October 26, 2022, 7 days from the date of this filing and the first deposition of a Meta custodian was October 11.

## PLAINTIFF'S POSITION

### I.     Interrogatory 4

Interrogatory No. 4 seeks information about VR Dedicated Fitness Products that have applied, or sought to apply, to Meta's Quest Store, as well as the dates and dispositions of those applications. Meta's response to Interrogatory No. 4 is a massive data production that is both overbroad and underinclusive. Meta's response buries VR Dedicated Fitness Products in a dataset with thousands of other applications, with no indication of which are responsive to Interrogatory No. 4. Through repeated meet and confers, Meta has expressed incredulity at the FTC's request to identify VR Dedicated Fitness Products within the data. But Meta has previously identified VR Dedicated Fitness Products in response to the FTC's Second Request and in Meta's advocacy before the FTC. Meta's vague and untimely representation that it will provide a "supplemental response" is insufficient.

Meta purports to have provided information regarding every app that has applied to be listed on Meta's app stores since January 1, 2018, and so it is unclear what additional information Meta proposes to provide. Moreover, Meta's response to Interrogatory No. 4 to date is not what Meta describes; despite Meta claiming to have provided information on every app that has applied to a Meta app store, applications that appear in Meta's document productions do not appear in its response to Interrogatory No. 4. Indeed, Meta's response to Interrogatory No. 4 *does not include a single application that was rejected from the Quest Store*. The only applications rejected from the "Quest" platform are indicated

as being rejected from Meta's "App Lab"—a non-curated application platform on which any application can be listed if it meets Meta's technical criteria. Even if Meta had provided information about applications rejected from the Quest Store, the reasons for rejection provided in Meta's response are insufficient. Meta's response provides *no reason at all* for many rejected applications. Most concerning, Meta's response is based on Meta's external messaging to the app developer—but Meta has an express policy of *not* providing substantive rejection reasons to developers. Meta must identify *all* facts, including internally recorded reasons for rejection, known to the company about applications to the Quest Store, *including those which were denied*.

## II.      RFP 4: Zendesk Explore Database

RFP 4 seeks (among other items) "databases that contain information relating to . . . review, approval, or rejection processes for including any Extended Reality Software Services in any Extended Reality Application Store." On September 16, the FTC wrote a letter to counsel citing two previously produced documents that refer to a "'Zendesk Explore' database that tracks 'Quest Pitch Submissions,' including data regarding how many were 'approved' and 'denied.'" On September 20, Meta responded that the FTC's request was "untimely" because, in prior correspondence, the FTC sought a "refresh" of what had previously been produced prior to the FTC's discovery of emails that both detailed the existence of the Zendesk Explore database and revealed that Meta's earlier productions in response to this request were incomplete. Despite Meta's perplexing insinuation otherwise, no court order prohibits the FTC from seeking responsive discovery in this action that Meta withheld in response to the Second Request. The FTC raised the Zendesk issue with Meta as soon as the FTC discovered its existence *through the FTC's own discovery*. Further, Meta's suggestion that ZenDesk Explore Database entries relating to non-fitness applications are irrelevant lacks merit. ZenDesk Explore Database entries rejecting rhythm-game applications for being too similar to Meta-owned Beat Saber demonstrate Meta's ability, incentive, and history of using its platform to protect its own applications—a practice clearly relevant to barriers to entry and the FTC's alleged harms that would arise from the acquisition of Within. Accordingly, Meta must produce entries from the Zendesk Explore database related to fitness and rhythm-game applications

## III.      RFP 9: Metadata for Hyperlinked Documents

1   Meta has agreed to gather and produce up to 300 hyperlinked documents pursuant to RFP 9. On September 16, 2022, by way of memorializing a meet and confer from earlier that day, the FTC wrote that "in the event that the full complement of metadata is not possible, you will work with your e-discovery vendor to produce identified hyperlinks with the following metadata: (i) all custodians; (ii) dates; (iii) a parent bates identifier, where the linking document uses the begattach field to identify the child or linked document." Counsel responded on September 17, 2022 agreeing to produce "three pieces of metadata" that the FTC was "particularly interested in." Nonetheless, Meta's productions of the hyperlinked documents continue to lack the identities of all custodians. The FTC cannot litigate this matter when hundreds of key documents are missing custodians. Further, the "Create Date" and "Mod Date" metadata fields produced by Meta often include a date just two days before the documents were produced to the FTC, suggesting Meta's collection process altered these vital fields. The FTC cannot litigate this matter when hundreds of key documents have inaccurate date metadata. Meta must correct this error and produce to the FTC all metadata in the company's possession responsive to RFP 9.

## META'S POSITION

Meta has provided the FTC with nearly 3 million documents and 200GB of data, and is making available 13 representatives for depositions. Despite these voluminous and asymmetrical productions, the FTC seeks additional, disproportionate amounts of new and irrelevant information. This is improper but Meta has made reasonable, good-faith compromises that do fairly resolve all of the FTC's disputes.

### I.   Interrogatory 4 – App Review & Approval Process

In response to Interrogatory 4, on October 7 and October 18, Meta produced detailed indexes of every app *since Jan. 1, 2016* that has applied to be listed on Meta's app stores. This information included what Meta maintained in the ordinary course of its business for each app's title, developer, publisher, status, date the app was or is expected to be listed on Meta's app store, and the apps that applied and were rejected from the Oculus Quest Store via Meta's Oculus Quest Store Pitch Submission Process (Jan. 2019 - Oct. 2021). Oddly, the FTC's objection is that Meta has produced too much because Meta did not also limit the information to only the apps Meta believes are included in the FTC's vaguely defined "VR Dedicated Fitness applications" market. This objection is without merit.

As this Court knows, the market definition is so hotly disputed that the FTC was ordered to

identify the apps it believes are included in its market and the methodology for their inclusion or exclusion. (Dkt. 98). Meta also has provided "fitness"-related categorizations of the apps available on Meta's app stores, which allows the FTC to do its own work to identify the apps that have applied to be on Meta's app stores that Meta could categorize as "VR Dedicated Fitness applications," consistent with FRCP 33(d). Nevertheless, for this limited discovery purpose, Meta provided a supplemental response that includes the apps based on the criteria the FTC has provided for its alleged "VR Dedicated Fitness application market" (with which Meta disagrees), solely to resolve this dispute. *See* META-E-LIT-DATA-0000048. Accordingly, Meta does not believe there is any open dispute for Interrogatory 4.

## II.   RFP 4 – Zendesk Explore Database

The FTC's request for the production of an *entire, newly identified database* should be denied for violating the heavily negotiated and Court ordered limits on discovery in this case. Prior to the filing of this suit, Meta produced millions of documents and gigabytes of data to the FTC as part of its nearly yearlong, one-sided investigation of the acquisition referred to as the "Second Request". (Dkt. 69, 78). As a result, *the FTC agreed to limit the scope of discovery* with respect to Second Request specifications to "mere refreshes" of data Meta produced. FTC's Letter to Meta, dated Sept. 16.

Despite the FTC's agreement, in a letter dated Sept. 16—nearly a month after the deadline to propound discovery requests—the FTC made a demand for the entire "Zendesk Explore" database. The FTC's untimely request for this database is overly broad, unduly burdensome, and disproportionate to the legitimate needs of this case. Notably, the FTC recently narrowed the scope of this case to only the "VR Dedicated Fitness application" market, which is only 7 apps according to the FTC. Yet the FTC demands the entire database. Tellingly, the FTC failed to respond to Meta's request to provide a reasonable proposal regarding what it truly needs from the Zendesk Explore database until October 12— 7 days before filing of this motion. And the FTC's belated articulation of why it supposedly needs to rummage through this entire database to probe Meta's control of its platform is highly speculative.

Despite all of this, Meta agreed to, and has expeditiously produced, three categories of information without waiver of its objections: (1) Meta's October 17 production of aggregated Oculus Quest Store Pitch Submission information, from 2019 through October 2021, which shows the total number of apps in the Oculus Quest Store Pitch Submission process across 15 different metrics,

including denials, as requested specifically by the FTC on October 12; (2) Meta's October 18 production in response to Interrogatory No. 4, which is the Oculus Quest Store Pitch Submissions applications data from the Zendesk Explore database; and (3) materials generated from the Zendesk Explore database in Meta's non-data productions. Accordingly, Meta believes its substantial efforts and voluminous production to date are proportionate and more than sufficient to address this overly broad and unduly burdensome new request for an entire database in this truncated proceeding.

### III.     Hyperlinks

For hyperlink productions already made, Meta has provided information related to the (a) Bates ID the FTC identified, (b) link text the FTC identified, (c) production Bates ID associated with that linked file to the extent produced, and (d) certain date information where available. As part of its efforts to provide the actual documents as quickly as possible, the production produced by Meta included information that reflected details or work product related to the collection process and not actual metadata, and Meta requests that the FTC destroy that work product. Meta provided an overlay file removing that information on October 14, 2022. The FTC continues to suggest that linked files are the same as attachments; they are not. *Nichols v. Noom*, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) (rejecting argument that hyperlinked documents are attachments and denying disproportionate request for hyperlinked documents where: "there has been no showing by Plaintiffs that they actually need to link to or even care about all of the hyperlinked documents."). The FTC now demands date (already provided) and custodian or additional custodian information for linked files where such information may not be readily available, accurately available, or present. The FTC has suggested (once) it needs the additional custodian information due to language in the protective order (that the FTC agreed to) that limits use of documents designated as Confidential or Highly Confidential to any witness or deponent the FTC reasonably believes authored or received the documents. While Meta disagrees with the idea that this is an appropriate issue for dispute given the FTC waited weeks after receiving linked file productions to raise this issue, or that this case requires the type of forensic analysis the FTC is demanding, Meta can offer a compromise on this issue to avoid burdening the Court. Specifically, Meta has offered and is willing to permit the FTC to inquire and use with Meta witnesses linked files produced that list Meta Platforms in the additional custodian field.

| | | |
|---|---|---|
| 1 | Dated: October 19, 2022 | Respectfully Submitted, |
| 2 | | */s/ Andrew D. Lowdon* |
| | | Abby L. Dennis |
| 3 | | Peggy Bayer Femenella |
| 4 | | Joshua Goodman |
| | | Jeanine Balbach |
| 5 | | Michael Barnett |
| | | E. Eric Elmore |
| 6 | | Justin Epner |
| 7 | | Sean D. Hughto |
| | | Frances Anne Johnson |
| 8 | | Andrew Lowdon |
| | | Lincoln Mayer |
| 9 | | Erika Meyers |
| 10 | | Adam Pergament |
| | | Kristian Rogers |
| 11 | | Anthony R. Saunders |
| | | Timothy Singer |
| 12 | | James Weingarten |
| 13 | | Federal Trade Commission |
| | | 600 Pennsylvania Avenue, NW |
| 14 | | Washington, DC 20580 |
| 15 | | Tel: (202) 326-2381 |
| 16 | | Erika Wodinsky |
| | | 90 7th Street, Suite 14-300 |
| 17 | | San Francisco, CA 94103 |
| | | Tel: (415) 848-5190 |
| 18 | | |
| 19 | | *Counsel for Plaintiff Federal Trade Commission* |
| 20 | | */s/ Eric Hochstadt* |
| 21 | | BAMBO OBARO (Bar No. 267683) |
| | | bambo.obaro@weil.com |
| 22 | | WEIL, GOTSHAL & MANGES LLP |
| | | 201 Redwood Shores Parkway, 6th Floor |
| 23 | | Redwood Shores, CA 94065-1134 |
| | | Telephone: (650) 802-3000 |
| 24 | | Facsimile: (650) 802-3100 |
| 25 | | MICHAEL MOISEYEV (*pro hac vice*) |
| | | michael.moiseyev@weil.com |
| 26 | | CHANTALE FIEBIG (*pro hac vice*) |
| | | chantale.fiebig@weil.com |
| 27 | | JEFFREY H. PERRY (*pro hac vice*) |
| | | jeffrey.perry@weil.com |
| 28 | | WEIL, GOTSHAL & MANGES LLP |
| | | 2001 M Street, NW, Suite 600 |

Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

DIANE P. SULLIVAN (*pro hac vice*)
diane.sullivan@weil.com
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ  08542
Telephone: (609) 986-1100
Facsimile:  (609) 986-1199

ERIC S. HOCHSTADT (*pro hac vice*)
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark C. Hansen (*pro hac vice*)
mhansen@kellogghansen.com
Geoffrey M. Klineberg (*pro hac vice*)
gklineberg@kellogghansen.com
Aaron M. Panner (*pro hac vice*)
apanner@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900

*Attorneys for Defendant META PLATFORMS, INC.*