Abby L. Dennis, DC Bar No. 994476
Peggy Bayer Femenella, DC Bar No. 472770
Joshua Goodman, NY Bar (No Number)
Jeanine Balbach, MD Bar (No Number)

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2381

*adennis@ftc.gov; pbayer@ftc.gov;*
*jgoodman@ftc.gov; jbalbach@ftc.gov*

[Additional counsel identified on signature page in accordance with Local Rule 3-4(a)(1)]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **META PLATFORMS, INC., et al.** <br><br> Defendants. | Case No. 5:22-cv-04325-EJD <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

**ARGUMENT** ......................................................................................................3

I.    The Amended Complaint Sufficiently Pleads That the Proposed Acquisition May Substantially Lessen Competition ...........................................................................3

    A.    The Amended Complaint Sufficiently Pleads That the Virtual Reality ("VR") Dedicated Fitness App Market Is Concentrated. ......................................5

        1.    Defendants Incorrectly Assert That the FTC Must Plead an Additional Element of Anticompetitive Behavior. ..........................................7

        2.    The FTC Has Pled High Entry Barriers, Although Entry Barriers Are Not Required to Establish That The Relevant Market is Concentrated. ..............7

    B.    The Amended Complaint Sufficiently Pleads that the Proposed Acquisition Is Likely to Lead to Anticompetitive Effects Under a Theory of Actual Potential Competition ...........................................................................................10

        1.    The Amended Complaint Adequately Pleads the Required Elements to Support a Theory of Anticompetitive Harm Based on a Lessening of Actual Potential Competition. ...............................................................12

            a)  The Amended Complaint Alleges There Is a Reasonable Probability Meta Would Have Entered the Market But-For the Proposed Acquisition. ......................................................................12

            b) The Amended Complaint Alleges Meta's Entry into the VR Dedicated Fitness App Market But-For the Proposed Acquisition Would Have Had Pro-Competitive Effects. .........................................................14

        2.    Defendants' Attempts to Bake In Additional Requirements Have No Basis in the Case Law—Especially at the Pleading Stage. ...................................14

    C.    The Amended Complaint Sufficiently Pleads that the Proposed Acquisition Is Likely to Lead to Anticompetitive Effects Under a Theory of Perceived Potential Competition. ...................................................................................17

II.    Actual Potential Competition Is a Viable Theory of Antitrust Harm. ...........................19

III.    Defendants' Motion to Dismiss Is Untimely. .................................................21

**CONCLUSION** ...............................................................................................23

### Table of Authorities

<u>**Cases**</u>

*Abdulkarim Janahi v. Zuberi*, 2022 WL 2101728 (C.D. Cal. Mar. 11, 2022) ............................ 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 21

*BOC Int'l, Ltd. v. FTC*, 557 F.2d 24 (2d Cir. 1977) ............................................ 14, 15, 16

*Brooks v. Caswell*, 2016 WL 866303 (D. Or. Mar. 2, 2016) ........................................... 22, 23

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ................................................. 7, 21

*City of Las Cruces v. Lofts at Alameda, LLC*, 2022 WL 715124 (D.N.M. Mar. 10, 2022) ......... 23

*Copperweld Corp. v. Imetal*, 403 F. Supp. 579 (W.D. Pa. 1975) ...................................... 17

*Daimler AG v. A-Z Wheels LLC*, 2017 WL 9854427 (S.D. Cal. Nov. 27, 2017) ...................... 22

*Ekco Prods. Co. v. FTC*, 347 F.2d 745 (7th Cir. 1965) ............................................ 20, 21

*Fortinet Inc. v. FireEye Inc.*, 2014 WL 4955087 (N.D. Cal. Sept. 30, 2014) ...................... 23

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ....................................... 4

*FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977) ................................... 5, 16

*FTC v. CCC Holdings*, 605 F. Supp. 2d 26 (D.D.C. 2009) ............................................. 9

*FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001) ............................................... 4

*FTC v. Nat'l Tea Co.*, 603 F.2d 694 (8th Cir. 1979) .................................................. 2

*FTC v. Procter & Gamble Co.*, 386 U.S. 568 (1967) ........................................... *passim*

*FTC v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015) ................................................ 9

*FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156 (9th Cir. 1984) ................................ *passim*

*FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028 (D.C. Cir. 2008) ................................... 4

*Kennecott Copper Corp. v. FTC*, 467 F.2d 67 (10th Cir. 1972), *cert. denied*,
    416 U.S. 909 (1974) ......................................................................... 20

*Monfort of Colo v. Cargill, Inc.*, 761 F.2d 570 (10th Cir. 1985), *rev'd on other grounds*,
    *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986) ............................... 9

*Nana Akua Serwaah Oddei v. Optum, Inc.*, 2021 WL 6103347 (C.D. Cal. Oct. 14, 2021) ........ 22

*Pargas, Inc. v. Empire Gas Corp.*, 423 F. Supp. 199 (D. Md. 1976) ............................. 17

*Rep. of Texas Corp. v. Bd. of Governors*, 649 F.2d 1026 (5th Cir. 1981) ...................... 15

*St. Alphonsus Med. Ctr. Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, Nos.
    1:12–CV–00560–BLW, 1:13–CV–00116–BLW, 2014 WL 407446
    (D. Id., Jan. 24, 2014) ...................................................................... 8

*St. Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys. Ltd*, 778 F.3d 775
    (9th Cir. 2015) ........................................................................... 5, 21

*Tenneco, Inc. v. FTC*, 689 F.2d 346 (2d Cir. 1982) .............................................. 6, 11

*Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, 2016 WL 10570248 (C.D. Cal. Aug. 17, 2016) .................................................. 22

*United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO, 2014 WL 203966 (N.D. Cal. Jan. 8, 2014) .................................................................................................. 6, 9

*United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729 (D. Md. 1976) ............................. 19

*United States v. Continental Can Co.*, 378 U.S. 441 (1964) ....................................................... 16

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973) ............................... 3, 17, 18, 19

*United States v. Joseph Schlitz Brewing Co.*, 253 F. Supp. 129 (N.D. Cal. 1966), *Aff'd.*, *Jos. Schlitz Brew Co. v. United States*, 385 U.S. 37 (1966) ..................................... 20

*United States v. Marine Bancorporation, Inc.*, 418 U.S. 602 (1974) .................................. *passim*

*United States v. Phila. Nat'l Bank*, 374 U.S. 321 (1963) ........................................................... 21

*United States v. Phillips Petrol. Co.*, 367 F. Supp. at 1234, *aff'd*, *Phillips Petrol. Co. v. United States*, 418 U.S. 906 (1974) ........................................... *passim*

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980) ................................................... 15

*United States v. United Tote, Inc.*, 768 F. Supp. 1064 (D. Del. 1991) ......................................... 9

*Yamaha Motor Co. Ltd. v. FTC*, 657 F.2d 971 (8th Cir. 1981) ............................................ *passim*

**Statutes**

15 U.S.C. § 18 ........................................................................................................................ *passim*

15 U.S.C. § 45 ................................................................................................................................. 4

15 U.S.C. § 53(b) .................................................................................................................... *passim*

**Other Authorities**

U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines (2010) .................. 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Exactly three months ago on July 27, 2022, Plaintiff Federal Trade Commission ("FTC" or "Commission") filed this action for a temporary restraining order and preliminary injunction pursuant to Section 13(b) of the Federal Trade Commission Act to maintain the status quo and temporarily enjoin Defendant Meta Platforms, Inc.'s proposed acquisition of Defendant Within Unlimited, Inc. pending the issuance of an administrative complaint by the Commission, and if such complaint was issued, while the Commission adjudicates whether the proposed acquisition was unlawful.  In the intervening months, much has occurred: Rather than contest the FTC's Emergency Motion for a Temporary Restraining Order (Dkt. 11), Defendants stipulated not to close the proposed acquisition until the earlier of December 31, 2022, or the next business day following this Court's decision on the FTC's request for a preliminary injunction (Dkt. 56). The Commission initiated administrative proceedings to block the proposed acquisition on the merits.  The parties engaged in voluminous written discovery.  Over a dozen party depositions have occurred, including the deposition of Meta's CEO and founder Mark Zuckerberg.  The FTC is serving its initial expert report today.  Defendants have subpoenaed over forty third parties for documents and depositions.  And this Court set a start date of December 8, 2022 for an evidentiary hearing on the FTC's request for a preliminary injunction.

During all this time, until October 13, 2022, Defendants were silent regarding the sufficiency of the FTC's allegations that the acquisition would harm competition based on theories of actual potential competition and perceived potential competition.  Despite telling this Court on August 12, 2022, that one of the legal issues in this case is "[w]hether the FTC has a valid basis for proceeding under its claimed legal theories on the grounds that the acquisition eliminates an actual 'potential' competitor or an actual 'perceived' competitor" (Dkt. 69 at 3), Defendants did not move to dismiss the FTC's request for a preliminary injunction on that basis. Defendants instead waited until October 13, 2022, after the FTC amended its Complaint and *dropped* a theory of anticompetitive harm, to move to dismiss in this proceeding.  The prudential, if not procedural, impropriety of Defendants' motion alone provides a basis for this

Court to deny their belated motion.

Moreover, there is a simple reason for Defendants' initial hesitance in moving to dismiss here—and failing to do so at all in the administrative proceeding—and it goes to the heart of the merits of this motion: Defendants' arguments would require this Court to ignore fifty years of antitrust precedent. But the defects in their motion do not stop there: When they are not arguing for this Court to disregard this precedent or wrongly urging that *Twombly* overruled *sub silentio* decades of substantive antitrust law applying theories of harm to potential competition, Defendants repeatedly and consistently point to cases *decided after evidentiary hearings or trial on the merits* to contend that the FTC has failed to meet the pleading standard of Rule 8, or assert that the FTC must plead pre-existing "anticompetitive behavior" to preliminarily enjoin a merger under Section 13(b) of the Federal Trade Commission Act, confusing Section 7 of the Clayton Act—on which the FTC is seeking to challenge the merger in the administrative proceeding—with the standard required under Sections 1 and 2 of the Sherman Act.

Perhaps even more glaring is Defendants' failure to cite to a single case analyzing a motion to dismiss a claim brought for preliminary injunctive relief under Section 13(b) of the Federal Trade Commission Act.  In 13(b) cases, like the one here, the issue before the court is whether the FTC has "raise[ed] questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair ground for thorough investigation, study, deliberation, and determination by the FTC in the first instance and ultimately by the Court of Appeals." *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984) (quoting *FTC v. Nat'l Tea Co.*, 603 F.2d 694, 698 (8th Cir. 1979)).  The Amended Complaint does so here.  The FTC has sufficiently pled that the proposed acquisition may substantially lessen competition based on both remaining theories of anticompetitive harm.[1]  Defendants' motion should be denied.

---

[1] Defendants seek to have the Amended Complaint dismissed "with prejudice."  That result would be draconian in light of the amount of discovery that has occurred to date that has further (Continued…)

## ARGUMENT

**I.**  **The Amended Complaint Sufficiently Pleads That the Proposed Acquisition May Substantially Lessen Competition.**

It is well-settled that Section 7 of the Clayton Act prohibits the elimination of potential competition, as well as present competition.  *E.g.*, *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 531-32 (1973); *see also United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 623–25 (1974).  Courts have recognized two distinct types of anticompetitive harm that can occur from mergers that eliminate potential competition in a concentrated relevant market. First, a merger can lessen "actual potential competition" (also referred to as the "entry effect"), when it eliminates a firm reasonably likely to enter the relevant market through alternative means absent the illegal acquisition.  *United States v. Phillips Petrol. Co.*, 367 F. Supp. 1226, 1232–33 (C.D. Cal. 1973), *aff'd*, *Phillips Petrol. Co. v. United States*, 418 U.S. 906 (1974); *see also Yamaha Motor Co. Ltd. v. FTC*, 657 F.2d 971, 977-79 (8th Cir. 1981).  Second, a merger can lessen "perceived potential competition" when it eliminates "a potential competitor on the fringe of the market with likely influence on existing competition."  *Falstaff Brewing Corp.*, 410 U.S. at 533-34; *Marine Bancorp.*, 418 U.S. at 624.  A merger can do so "even if it were assumed that the potential competitor would *not actually have entered* the market."  *Phillips Petrol. Co.*, 367 F. Supp. at 1234 (emphasis added).

---

bolstered the FTC's theories of anticompetitive harms, as alleged in the Amended Complaint and as set forth, with evidence, in the FTC's Emergency Motion for a Temporary Restraining Order that was filed the same exact day the initial complaint was filed.  (Dkt. 11, 13.)  Thus, should this Court conclude the Amended Complaint fails to plead facts to support the two theories of potential competition, Mot. at 9-16, the FTC respectfully requests that this Court allow it to amend the complaint to cure those deficiencies, which the FTC is prepared to do so within 3 business days of any order granting Defendants' motion.  *Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.*, 2014 WL 31251, at *3 (N.D. Cal. Jan. 3, 2014) (Davila, J.).

Defendants' assertion that the FTC has not alleged facts sufficient to support a claim based on these theories ignores the statutory authority under which the FTC proceeds in this matter.  The FTC brought this case pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), to obtain interim, injunctive relief to preserve the status quo to protect the Commission's ability to conduct its administrative adjudicatory proceeding on the merits.[2] (Dkt. 1 ¶ 14; Am. Compl. ¶¶ 13, 16).  Section 13(b) "allows a district court to grant the Commission a preliminary injunction '[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest.'" *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999).[3]   Plausibly alleging likelihood of success on the merits requires alleging sufficient facts to "raise questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair ground for thorough investigation, study, deliberation, and determination by the FTC in the first instance and ultimately the Court of Appeals."  *Warner Commc'ns*, 742 F.2d at 1160; *accord FTC v. Whole Foods Market, Inc*., 548 F.3d 1028, 1036 (D.C. Cir. 2008) ("[A]t this preliminary phase [the FTC] just has to raise substantial doubts about a transaction. One may have such

---

[2] As stated in the Amended Complaint, on August 11, 2022, the Commission commenced an administrative adjudication proceeding to determine whether the proposed acquisition is unlawful under Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and the administrative trial is scheduled to begin on January 19, 2023. (Dkt. 101-1 at 2.)

[3] Defendants do not argue that the FTC has insufficiently pled the "weighing [of] the equities." *See FTC v. Warner Commc'ns*, 742 F.2d 1156, 1165 (9th Cir. 1984) ("private equities may be considered, but public equities receive far greater weight."); *FTC v. H.J. Heinz Co*., 246 F.3d 708, 726 (D.C. Cir. 2001) ("The principal public equity weighing in favor of issuance of preliminary injunctive relief is the public interest in effective enforcement of the antitrust laws.").

doubts without knowing exactly what arguments will eventually prevail."). Here, this means raising substantial questions about whether the acquisition's effect "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. Importantly, the ultimate merits issue as to which the FTC must raise substantial questions is not whether the acquisition will substantially lessen competition, but whether there is a "reasonable probability of anticompetitive effect" from the acquisition. *Warner Commc'ns*, 742 F.2d at 1160. As explained *infra*, the FTC has done just that with respect to its allegations of harm to actual potential competition and perceived potential competition. Defendants' arguments to the contrary ignore the FTC's burden, and instead discuss (or invent) issues relevant to the ultimate merits of claims brought directly under Section 7 of the Clayton Act, 15 U.S.C. § 18.[4]

### A.   The Amended Complaint Sufficiently Pleads That the Virtual Reality ("VR") Dedicated Fitness App Market Is Concentrated.

As mentioned above, the "potential-competition doctrine has meaning only as applied to concentrated markets." *Marine Bancorp.*, 418 U.S. at 630. "A commonly used metric for determining market share is the Herfindahl-Hirschman Index ('HHI')." *St. Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys. Ltd*, 778 F.3d 775, 786 (9th Cir. 2015). The Amended Complaint explains how the HHI is calculated and then details how the "VR

---

[4] Defendants' motion also frequently ignores the procedural posture on a motion to dismiss. For example, Defendants contend "novelty" of the actual potential competition claim "could well serve as a basis for denial of a preliminary injunction under Section 13(b)." Mot. at 16-17. The dicta to which Defendants cite in *FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977), pertained not to the appropriate pleading standard on a motion to dismiss a Section 13(b) claim, but to the Fourth Circuit's musings regarding the basis of a denial of the preliminary injunction after "a full hearing," *id.* at 292; indeed, the Ninth Circuit has expressly distinguished *Atlantic Richfield* as imposing "a more rigorous burden" than this circuit requires under Section 13(b). *Warner Commc'ns*, 742 F.2d at 1163.

Dedicated Fitness App market HHI has been well above the thresholds for a market to be considered 'concentrated' or 'highly concentrated' under the Merger Guidelines," with ███ ████████████████████████████████████████████ Am. Compl. ¶¶ 48-54.[5] These allegations more than sufficiently plead that the VR Dedicated Fitness App market is concentrated. *Tenneco, Inc. v. FTC*, 689 F.2d 346, 352 (2d Cir. 1982) ("Four-firm concentration was over 90% and two-firm concentration was over 77%. . . . This fact alone 'established a prima facie case that the . . . market was a candidate for the potential competition doctrine.'" (quoting *Marine Bancorp.*, 418 U.S. at 631)).  It is also consistent with Section 7's well-established burden-shifting framework, in which the FTC establishes a prima facie case by showing "a likelihood of anticompetitive effects," which can be accomplished (among other ways) via market share statistics. *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO, 2014 WL 203966, at *64 (N.D. Cal. Jan. 8, 2014); *see also Marine Bancorp.*, 418 U.S. at 631 ("the Government established a prima facie case that the Spokane market was a candidate for the potential-competition doctrine").

---

[5] Defendants suggest that the FTC was required to plead in the Amended Complaint specific facts to justify using ██████████ to measure market shares, Mot. at 14, but cite no authority for that proposition; the cases on which they rely all involved the court's analysis of market share *after an evidentiary hearing*.  In any event, there is nothing unusual or odd about pleading market shares based on ██████████. U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines (2010), § 5.2 ("In most contexts, the Agencies measure each firm's market share based on its actual or projected revenues in the relevant market.  Revenues in the relevant market tend to be the best measure of attractiveness to customers, since they reflect the real-world ability of firms to surmount all of the obstacles necessary to offer products on terms and conditions that are attractive to customers.").

1.     **Defendants Incorrectly Assert That the FTC Must Plead an Additional Element of Anticompetitive Behavior.**

Defendants wrongly contend that the FTC must go further and show "anticompetitive behavior *and* structure." Mot. at 9 (emphasis in original).  Tellingly, Defendants cite absolutely no authority for this remarkable proposition—because there is none.  As *Marine Bancorp.* makes clear, market-concentration statistics alone are enough for the FTC to make a prima facie case that the relevant market is concentrated, 418 U.S. at 630–31, and, indeed, courts have repeatedly found that concentrated market shares alone are sufficient on this point for a Section 7 violation—even after a full trial on the merits.  In *Marine Bancorp.*, for example, the Supreme Court found that the Government carried its burden at trial by offering evidence that three firms controlled 92% of the relevant market, a figure high enough to conclude that the market was "oligopolistic."  418 U.S. at 630–31.  Similarly, in *Yamaha Motor Co.*, the Eighth Circuit affirmed the Commission's finding, after a trial on the merits, that the relevant market was "oligopolistic" where the "top four firms had 98.6% of the dollar volume" and the top two firms "controlled 85.0% of the market by dollar volume."  657 F.2d at 979.  As these cases demonstrate, allegations of pre-existing "anticompetitive, oligopolistic behavior," Mot. at 8, are clearly not required.  Indeed, the Supreme Court has explained, "If the enforcement of § 7 turned on the existence of actual anticompetitive practices, the congressional policy of thwarting such practices in their incipiency would be frustrated."  *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967); *cf. Brown Shoe Co. v. United States*, 370 U.S. 294, 329 (1962) ("the tests for measuring the legality of any particular economic arrangement under the Clayton Act are to be less stringent than those used in applying the Sherman Act").

2.     **The FTC Has Pled High Entry Barriers, Although Entry Barriers Are Not Required to Establish That The Relevant Market is Concentrated.**

Defendants spend a considerable amount of time arguing that the entry barriers alleged in the Amended Complaint are not high enough for this market to be "concentrated," Mot. at 10-14, point to allegations of growth and innovation about the VR industry writ large as

somehow undermining barriers to entry in the VR Dedicated Fitness App market, *id.* at 1-2, and contend, without any citation to the Amended Complaint, that the FTC has alleged the VR Dedicated Fitness App market is "characterized by rapid entry." *Id.* at 2.

As an initial matter, the FTC need not allege any entry barriers to establish that the market is concentrated, as market share information alone is enough to make out a prima facie case. *E.g.*, *Marine Bancorp.*, 418 U.S. at 630–31 (three-firm revenue share of 92% high enough to find market was concentrated); *Yamaha Motor Co.*, 657 F. 2d at 979 (two-firm revenue share of 85% sufficient). And to the extent that Defendants contend that it is the FTC's burden to show that entry by other firms would *not* be "timely, likely, and sufficient in its magnitude, character, and scope to deter or counteract the competitive effects" of the proposed transaction—they are wrong; that burden is theirs. *St. Alphonsus Med. Ctr. Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, Nos. 1:12–CV–00560–BLW, 1:13–CV–00116–BLW, 2014 WL 407446, *19 (D. Id., Jan. 24, 2014) (citing *Procter & Gamble Co.*, 386 U.S. at 579).

Even so, the FTC *has* put forth sufficient allegations that the VR Dedicated Fitness App market has high barriers to entry—and that, absent the proposed acquisition, Meta is the company most uniquely poised to successfully enter and deconcentrate the market. As reflected in the Amended Complaint—and indeed, in its own new name—Meta has made an unrivaled commitment to VR with billions and billions of dollars invested in its dreams of a "Metaverse." Am. Compl. ¶¶ 2, 58, 93. Meta owns the leading VR headset (*id.* ¶ 27 (alleging that Meta sold 78 percent of all VR headsets worldwide in 2021)), controls which apps are allowed in the leading VR app store (*id.* ¶¶ 4, 105-07), and decides how much exposure—and thus opportunity for consumer discovery—to allocate among the apps that make the cut for that store (*id.* ¶ 67). In other words, Meta itself is the most significant barrier to entry for an app, including VR Dedicated Fitness Apps (*see id.* ¶¶ 105-07). The Amended Complaint also alleges other high barriers to entry. The talent needed to create high-quality VR experiences is increasingly scarce (*id.* ¶ 104), yet Meta has one of the largest first-party VR content organizations in the world, largely due to a recent purchasing spree of independent studios (*id.* ¶ 31). Meta possesses

access to users and user data that nobody else has, and the insights it gleans inform its business decisions. *Id.* ¶ 66. Meta has unparalleled "name awareness" through Beat Saber, the most popular VR title. *Id.* ¶ 68. And no one is as well positioned as Meta to exploit network effects (*id.* ¶ 104), which are important for success in VR (*id.* ¶¶ 5-7).

Defendants dismiss the foregoing allegations as asserting "nothing more than time and money." Mot. at 11. But time and money *are* significant barriers to market entry; courts repeatedly have found that capital and labor costs, time, software development resources, and required minimum scale can all constitute barriers to entry. *See, e.g.*, *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 80-81 (D.D.C. 2015) (finding that high capital and labor costs can be entry barriers); *Monfort of Colo v. Cargill, Inc.*, 761 F.2d 570, 579 (10th Cir. 1985) (finding entry barriers where it would take $20-40 million and twelve to eighteen months to build a competitor), *rev'd on other grounds, Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986); *FTC v. CCC Holdings*, 605 F. Supp. 2d 26, 52 (D.D.C. 2009) (complexity of developing software and establishing a reputation constituted entry barriers); *United States v. United Tote, Inc.*, 768 F. Supp. 1064, 1075 (D. Del. 1991) (time and effort to develop a competing product and gain customer acceptance constituted entry barriers); *Phillips*, 367 F. Supp. at 1254 (market at issue had "extremely high barriers to entry" given the costs that would be incurred to build from scratch, the number of firms in the industry, and those firms' access to capital). Given the resources that would be required to compete successfully against Within's well-funded, polished product, the FTC has sufficiently pled that these resources are barriers here. Am. Compl. ¶¶ 104-06. Those barriers would be even higher if combined with Meta's vast financial resources and control over the platform. *Id.* ¶¶ 93, 107.

The FTC has also pled barriers that are highly relevant to digital markets, including network effects, availability of relevant programming talent, brand awareness, and relatedly, the likelihood of consumer discovery. *Id.* ¶ 104. These are not mere "buzz words," but rather real market features that Defendants themselves recognize. *Id.* ¶¶ 6-7; *see also, e.g.*, *Bazaarvoice, Inc.*, 2014 WL 203966 at *50 (recognizing network effects as valid entry barrier). Defendants

also claim that "courts – and the FTC itself – have consistently rejected potential competition claims because of the absence of facts establishing that entry barriers are high or potential entrants scarce," Mot. at 11, but do not cite a single case granting a motion to dismiss a complaint alleging likely harm to potential competition on this basis.  All of Defendants' cases—*B.A.T. Industries*, *Siemens*, *Atlantic Richfield*, and *Hughes Tool* (*id.*)—on this point involve hearings on the merits—indeed, that is where the FTC would present additional "facts *establishing* that entry barriers are high or potential entrants scarce," *id.* (emphasis added), not in a complaint.

Defendants' motion also misquotes, and misunderstands, the FTC's allegations that "once Meta—which also owns the Quest platform and app store—entrenches ███████ ███ in VR dedicated fitness through the proposed acquisition, it will effectively raise barriers to entry and expansion as other companies interested in the space will understand that they need to compete with a deep-pocketed platform operator that owns the ███████ VR dedicated fitness app."  Am. Compl. ¶ 107.  Defendants claim that "fear of competition is not a barrier to entry as a matter of law."  Mot. at 13.  Maybe so, but that is not what the Amended Complaint alleges, or the point the FTC is trying to prove with its entrenchment allegations.  As the Supreme Court has recognized, a proposed acquisition that substitutes a "powerful acquiring firm" for a "smaller, but already dominant, firm" "may substantially reduce the competitive structure of the industry by raising entry barriers and by dissuading the smaller firms from aggressively competing."  *Procter & Gamble*, 386 U.S. at 578.

**B.   The Amended Complaint Sufficiently Pleads that the Proposed Acquisition Is Likely to Lead to Anticompetitive Effects Under a Theory of Actual Potential Competition.**

A merger can lessen "actual potential competition," when it eliminates a firm reasonably likely to enter the relevant market through alternative means absent the illegal acquisition.  *Phillips Petrol. Co.*, 367 F. Supp. at 1233; *see also Yamaha Motor Co.*, 657 F.2d at 977-79.  In *Phillips*, which was affirmed by the Supreme Court, the district court found a violation of

Section 7 due to the elimination of the loss of actual potential competition in the California gasoline market, when the acquiring firm's "overall size, resources, capability, and motivation with respect to entry into an adjacent attractive market involving a line of commerce in which the firm is already engaged," and the absence of "unique feature[s] of the market" precluding entry made the acquiring firm "a likely potential unilateral entrant into the California gasoline market, and in fact [ ] the most likely potential entrant." *Id.* at 1239.  In *Yamaha*, the Eighth Circuit affirmed the Commission's finding that a joint venture with certain exclusivity provisions between Yamaha and an existing player in the concentrated United States outboard motor market violated Section 7 because it had the effect of eliminating Yamaha as an actual potential entrant.  657 F.2d at 977-79.  Notably, the Court found that the joint venture eliminated Yamaha in both the low-horsepower market—where Yamaha was already marketing competing products abroad—and the high-horsepower market, in which Yamaha had shown an interest in entering by exhibiting demonstration models at trade shows but had not actually entered in the United States or elsewhere.  *Id.* at 978.

The Supreme Court has stated that "[t]wo essential preconditions must exist before it is possible to resolve whether the [actual potential competition] theory, if proved, establishes a violation of § 7": (1) the acquiring firm has "available feasible means" for entering the market and (2) "that those means offer a substantial likelihood of ultimately producing deconcentration of that market or other significant procompetitive effects."  *Marine Bancorp.*, 418 U.S. at 633. Although it is true that, finding neither precondition met, the Court "express[ed] no view" on whether the antitrust laws proscribed a merger "solely on the ground that such a merger eliminates the prospect for long-term deconcentration of an oligopolistic market," *id.* at 625, 639, subsequent courts analyzing claims based on a theory of harm to actual potential competition—like the Eighth Circuit in *Yamaha*—have interpreted *Marine Bancorp.* to require a showing that there is a reasonable probability the acquiring firm would have entered the market but-for the proposed acquisition, and its entry would have had pro-competitive effects.  *E.g.*, *Yamaha Motor*, 657 F.2d at 977 (8th Cir. 1981); *Tenneco*, 689 F.2d at 352; *see also Phillips*

1    *Petrol.*, 367 F. Supp. at 1257.

2          1.    **The Amended Complaint Adequately Pleads the Required Elements to**

3                **Support a Theory of Anticompetitive Harm Based on a Lessening of**

4                **Actual Potential Competition.**

5          The Amended Complaint more than adequately pleads the two elements for actual

6    potential competition articulated under the case law.

7          a)    **The Amended Complaint Alleges There Is a Reasonable**

8                **Probability Meta Would Have Entered the Market But-For the**

9                **Proposed Acquisition.**

10         A firm "must be considered a significant potential entrant" "where credible objective

11   evidence shows the basic economic facts of the acquiring company's overall size, resources,

12   capability, and motivation with respect to entry into an adjacent attractive market involving a

13   line of commerce in which the firm is already heavily engaged." *Phillips Petrol.*, 367 F. Supp.

14   at 1239; *accord Marine Bancorp.*, 418 U.S. at 633 (considering whether the acquiring firm had

15   "available feasible means" of entering absent the proposed acquisition).

16         The Amended Complaint alleges in detail how Meta has the size, resources, capability,

17   and motivation to enter the VR Dedicated Fitness App market—and how it has seriously

18   considered doing so—by means other than acquiring the ███████, Supernatural.  With

19   respect to size and resources, the FTC has alleged (and the evidence will show) that, *inter alia*,

20   "Meta has committed tens of billions of dollars to its Reality Labs division, which develops its

21   VR and AR products, including more than $7.7 billion in 2020, $12.4 billion in 2021, and $3.6

22   billion in the three-month period ending in March 2022" (Am. Compl. ¶ 58); Meta already

23   produces the best-selling VR headset in the United States by a wide margin, owns the leading

24   distribution platform of VR apps, and is the leading seller of VR apps (*id.*); "Meta had an

25   annual profit of $46.7 billion, and spent more than $12 billion on its Reality Labs division" in

26   2021 (*id.* ¶ 60); and "the ███████ [Meta] proposes to spend on this acquisition is ███████

27   ████████████████████████████████████████████████

28

1        █████████ during which time "Within built Supernatural from the ground up into the ███

2 ███ VR dedicated fitness app" (*id.* ¶ 61).

3        Given these resources, it is no small wonder that Meta has, as the Amended Complaint

4 amply alleges, the capability to enter the VR Dedicated Fitness App market absent the proposed

5 acquisition.  Specifically, the Amended Complaint alleges that Meta could build its own VR

6 Dedicated Fitness App because, *inter alia*, Meta "has developed multiple VR apps from scratch

7 before" (*id.* ¶ 63); "developed and released Oculus Move, a platform-level fitness tracker on the

8 Oculus Quest that allows users to track active time and calories burned across apps" (*id.* ¶ 64);

9 "owns seven of the most successful VR development studios in the world" (*id.* ¶ 65); "had

10 nearly 10,000 employees housed within Reality Labs, its division devoted to virtual reality"

11 (*id.*); and through its control of the Quest Store, has "unique access to VR user data, which it

12 uses to inform strategic decisions" (*id.* ¶ 66).

13        The Amended Complaint also alleges facts sufficient to show Meta's incentives to enter

14 the VR Dedicated Fitness App market absent the acquisition of Within, including, *inter alia*,

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████ (*id.* ¶¶ 70-71, 73), and statements from its ███

18 ████████████████████████████████████████████████████

19 ███████████████████████████ (*id.* ¶¶ 72, 75, 81).  In light of this

20 ███████████ it is not surprising that, as the Amended Complaint details and the evidentiary

21 hearing in this case will show, for years "██████████████████████████████

22 ██████████████████████," including "████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ███████████████████" (*Id.* ¶¶ 73-81).  In sum, the Amended Complaint contains more

25 than sufficient allegations regarding "the acquiring company's overall size, resources,

26 capability, and motivation with respect to entry into an adjacent attractive market" to infer that

27 Meta is a "significant potential entrant." *Phillips Petrol.*, 367 F. Supp. at 1239.

28

  **b)**  **The Amended Complaint Alleges Meta's Entry into the VR Dedicated Fitness App Market But-For the Proposed Acquisition Would Have Had Pro-Competitive Effects.**

Courts presume that entry by a large new competitor is substantially likely to ultimately deconcentrate the relevant market or yield other significant procompetitive effects. *See, e.g.*, *Yamaha Motor Co*., 657 F.2d at 979 ("Any new entrant of Yamaha's stature would have had an obvious procompetitive effect leading to some deconcentration."); *BOC Int'l, Ltd. v. FTC*, 557 F.2d 24, 27 (2d Cir. 1977) ("[T]ypically in an oligopolistic situation the entry of a large firm as a new competitor necessarily has significant procompetitive effects." (citation omitted)).  The Amended Complaint alleges that, in addition to deconcentrating the VR Dedicated Fitness App market, alternative entry by Meta would introduce a new competitor into the market with the backing of one of the world's largest, most well-resourced, and most experienced VR industry participants. Am. Compl. ¶¶ 88, 90.  Such entry would increase consumer choice, increase innovation, spur additional competition to attract the best talent, and yield a host of other competitive benefits. *Id.*  ¶ 90.  Crucially, it would also maintain the independent presence and competitive vitality of the ███████████ VR dedicated fitness app ███████, Supernatural.  *Id.*

  **2.**  **Defendants' Attempts to Bake In Additional Requirements Have No Basis in the Case Law—Especially at the Pleading Stage.**

Defendants make no serious attempt to argue that the FTC has not adequately pled the elements for a theory of anticompetitive harm to actual potential competition as explained above.  Instead, Defendants concoct other elements that the FTC supposedly must allege to state a plausible claim based on harm to actual potential competition.  These additional requirements have no basis in the law and are extrapolated from factual *findings* that certain courts made after full hearings on the merits of substantive Section 7 claims—and thus are inapplicable in the context of a motion to dismiss, particularly of a complaint for preliminary injunctive relief under Section 13(b) of the Federal Trade Commission Act.

Defendants argue that an actual potential competition claim is viable only when the FTC

can present "clear proof" that entry would have occurred but for the merger.  Mot. at 2, 19.  As an initial matter, this argument is misplaced at the pleading stage: it goes to the quantum of *evidence* required to prevail on the merits, not the adequacy of the *allegations* in the Amended Complaint.  *B.A.T. Industries, Ltd.*, on which Defendants primarily rely, makes this clear.[6] 1984 WL 565384, at *7 (F.T.C., Dec. 17, 1984) (describing this as a basis for "[e]stablishing liability").  Even at the merits stage, the overwhelming weight of authority favors a "reasonable probability" standard.  *See, e.g.*, *BOC Int'l Ltd.*, 557 F.2d at 28 n.7 (rejecting "clear proof" standard, noting "ample express authority, including congressional authority, in favor of a reasonable probability standard"); *see also Yamaha Motor Co.*, 657 F.2d at 977-79 (finding that Yamaha "probably" would have entered the relevant market absent the joint venture at issue); *Rep. of Texas Corp. v. Bd. of Governors,* 649 F.2d 1026, 1047 (5th Cir. 1981); *United States v. Siemens Corp.*, 621 F.2d 499, 506-07 (2d Cir. 1980).  In any event, determining whether clear proof or a reasonable probability of independent entry exists entails an examination of the "financial and managerial capabilities and interests, and [] incentive to enter the target market," as well as evaluations of entry prospects.  *B.A.T. Indus.*, 1984 WL 565384 at **10-11.  The FTC

---

[6] Defendants make much hay about how the FTC applied—after a full administrative proceeding—a "clear proof" evidentiary standard in *B.A.T. Industries*.  Leaving aside the inherent issues with applying an evidentiary standard on a motion to dismiss, Defendants ignore an axiomatic principle of administrative law—that an agency has the inherent power to revisit its precedents as long as it provides a sufficient explanation for doing so.  *See, e.g.*, *California Trucking Ass'n v. ICC*, 900 F.2d 208, 212 (9th Cir. 1990) ("Federal agencies have the power to 'adjust . . . policies and rulings in light of experience.'") (quoting *Montana Power Co. v. EPA*, 608 F.2d 334, 347 (9th Cir. 1979)).

has plead facts on each of these factors.  *See supra* § 2.B.[7]

Defendants also selectively quote a single word from *Marine Bancorp.* to invent a requirement of "imminent" entry.  Mot. at 8.  But no court has required that a plaintiff *show* that entry would be "imminent"—much less plead it in a complaint.  *Marine Bancorp.*, 418 U.S. at 623 n.22 ("[T]he loss of competition 'which is *sufficiently* probable and imminent' is the concern of § 7" (quoting *United States v. Continental Can Co.*, 378 U.S. 441, 458 (1964) (emphasis added)); *c.f. Yamaha Motor Co.*, 657 F.2d at 977–79 (asking whether Yamaha "probably" would have entered the market independently and affirming Commission's decision based on a finding that potential entrant had "'available feasible means' for entering the relevant market" (quoting *Marine Bancorp.*, 418 U.S. at 633)); *see also BOC Int'l Ltd. v. FTC*, 557 F.2d 24, 29 (2d Cir. 1977) ("we need not decide whether the probable entry of the acquiring firm must be 'imminent' in an actual potential entrant situation.").[8]

---

[7] Moreover, the few supportive decisions Defendants muster are inapposite to this case, as each involved only actual potential competition, rather than both actual and perceived potential competition.  *See B.A.T. Indus.*, 1984 WL 565384 at *1 ("The complaint does not allege" that the acquiring party "was perceived to be a potential entrant" into the relevant market); *FTC v. Atl. Richfield Co.*, 549 F.2d 289, 293 n.6 (4th Cir. 1977).

[8] As demonstrated by evidence cited in the FTC's Emergency Motion for a Temporary Restraining Order—which was filed on the same exact day as the original complaint—the FTC will show at the evidentiary hearing in December that Meta's entry into the VR Dedicated Fitness App market was "sufficiently imminent."  Dkt. 13-2 at 18 (citing PX 1048, a document that shows that Meta estimated it "████████████████████████████████████ ████████████████████████████████████").  This is yet another example of how Defendants' motion is prudentially—if not procedurally—improper: Defendants have known the FTC would rely on this evidence for months, yet now argue at the (Continued…)

**C.     The Amended Complaint Sufficiently Pleads that the Proposed Acquisition Is Likely to Lead to Anticompetitive Effects Under a Theory of Perceived Potential Competition.**

Like actual potential competition, perceived potential competition is a longstanding, viable theory of harm under Section 7.  *See, e.g.*, *Falstaff Brewing Corp.*, 410 U.S. at 531-32 (1973); *Pargas, Inc. v. Empire Gas Corp.*, 423 F. Supp. 199, 227-228 (D. Md. 1976); *Copperweld Corp. v. Imetal*, 403 F. Supp. 579, 589-90 (W.D. Pa. 1975); *Phillips Petrol. Co.*, 367 F. Supp. at 1239.  Here again, Defendants attempt to impose artificial hurdles at the pleading stage.  But the required elements for pleading such a claim are straightforward.

A merger violates Section 7 where a current market participant could reasonably consider the acquiring firm to be a potential entrant into a concentrated market, and that potential entrant has "'likely influence on existing competition.'"  *Marine Bancorp.*, 418 U.S. at 640 (quoting *Falstaff Brewing Corp.*, 410 U.S. at 533-34); *Falstaff Brewing Corp.*, 410 U.S. 534 ("For a claim based on loss of perceived potential competition, a court must "determine whether in any realistic sense [the acquiring firm] could be said to be a potential competitor on the fringe of the market with likely influence on existing competition.").  Notably, the "same facts" that a district court must assess in determining a Clayton Act violation based on actual potential competition are "probative of [a] violation of § 7 through loss of a procompetitive on-the-fringe influence."  *Falstaff Brewing Corp.*, 410 U.S. at 534 n.13; *accord Phillips Petrol.*, 367 F. Supp. at 1255.

As explained in detail above, the Amended Complaint alleges that Meta is a massive, wealthy company with extensive experience in various aspects of the VR industry.  Am. Compl. ¶¶ 58-68, 93.  It has recently expanded into a variety of VR fitness-related areas, including by acquiring the most popular VR incidental fitness app (Beat Saber) and by internally developing

eleventh hour and at the end of fact discovery that the FTC's allegations from three months ago do not satisfy the pleading requirements of Rule 8.

a system-level fitness tracking tool (Oculus Move).  *Id.* ¶ 93.  Not surprisingly, as the Amended

Complaint alleges, Within recognized that Meta was a potential entrant to the VR Dedicated

Fitness App market and would be a formidable rival if Meta did choose to enter.  *Id.* ¶¶ 94-102.

The Amended Complaint explains how a ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  *Id.* ¶ 95.

The Amended Complaint also sufficiently alleges that Meta's perceived potential entry

has "likely influence on existing competition."  *Falstaff Brewing Corp.*, 410 U.S. at 534.  As

detailed in the Amended Complaint, Within ████████████████

████████████████████████████████████████████████████.  Am. Compl. ¶ 98.

It has ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████.  *Id.* ¶¶ 99-100.  The Amended Complaint alleges that competitive

pressure—and all of the benefits it yields—would be eliminated by the proposed acquisition.

*Id.* ¶ 102.

As with their arguments pertaining to actual potential competition, Defendants do not

appear to seriously contest that the FTC has failed to allege facts to support its contention that

Meta "could be said to be a potential competitor on the fringe of the market with likely

influence on existing competition."  *Falstaff Brewing Corp.*, 410 U.S. at 534.  Instead,

Defendants appear to argue that subjective "fear" of entry among existing rivals is required.

Mot. at 8, 15.  But the actual standard is objective: as the Supreme Court has explained, "[t]he

specific question with respect to this phase of the case is . . . whether, given [the acquirer's]

financial capabilities and conditions in the . . . market, it would be reasonable to consider it a

potential entrant into that market."  *Falstaff Brewing Corp.*, 410 U.S. at 533; *see also Phillips

Petrol.*, 367 F. Supp. at 1239 (relying "primarily upon objective evidence" to analyze perceived

potential competition claim).

Defendants also assert that no valid claim under this theory can exist unless "fear of possible Meta entry, and Meta entry alone, *actually* restrained anticompetitive behavior" within the relevant market.  Mot. at 15 (emphasis in original).  In search of support, Defendants attempt to rely on *Marine Bancorp.  Id.*  But the Court there repeatedly made clear that the threshold is whether the acquiring firm exerts a "likely" influence, not an "actual" restraint of pre-existing behavior, much less pre-existing "anticompetitive behavior."  *Marine Bancorp.*, 418 U.S. at 624 ("[T]he principal focus of the doctrine is on the likely effects of the premerger position of the acquiring firm on the fringe of the target market."); *id.* at 640 ("likely influence on existing competition" (quoting *Falstaff Brewing Corp.*, 410 U.S. at 533–34)).  And Defendants conveniently ignore *Falstaff Brewing*, which remains good law: "The Government did not produce direct evidence of how members of the New England market reacted to potential competition from Falstaff," yet a perceived potential competition theory was still potentially viable.  410 U.S. at 534 n.13; *accord United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729, 773 (D. Md. 1976) ("[T]he government need not introduce evidence of actual market response to Black & Decker's influence."); *Phillips Petrol.*, 367 F. Supp. at 1257 ("[T]he objective evidence demonstrates the substantiality of the procompetitive effect exerted by Phillips from its position on the edge of the market prior to the acquisition."). In any event, the Amended Complaint alleges that the threat of Meta's entry did affect Within's behavior. *See supra.*[9]

## II.    Actual Potential Competition Is a Viable Theory of Antitrust Harm.

As a last-ditch effort, Defendants ask this Court to simply declare the FTC's theory of harm to actual potential competition as "legally invalid."  Mot. at 16.  Defendants give short

---

[9] For the same reasons as discussed in regard to actual potential competition, Defendants' argument that the FTC must allege pre-existing "anticompetitive behavior," Mot. at 9, 15, confuses Section 7 of the Clayton Act with Sections 1 and 2 of the Sherman Act.

shrift to this argument—for good reason.  Far from being a "dead-letter doctrine," "never

applied" by this Circuit, Mot. at 2, harm to actual potential competition has long been

recognized by courts in this Circuit—*which were subsequently affirmed by the Supreme

Court*[10]—and elsewhere as a basis for concluding a merger violated Section 7 of the Clayton

Act by lessening actual potential competition.  *E.g.*, *Phillips Petrol. Co.*, 367 F. Supp. at 1234,

*aff'd*, *Phillips Petrol. Co. v. United States*, 418 U.S. 906 (1974); *United States v. Joseph Schlitz

Brewing Co.*, 253 F. Supp. 129, 138 (N.D. Cal. 1966), *Aff'd*, *Jos. Schlitz Brew Co. v. United

States,* 385 U.S. 37 (1966); *see also Yamaha Motor Co.*, 657 F.2d at 977–79; *Ekco Prods. Co. v.

FTC*, 347 F.2d 745, 753 (7th Cir. 1965).  Defendants are thus simply wrong when they assert

"neither the Ninth Circuit nor this Court—nor any other federal appellate court—has accepted

actual potential competition as a reason to bar an acquisition."  Mot. at 17.

      Defendants attempt to discount this authority by stating that no "Circuit has accepted

[actual potential competition] in a case involving a new product not already offered by the

acquiring firm."  Mot. at 2.  As a preliminary matter, Defendants do not, and cannot, explain

why that matters—other than by purportedly providing a means to distinguish *Yamaha*, which,

as previously discussed, actually did involve a *product* market (high-horsepower) in which

Yamaha had not competed previously anywhere. Defendants are also wrong here as it pertains

to circuit authority.  In *Kennecott Copper Corp. v. FTC*, for example, the Tenth Circuit upheld a

Commission finding that a copper producer was a "substantial potential entrant into the coal

industry" based on its experience in "hard rock mining and its acknowledged capabilities, its

financial resources and its close proximity to the coal industry."  467 F.2d 67, 76–77 (10th Cir.

1972), *cert. denied*, 416 U.S. 909 (1974).  To be sure, the primary focus in that case was

perceived potential competition, but the court also affirmed the Commission's finding that

Kennecott "could have entered the industry" by alternative means, and that as a result "a new

---

[10] Prior to 1974, appeals in civil antitrust cases filed in federal district court went directly to the
United States Supreme Court pursuant to the Expediting Act, 15 U.S.C. § 29(b).

competitive force was lost." *Id.* at 77 n.8 ("The possibility of new rivals coming into the industry by internal expansion . . . is essential to effective competition."). Similarly, in *Ekco Products*, the Seventh Circuit upheld a Commission finding that a commercial baking-pan manufacturer was an actual potential entrant into the market for commercial meat-handling equipment. 347 F.2d 745, 753 (7th Cir. 1965) ("We conclude, under the record before us, the Commission could find there was a reasonable probability that Ekco would have entered the commercial meat-handling industry by internal expansion . . . .").

Nor did the Supreme Court's *Twombly* decision eliminate actual potential competition from the substantive scope of Section 7, despite Defendants' sweeping claim to that effect. Mot. at 16–17.  Defendants first assert that *Marine Bancorp.* "not[ed] the inherently speculative nature" of actual potential competition claims.  *Id.* at 16.  *Marine Bancorp.* opinion did no such thing, instead carefully distinguishing the heavily regulated industry at issue (commercial banking) from less regulated markets. 418 U.S. at 637.  More fundamentally, Defendants misunderstand *Twombly*.  *Twombly* addressed whether a plaintiff had alleged facts from which a court could plausibly infer the requisite elements of a claim; it did not alter the substantive viability of the claim itself.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  Section 7 analysis "necessarily focuses on 'probabilities, not certainties.'"  *St. Alphonsus*, 778 F.3d at 783 (quoting *Brown Shoe*, 370 U.S. at 323).  This entails "'a prediction of [the merger's] impact upon competitive conditions in the future; this is what is meant when it is said that the amended § 7 was intended to arrest anticompetitive tendencies in their incipiency.'"  *Id.* (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 362 (1963)).  *Twombly* did not upend antitrust law by transforming Section 7 into a statute that requires "certainties."

### III.    Defendants' Motion to Dismiss Is Untimely.

Aside from the merits, Defendants' motion should be denied because it raises defenses to claims asserted in the FTC's original Complaint, which Defendants answered in both this

proceeding on August 26, 2022 (Dkt. 83, 85), and the administrative proceeding on August 22, 2022 and August 23, 2022.  While the Ninth Circuit has not addressed whether amending a complaint revives a defendant's opportunity to file a motion to dismiss after having already filed an answer to the original complaint, the "weight of authority" establishes that "a defendant may attack only new allegations or claims not contained in the original complaint."  *Brooks v. Caswell*, 2016 WL 866303, at *3 (D. Or. Mar. 2, 2016) (citing cases).  In *Brooks*, the court denied as untimely a motion to dismiss an amended complaint that did not alter the substance or grounds supporting the claims for relief in the original complaint that defendant has answered.  2016 WL 866303, at *5.[11]  That is the exact situation we have here—the Amended Complaint did not alter the substance or grounds (or even the language) of the allegations supporting the theories of anticompetitive harm based on actual potential competition or perceived potential competition.

*Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, 2016 WL 10570248 (C.D. Cal. Aug. 17, 2016), is particularly persuasive.  That court denied a motion to dismiss with respect to a claim in an amended complaint that had appeared in the original complaint that defendants had answered.  *Id.* at *5–6.  *Townsend* explained: "Federal Rule 12 states that unless a 12(b) objection is raised at the earliest opportunity it is waived.  Holding that an amended complaint allows a defendant a fresh opportunity to bring a 12(b)(6) motion to dismiss as to claims raised by a prior—answered—complaint would undermine the requirements of the Federal Rule." *Id*; *accord, e.g.*, *Abdulkarim Janahi v. Zuberi*, 2022 WL 2101728, at *4 (C.D. Cal. Mar. 11, 2022) (holding that defendants waived their right to file a motion to dismiss claims in an amended complaint that were in the original complaint that defendants answered); *Nana Akua Serwaah Oddei v. Optum, Inc.*, 2021

---

[11] "That Defendants' asserted a failure to state a claim defense in their initial answer neither preserved nor resurrects their right to file a post-answer motion to dismiss." *Brooks*, 2016 WL 866303, at *4.

WL 6103347, at *3 (C.D. Cal. Oct. 14, 2021) (same); *Daimler AG v. A-Z Wheels LLC*, 2017 WL 9854427, at *2 n.1 (S.D. Cal. Nov. 27, 2017) (same).The fact that Defendants move to dismiss theories versus claims is of no import.  The same reasoning applies to *theories* alleged in a complaint, the pleading sufficiency of which can be challenged under Rule 12(b)(6) prior to the filing of an answer.  *E.g., Fortinet Inc. v. FireEye Inc*., 2014 WL 4955087, at *6 (N.D. Cal. Sept. 30, 2014) (dismissing certain theories of liability for patent infringement claim).

Allowing this motion at this late stage would affect the efficient administration of this case given the length of time that has passed, the status of discovery, and the impending evidentiary hearing.  This Court thus should join the "many courts have held that once a claim has been pled, the defendant must assert his 12(b)(6) motion; the right to file a motion to dismiss for failure to state a claim is not revived when the claim is pled again in an amended complaint."  *City of Las Cruces v. Lofts at Alameda, LLC*, 2022 WL 715124, at *9 (D.N.M. Mar. 10, 2022) (citing cases, including *Brooks*, *supra*).[12]

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint should be denied.

---

[12] Defendants' late filing—after substantial discovery has occurred, after this Court has ruled on numerous discovery disputes, and on the eve of pre-hearing memoranda being filed—also undercuts any argument that the Court should nonetheless entertain their untimely motion as a matter of "judicial economy."

Dated:  October 27, 2022

Respectfully submitted,

*/s/ Abby L. Dennis*
Abby L. Dennis
Peggy Bayer Femenella
Joshua Goodman
Jeanine Balbach
Michael Barnett
E. Eric Elmore
Justin Epner
Sean D. Hughto
Frances Anne Johnson
Andrew Lowdon
Lincoln Mayer
Erika Meyers
Susan A. Musser
Adam Pergament
Kristian Rogers
Anthony R. Saunders
Timothy Singer
James H. Weingarten

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2381

Erika Wodinsky
90 7th Street, Suite 14-300
San Francisco, CA 94103
Tel: (415) 848-5190

*Counsel for Plaintiff Federal Trade Commission*