Mark C. Hansen (*pro hac vice*)
mhansen@kellogghansen.com
Aaron M. Panner (*pro hac vice*)
apanner@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999

Michael Moiseyev (*pro hac vice*)
michael.moiseyev@weil.com
Chantale Fiebig (*pro hac vice*)
chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
*Counsel for Defendant Meta Platforms, Inc.*

Christopher J. Cox (Bar No. 151650)
chris.cox@hoganlovells.com
HOGAN LOVELLS US LLP
855 Main Street, Suite 200
Redwood City, CA 94063
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
*Counsel for Defendant Within Unlimited, Inc.*

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 5:22-cv-04325-EJD |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| META PLATFORMS, INC., et al., | |
| Defendants. | Hearing:  February 23, 2023, at 9:00 a.m. |
| | Dept.: Courtroom 4 – 5th Floor<br>Judge: Hon. Edward J. Davila |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

STATEMENT OF THE ISSUES TO BE DECIDED ................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT .................................................................................................................. 3

I.      The FTC Cannot Avoid Examination of Its Amended Complaint Under
*Twombly* .......................................................................................................... 3

II.     The FTC Fails To State a Claim Under *Twombly* and *Marine Bancorporation* ................ 5

      A.      The FTC Does Not Allege Oligopolistic Structure or Behavior ............................ 5

            1.      The FTC Must Plead Facts Establishing a Plausible Claim of
Oligopolistic Behavior by Current Market Participants ............................. 6

            2.      The FTC Fails To Plead Oligopolistic Structure ......................................... 7

      B.      The "Perceived Potential Competition" Theory Also Fails Because
the FTC Does Not Allege Meta's Potential Entry Actually Stopped
Oligopolistic Behavior ........................................................................................ 10

      C.      The Actual Potential Competition Claim Is Invalid .............................................. 12

            1.      Actual Potential Competition Is Not a Valid Legal Theory ...................... 12

            2.      The FTC's Actual Potential Competition Claim Is Fatally
Speculative ................................................................................................. 13

CONCLUSION .............................................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adesanya v. INS*, 1993 WL 210801 (9th Cir. June 16, 1993)..........................................................3

*B.A.T. Indus., Ltd.*, *In re*, 1984 WL 565384 (FTC Dec. 17, 1984)....................................13, 14, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................................4, 5, 14

*BOC Int'l Ltd. v. FTC*, 557 F.2d 24 (2d Cir. 1977) ...............................................................13, 15

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993).......................5, 8

*Brooks v. Caswell*, 2016 WL 866303 (D. Or. Mar. 2, 2016) .................................................3

*DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758 (9th Cir. 2018) ....................................5

*Ekco Prods. Co. v. FTC*, 347 F.2d 745 (7th Cir. 1965) ..............................................................12

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ...........................................4

*FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977)..........................................4, 14

*FTC v. Procter & Gamble Co.*, 386 U.S. 568 (1967) .................................................................7

*FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) .......................................................9

*FTC v. Simeon Mgmt. Corp.*, 532 F.2d 708 (9th Cir. 1976) ................................................4

*FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015) ................................................4

*FTC v. Tenneco, Inc.*, 433 F. Supp. 105 (D.D.C. 1977) .......................................................4

*FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156 (9th Cir. 1984).........................................2, 4

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989) .......................................4

*Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943 (E.D. Mo. 2009),
        *aff'd*, 623 F.3d 1229 (8th Cir. 2010) ...............................................................5

*Kennecott Copper Corp. v. FTC*, 467 F.2d 67 (10th Cir. 1972).........................................12

*Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*, 2022 WL 2644096
        (N.D. Cal. July 8, 2022), *appeal pending*, No. 22-2107 (Fed. Cir.) ...................................3

*Mercantile Texas Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 638 F.2d 1255
        (5th Cir. Unit A Feb. 1981)........................................................................14

*Miller v. Fuhu Inc.*, 2015 WL 2085490 (C.D. Cal. May 4, 2015)....................................3

ii

*Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851 (2d Cir. 1974) ......................5, 8, 11

*NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85 (1984) ........................................................1

*Press Rentals, Inc. v. Genesis Fluid Sols., Ltd.*, 2014 WL 31251
    (N.D. Cal. Jan. 3, 2014) ...............................................................................................................3

*Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) ...........................................9

*Republic of Texas Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F.2d 1026
    (5th Cir. Unit A June 1981) .......................................................................................................14

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775
    (9th Cir. 2015) ..............................................................................................................................9

*Tenneco, Inc. v. FTC*, 689 F.2d 346 (2d Cir. 1982) .........................................................................15

*Townsend Farms v. Goknur Gida*, 2016 WL 10570248 (C.D. Cal. Aug. 17, 2016) ......................3

*Trachsel v. Buchholz*, 2009 WL 86698 (N.D. Cal. Jan. 9, 2009) ....................................................3

*United States v. Aetna Inc.*, 240 F. Supp. 3d 1 (D.D.C. 2017) ......................................................13

*United States v. AT&T, Inc.*, 916 F.3d 1029 (D.C. Cir. 2019) ........................................................9

*United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729 (D. Md. 1976) ..............................12

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973) ...............................................11, 12

*United States v. Joseph Schlitz Brewing Co.*, 253 F. Supp. 129 (N.D. Cal.),
    *aff'd mem.*, 385 U.S. 37 (1966) ..........................................................................................12, 13

*United States v. Marine Bancorporation, Inc.*, 418 U.S. 602 (1974) ....................1, 2, 4, 5, 6, 7, 8,
    10, 11, 12, 13, 15

*United States v. Phillips Petroleum Co.*, 367 F. Supp. 1226 (C.D. Cal. 1973),
    *aff'd mem. sub nom. Tidewater Oil Co. v. United States*, 418 U.S. 906
    (1974), .........................................................................................................................................12

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980) .................................................14, 15

*United States v. Syufy Enters.*, 903 F.2d 659 (9th Cir. 1990) .....................................................8, 9

*Yamaha Motor Co. v. FTC*, 657 F.2d 971 (8th Cir. 1981) ..........................................................7, 13

**STATUTES AND RULES**

Clayton Act, 15 U.S.C. § 12 *et seq.*:

§ 7, 15 U.S.C. § 18 ................................................................................. 1, 3, 5, 7, 8, 13, 15

Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*:

§ 13(b), 15 U.S.C. § 53(b) .........................................................................................2, 4, 9

Sherman Act, 15 U.S.C. § 1 *et seq.*:

§ 1, 15 U.S.C. § 1 .......................................................................................................... 14

Fed. R. Civ. P.:

Rule 12 .....................................................................................................................2, 4

Rule 12(b)(6) ...........................................................................................................1, 3, 4

Rule 12(c) ........................................................................................................................3

Rule 15(a)(3) ...................................................................................................................3

**OTHER MATERIALS**

Stephen M. Shapiro et al., *Supreme Court Practice* (10th ed. 2013) ...........................................12

REPLY IN SUPPORT OF DEFENDANTS' MOTION          Case No. 5:22-cv-04325-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPLY MEMORANDUM AND POINTS OF AUTHORITIES

### STATEMENT OF THE ISSUES TO BE DECIDED

Meta and Within respectfully request that the Court dismiss with prejudice the Federal Trade Commission's Amended Complaint ("AC") under Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION AND SUMMARY OF ARGUMENT

The Court should have no misunderstanding of what is at stake.  Vertical acquisitions like this one, by established firms purchasing a target outside the markets in which they compete, are generally lawful and indeed significantly pro-competitive:  no existing competition is lost, and the acquirer can bring the benefits of experience and resources to the acquired firm, leading to benefits for consumers – the touchstone of federal antitrust law.  *See NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 106-07 (1984) (antitrust laws are a "consumer welfare prescription").  This axiom is particularly true for new products like Supernatural.  The government cites no case in which it has successfully challenged such an acquisition of a new business – ever.

Perhaps recognizing that the appropriate legal standard dooms this "potential competition" case, the FTC proposes a novel and untenable legal theory.  Its Amended Complaint asserts that Section 7 prohibits virtually any acquisition that involves (1) a new product (as to which a first mover may have a large share of the revenues) and (2) an acquirer that *could* theoretically enter on its own.  This standard would likely condemn every new-market acquisition that the government chooses to challenge.  But the FTC's purported standard is not the law.  *Marine Bancorporation* is the Supreme Court's last and governing word on all "potential competition" claims – and the FTC fails to plead facts that could establish a plausible case under the intentionally rigorous requirements established in that case.

The risk of *harm* from an incorrect decision here cannot be ameliorated by the FTC's bland assurance (at 4) that it seeks no more than an "interim" pause, based on whatever "serious" question it might be able to raise.  That is simply not true.  This case, before this Court, is the *only* trial this vertical acquisition will ever get.  If the Court grants the requested injunction, there is no possibility that the parties will wait for the years it will necessarily take – through an administrative trial, Commission review, and appeal – to find out whether they can combine.  Equally wrong is the

1

FTC's constant incantation of language from a 1984 decision, *Warner*, to the effect that it need only show a "serious question" to get its requested injunction. The controlling statute, 15 U.S.C. § 53(b), authorizes a preliminary injunction *only* after the FTC has established that it is *likely to succeed on the merits* and that the balance of the equities favors injunction. Nothing in *Warner* or in any other case modifies or eliminates those statutory requirements, which is why, in the nearly 40 years since, not one court has granted an injunction in a potential competition case based on the FTC's proposed standard. On the contrary, courts have recognized their obligation to assess the merits and the equities. The same should happen here.

The reason for the lack of authority supporting the FTC is clear: *Marine Bancorporation* instructed that *no* potential competition claim, of any variety, can succeed in the absence of a dysfunctional, oligopolistic market – as to both structure and behavior – protected by significant entry barriers. The Supreme Court held that a "perceived potential competition" claim requires facts showing that firms in the target market were *actually* restrained from oligopolistic, cartel-like behavior – such as setting price in lockstep – specifically by the fear of entry by the acquiring firm *alone*. The Supreme Court was even stronger in its warning about the inherently speculative "actual potential competition" claim. "Unequivocal proof" is "rarely available" that an acquiring company, absent an acquisition, would have entered a new market on its own, and the Supreme Court pointedly noted that it had never accepted the validity of such a theory, despite opportunities to do so. *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 624 (1974). The FTC here alleges none of what the Supreme Court requires for resort to this highly questionable legal theory.

Held to the standards of *Marine Bancorporation*, the Amended Complaint fails to state facts meeting each of the required elements, much less facts amounting to a plausible claim as to these elements. Ignoring that authority, the FTC argues that the instant motion is untimely (it is not), that the 1984 *Warner* case controls (it does not even address Rule 12 or *Marine Bancorporation*), and that there is no authority that permits dismissal of a Section 13(b) case (when every case filed in federal court must state a fact-supported, plausible claim under a valid legal theory). On the issues that matter here, the FTC cannot point to any pleaded facts that could satisfy the limited, long-mothballed doctrine it is trying to revive and reconfigure.

# ARGUMENT

## I.  The FTC Cannot Avoid Examination of Its Amended Complaint Under *Twombly*

*First*, there is no issue of timeliness.  *See* Opp. at 21-23.  The FTC filed its Amended Complaint on October 7, 2022, after dropping its traditional Section 7 horizontal-merger claim and changing its market allegations.  *See* Mot. at 1.  Defendants consented to the filing of this amended pleading, but made clear to the FTC that they planned to move to dismiss.  *See* Dkt. 101 at 2. Despite having 14 days to "respond," Fed. R. Civ. P. 15(a)(3), Defendants moved less than one week later.  The motion was therefore timely.  *See Miller v. Fuhu Inc.*, 2015 WL 2085490, at *6 (C.D. Cal. May 4, 2015); *see also Adesanya v. INS*, 1993 WL 210801, at *1 (9th Cir. June 16, 1993) (judgment noted at 996 F.2d 1223).  The Amended Complaint narrowed the FTC's claim to a legally deficient theory, such that a ruling on the pleadings would obviate the need for any hearing.[1]  The FTC cites no case in which a court refused to consider a timely Rule 12(b)(6) motion in these circumstances.  *See*, *e.g.*, *Townsend Farms v. Goknur Gida*, 2016 WL 10570248, at *6 (C.D. Cal. Aug. 17, 2016) (defendants partially moved to dismiss after plaintiff amended to *add* more claims). In all events, the FTC espouses empty formalism because this Court can convert a Rule 12(b)(6) motion into a Rule 12(c) motion at any time, where the facial sufficiency of a complaint is challenged.[2]  *See Trachsel v. Buchholz*, 2009 WL 86698, at *2 (N.D. Cal. Jan. 9, 2009).

---

[1] For the same reason, dismissal with prejudice is proper.  *See Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*, 2022 WL 2644096, at *16 (N.D. Cal. July 8, 2022) (Davila, J.), *appeal pending*, No. 22-2107 (Fed. Cir.).  Indeed, in the case the FTC cites (at 2-3 n.1), this Court *granted* a motion to dismiss *with prejudice*.  *See Press Rentals, Inc. v. Genesis Fluid Sols., Ltd.*, 2014 WL 31251, at *3, *5 (N.D. Cal. Jan. 3, 2014) (Davila, J.).  A with-prejudice dismissal is particularly warranted because the FTC filed its original Complaint *after* completing an investigation of the proposed transaction.

[2] The case on which the FTC relies (at 22) acknowledges this point.  *See Brooks v. Caswell*, 2016 WL 866303, at *4 (D. Or. Mar. 2, 2016).  Rule 12(c) was unavailable there because the defendants had not yet answered.  But here the FTC stipulated that Defendants' answers to the

3

*Second*, *FTC v. Warner Communications Inc.*, 742 F.2d 1156 (9th Cir. 1984) (per curiam), says nothing about Rule 12, nor does it, as the FTC suggests (at 2-4), lower the FTC's burden of pleading or proof.  *Warner* acknowledged that Section 13(b) requires a determination of the FTC's "likelihood of success," the traditional and statutory standard for preliminary relief.  *See* 15 U.S.C. § 53(b).  Deciding whether the FTC has met that statutory burden entails considering whether an FTC win in its own forum is likely to survive review "ultimately by the Court of Appeals." *Warner*, 742 F.2d at 1162; *see also FTC v. Simeon Mgmt. Corp.*, 532 F.2d 708, 715-16 (9th Cir. 1976) (Kennedy, J.) (same).  *Warner* did not change what it means to establish likelihood of success, nor did it (or could it) amend the controlling language in Section 13(b) itself.  *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999) (Section 13(b) requires establishing a "likelihood of success on the merits"); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989) (same).  The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), not *Warner*, controls this motion, while *Marine Bancorporation* controls the substantive requirements the FTC must plead facts to satisfy.  And no court has held, or could hold, that Section 13(b) claims are exempt from *Twombly*.

*Third*, the FTC points (at 2) to the paucity of Section 13(b) potential competition claims – and, likewise, decisions on the pleadings – to make a virtue of its lack of success.  The FTC has *never* obtained an injunction under Section 13(b) in these circumstances.  It has tried only three times, each a failure.  *See generally FTC v. Tenneco, Inc.*, 433 F. Supp. 105 (D.D.C. 1977) (denying injunction); *FTC v. Atlantic Richfield Co.*, 549 F.2d 289 (4th Cir. 1977) (same); *FTC v. Steris Corp.*, 133 F. Supp. 3d 962 (N.D. Ohio 2015) (same).  No defendant moved to dismiss in those cases.  That tactical choice, based on different complaints – and in two instances pre-*Twombly* law on Rule 12(b)(6) – does nothing to support the FTC's argument.  No complaint may proceed in federal court unless it alleges *facts* that, taken as true, establish a plausible claim to relief under a valid legal theory.  *See Twombly*, 550 U.S. at 555.  While some potential competition cases have

---

original Complaint are operative as to the Amended Complaint *and* acknowledged that Defendants might move to dismiss.

failed after trials, courts can resolve facially invalid claims of this nature on the pleadings – and have, repeatedly. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 764-65 (9th Cir. 2018) (affirming dismissal with prejudice of Section 7 potential competition claim where complaint failed to include the facts necessary to support the claim); *Ginsburg v. InBev NV/SA*, 649 F. Supp. 2d 943, 947-50 (E.D. Mo. 2009) (similar), *aff'd*, 623 F.3d 1229 (8th Cir. 2010).

## II.     The FTC Fails To State a Claim Under *Twombly* and *Marine Bancorporation*

The motion previously demonstrated that, under controlling authority, *any* potential competition claim must fail in the absence of facts showing a dysfunctional market afflicted by oligopolistic *structure* and *conduct*.  The FTC has not even attempted to point to any facts showing oligopolistic behavior, as they are entirely absent from the Amended Complaint; neither has the FTC made plausible allegations showing oligopoly structure.  (Point A.)  For its "perceived potential competition" claim, it has likewise failed to point to any facts that could establish that fear of Meta entry, and that alone, actually restrained what would otherwise have been oligopolistic conduct by Within or others.  (Point B.)  And "actual potential competition" does not state a valid legal theory at all, but, if it did, the FTC's facts cannot even satisfy its own construction of what such a claim might look like.  (Point C.)

### A.     The FTC Does Not Allege Oligopolistic Structure or Behavior

Potential entry is of no antitrust significance in markets that are *already* competitive.  *See United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 630 (1974).  The theory can be invoked, if at all, only in mature markets that have few competitors and little or no competition ("oligopoly").[3]  The Amended Complaint fails to include any facts sufficient to support a claim that

---

[3] *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993) (explaining that oligopoly is where "firms in a concentrated market [can] in effect share monopoly power, setting their prices at a profit-maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions"); *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 860 (2d Cir. 1974) (Friendly, J.) (describing oligopoly in rejecting potential competition claim).

REPLY IN SUPPORT OF DEFENDANTS' MOTION          Case No. 5:22-cv-04325-EJD

the alleged "VR Dedicated Fitness App" market is oligopolistic – as to either structure or behavior. Indeed the few facts pleaded suggest the opposite:  a vigorously competitive space characterized by innovation and rapid entry.  *See* Mot. at 9-15.[4]

### 1.   The FTC Must Plead Facts Establishing a Plausible Claim of Oligopolistic Behavior by Current Market Participants

Because the FTC must concede (at 7) that it has not alleged any facts demonstrating oligopolistic behavior in the "VR Dedicated Fitness App" market, it argues that it need not do so: there is "no authority for this remarkable proposition," it says.

The authority is *Marine Bancorporation*, which states expressly that both oligopolistic structure and behavior are necessary elements.  Thus, the Court held that potential competition doctrine "comes into play only where there are [(1)] dominant participants in the target market . . . with the capacity effectively to determine price and total output of goods or services" – that is, oligopoly structure – "and" that are (2) "engaging in interdependent or parallel behavior" – that is, oligopolistic behavior.  *Marine Bancorporation*, 418 U.S. at 630; *see* Mot. at 9 (citing this standard).  The FTC has no answer to the Supreme Court's plain statement of the legal standard except to ignore it.

The FTC suggests (remarkably) that the Supreme Court took these elements back later in the decision.  But it did not.  *Marine Bancorporation*'s subsequent discussion of concentration ratios shows that "actual market behavior" remains a prerequisite for liability even where there are high market shares and high barriers to entry.  418 U.S. at 632 n.34.  The FTC mistakenly contends (at 7) that *Yamaha* dispenses with this prerequisite – as though lower courts could ignore Supreme Court holdings.  But there the oligopoly (eight firms shrinking to five, in the mature U.S. market for

---

[4] The FTC does not and cannot plead oligopoly because, *according to the FTC*, competition in "VR Dedicated Fitness" includes not just the five competitors identified in the Amended Complaint but *nine* separate apps – a near doubling in less than three years.  *See* FTC's Third Suppl. Resps. & Objs. to Defs.' Interrog. No. 5, at 9-11 (Oct. 25, 2022).  The Amended Complaint is silent on the key point, therefore, for good reason.

6

outboard engines) was conceded by the defendants, and the court had no reason to address this required element. *See Yamaha Motor Co. v. FTC*, 657 F.2d 971, 978-80 (8th Cir. 1981) (explaining that defendant argued only that it was "in no position to enter" and that the challenged agreement's anticompetitive effects "were outweighed by the procompetitive effects").

The FTC finally retreats to policy argument – relying on out-of-context quotes from cases that predate *Marine Bancorporation* to suggest that, because Section 7 allows plaintiffs to "'thwart[]'" anticompetitive "'practices in their incipiency,'" actual oligopolistic conduct cannot be a requirement. Opp. at 7 (quoting *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967)). But the controlling policy comes from *Marine Bancorporation*, which explains that *potential* competition doctrine – where it exists at all – cannot come into play in the absence of proof that the market is not actually functioning competitively. The *threat* that something might happen in the future is simply not enough. That makes perfect sense: a mere change in ownership of an existing company does not make any market more concentrated or less competitive. *See Marine Bancorporation*, 418 U.S. at 630-31 (explaining that potential competitors have no effect on already competitive markets). Acquisitions are an important way for companies to invest and innovate – and *Marine Bancorporation*'s threshold requirement of oligopolistic structure *and* behavior guards against regulatory central planning to bad competitive effect.

The Amended Complaint concededly has no facts plausibly showing that "dominant participants in the target market [are] engaging in interdependent or parallel behavior." *Id.* at 630. That is fatal to both claims here.

### 2.      The FTC Fails To Plead Oligopolistic Structure

**a.**      The FTC argues (at 7-10) that all it need allege to establish a plausible claim that its alleged market is oligopolistic in structure is ███████████████ for two competitors. *See* AC ¶¶ 52-53. As the Amended Complaint asserts, Supernatural launched less than three years ago; FitXR was allegedly the "███████████████." *Id.* ¶ 53. Entry has been constant and more is expected – *according to the FTC. See id.* ¶ 98 (Within founder Chris Milk stating "████████ ██████████████"). Indeed, the FTC admits throughout its Amended Complaint that this rapid expansion and entry is occurring within a "VR industry [that] is currently

7

characterized by a *high degree of innovation and growth*." *Id.* ¶ 25 (emphasis added); *see also id.*
¶ 5 (alleging that VR is a "growing industry" and fitness is a "fast-growing category"), ¶ 33
("dedicated or deliberate fitness is the fastest growing category"), ¶ 73 (similar).  The FTC cites no
authority for the sweeping proposition that high ███████████████████, for a new product in
a rapidly expanding, nascent market, state a plausible claim of structural oligopoly.

That is for good reason.  The essential characteristic of an oligopolistic market is that the
participants coordinate their conduct to extract high profits without fear of competitive response.
*See Missouri Portland*, 498 F.2d at 860; *Brooke Grp.*, 509 U.S. at 227-28 (explaining that the
oligopolistic "minuet is most difficult to compose and to perform," "especially in the context of
changing or unprecedented market circumstances"); *see also* Mot. at 9-10.  Nothing about the
alleged structure of the "VR Dedicated Fitness" market states a plausible claim that any firm has
done this – no profits are alleged for *any* firm – or *can* do it.  In short, the unexceptional finding that
the first entrants gain a ██████████████ does not support a claim of oligopolistic
structure.  *See* Mot. at 11.

**b.**     The implausibility of the FTC's claim is confirmed by the absence of facts showing
barriers to entry, as well as the FTC's admissions that entry has occurred and is expected to
continue.  *See* AC ¶¶ 53, 70, 72, 98-100; Mot. at 10.  If entry is practicable and occurring, then
existing market participants – before and after the challenged acquisition – will have no "capacity
effectively to determine price and total output of goods or services."  *Marine Bancorporation*, 418
U.S. at 630; *see also United States v. Syufy Enters.*, 903 F.2d 659, 671 n.21 (9th Cir. 1990) ("[T]he
lack of entry barriers prevents the government from prevailing on its Clayton Act claim, as Syufy's
acquisition of its competitors was not likely to substantially lessen competition.").

**i.**     The FTC first argues (at 8) that it "need not allege any entry barriers to . . . make out
a prima facie case" of oligopoly.  No case supports this position.  The FTC does not identify a
single potential competition case – and certainly none since *Marine Bancorporation* – that found
liability in the absence of high barriers to entry.  The FTC's efforts to claim a *presumption* of
oligopoly based on ██████████ is without any support.  The only "presumption" in Section 7
cases is based on *increases* in concentration arising from horizontal mergers in mature markets with

8

few competitors ("concentrated" markets).  No such presumption is applicable here, where the acquisition does not involve horizontal competitors and does not increase concentration at all.[5]

**ii.**     The FTC next says (at 8-10) that, if it does have to allege barriers to entry, it has done so.  But the only supposed "barriers" identified in the Amended Complaint – time and money – are no barriers at all.  As the Ninth Circuit has repeatedly explained, neither the fact that it takes *some* time and capital to enter a market (*see* AC ¶ 104), nor fear of competition itself (*see id.* ¶¶ 104-107), can be considered antitrust barriers to entry.  *See* Mot. at 11-12 (citing *Syufy*, 903 F.2d at 667; *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995)).  The cases cited by the FTC (at 9) are all notable for the presence of *facts* as to actual barriers far different from the vague and unquantified need for time and capital the FTC musters here.

The FTC points (at 8) to allegations that Meta has invested heavily in VR.  But that hardly can be claimed as a barrier to others; indeed, the supposedly ▮▮▮▮▮ firm in the putative "VR Dedicated Fitness" market is a small startup with none of Meta's resources.  The FTC also claims (at 8) that VR talent is supposedly "increasingly scarce," but this conclusory and vague allegation falls far short of pleading facts amounting to a plausible claim that a talent shortage prevents rivals from developing new "VR Dedicated Fitness" apps.  As for "network effects," the FTC's brief (at 9-10) says only that network effects are relevant to some undefined category it calls "digital markets," but neither the brief nor the Amended Complaint says anything about why they create

---

[5] *See Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 786 (9th Cir. 2015) (only "[m]ergers that *increase* the HHI more than 200 points *and* result in highly concentrated markets are presumed to be likely to enhance market power") (emphases added; internal quotation marks omitted); *United States v. AT&T, Inc.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019) ("the government cannot use a short cut to establish a presumption of anticompetitive effect through statistics about the change in market concentration" when the "merger[] produce[s] no *immediate* change in the relevant market share") (emphasis added); *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 310-11 (D.D.C. 2020) (holding that, where FTC "failed to show undue concentration" from the transaction, it had not made out "its prima facie case" under Section 13(b)).

9

some kind of barrier to entry for "VR Dedicated Fitness" apps, *i.e.*, the relevant market alleged here. *Compare* AC ¶ 104 *with id.* ¶¶ 5-7 (alleging that network effects matter to the growth of the Quest *platform*, not to the growth of fitness apps on the platform).

  **iii.** Finally, the FTC speculates (at 8, 10) that Meta may, at some future date[6] and in some unspecified way, make it difficult for other fitness apps to gain a place on Quest.  But access to Quest is *not* access to VR more broadly; there are other existing platforms and new platforms are expected imminently.  The FTC fails to allege facts showing *either* that there is a current barrier to entry created by Meta's control of its platform *or* that Meta will terminate its current practice of providing distribution to non-Meta apps, just as it provided distribution to Supernatural starting before the acquisition (and still does to FitXR now).  The FTC's theory is incoherent as well as fact-free:  its Amended Complaint maintains that Meta's incentive as the owner of a nascent VR platform is to bring in as many developers as possible.  *See* Mot. at 13.  To the extent Meta wishes to give preference to its own products, it would have the same incentives whether it acquires Supernatural or, as the FTC alleges will happen, develops its own "VR Dedicated Fitness" application.  Thus, any alleged harm on that theory is agnostic as to the instant acquisition.

  **B.** **The "Perceived Potential Competition" Theory Also Fails Because the FTC Does Not Allege Meta's Potential Entry Actually Stopped Oligopolistic Behavior**

  The Supreme Court stated explicitly that *perceived* potential competition claims depend on facts establishing that fear of Meta entry – Meta entry alone, and not that of other potential entrants – *actually* stopped current competitors from engaging in oligopolistic behavior.  *See* Mot. at 15-16. *Marine Bancorporation* demands that "the acquiring firm's premerger presence on the fringe of the target market *in fact* tempered oligopolistic behavior on the part of existing participants in that market." 418 U.S. at 624-25 (emphasis added).  If current competitors were not engaging in, e.g., price coordination, there was no dysfunctional market.  If the acquiring firm is just one of a number

---

  [6] There is no barrier to entry now – the Amended Complaint admits both that Meta owns "the top-grossing" VR game (Beat Saber), AC ¶ 30, and that hundreds of other non-Meta owned games have entered the market and are distributed on Quest, *id.* ¶ 28.

10

of potential threats that stopped such behavior, then changing the ownership of one firm makes no difference to competition and can in fact be "a good way to break through the comfortable vices of oligopoly." *Missouri Portland*, 498 F.2d at 860.  On both levels, the Amended Complaint states no facts amounting to a plausible claim.

1. The FTC's six paragraphs on fear of Meta, *see* AC ¶¶ 97-102, claim only that Within perceived Meta's existing app (Beat Saber) as one "competitive 'threat'" among others.  *Id.* ¶ 99.  This is deficient in two fundamental respects:  First, there is no factual allegation that Within (or anyone else) had been engaging, or would have been engaging, in oligopolistic conduct – for example, price coordination or output restrictions.  Second, there are no facts that make a plausible claim that Within or any other firm stopped such anticompetitive conduct (or decided not to engage in it) solely out of concern that Meta would enter.  Yet both are required.  *See Marine Bancorporation*, 418 U.S. at 624-25.  The FTC's core claim – that Meta made Within "more competitive," AC ¶ 98 – misses the mark by a mile.

The FTC, recognizing that it has no facts to satisfy the correct legal standard, instead tries (at 17) to rewrite *Marine Bancorporation*, changing it to hold that no more is required than a "likely influence on existing competition" by the potential entrant.  But this selective quotation comes not from the Court's holding but rather from its *description* of the lower court's basis for rejecting the perceived potential competition claim.  *See Marine Bancorporation*, 418 U.S. at 640.  The FTC's need to mischaracterize the Supreme Court's holding is further evidence that it cannot plead facts to satisfy the holding's requirements.  If accepted, the FTC's standard would prevent scores of beneficial acquisitions, because it can *always* be argued that the looming presence of other firms somehow "influences" competition.

2. The FTC resorts notably and primarily to cases (at 18-19) that *predate Marine Bancorporation*.  To the extent those cases articulate or apply any looser standards, they do not survive the Supreme Court's subsequent and authoritative articulation of controlling law.

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973), does not help the FTC.  *Marine Bancorporation* specifically clarified that *Falstaff* should be read to demand that "the acquiring firm's premerger presence on the fringe of the target market *in fact tempered oligopolistic*

11

*behavior* on the part of existing participants."  418 U.S. at 624-25 (discussing *Falstaff*) (emphasis added).  Similarly irrelevant are *United States v. Phillips Petroleum Co.*, 367 F. Supp. 1226 (C.D. Cal. 1973), *aff'd mem. sub nom. Tidewater Oil Co. v. United States*, 418 U.S. 906 (1974), and *United States v. Black & Decker Manufacturing Co.*, 430 F. Supp. 729, 773 (D. Md. 1976) – two district court cases that either precede *Marine Bancorporation* (*Phillips*) or plainly fail to follow it (*Black & Decker*).  Moreover, even *Phillips* demanded a showing that the acquisition "eliminated a *substantial* effect upon *competition*" from the specific firm at the edge of the market.  367 F. Supp. at 1234 (emphases added).[7]  The Amended Complaint does not plead facts that would rise to the level of even this lower, incorrect standard.  And *Black & Decker* (which denied the requested injunction but suggested in *dicta* that actual market response is not required) is simply wrong.

### C.    The Actual Potential Competition Claim Is Invalid

#### 1.    Actual Potential Competition Is Not a Valid Legal Theory

The Supreme Court in *Marine Bancorporation* warned lower courts that, despite more than one opportunity, it had never endorsed an "actual potential competition" theory.  Aged decisions that preceded this warning can no longer be relied on, as modern appellate courts have likewise refused to endorse the theory the FTC advances here.  *Compare* Mot. at 16-17 *with Kennecott Copper Corp. v. FTC*, 467 F.2d 67 (10th Cir. 1972); *Ekco Prods. Co. v. FTC*, 347 F.2d 745 (7th Cir. 1965); *Phillips*, 367 F. Supp. 1226; *and United States v. Joseph Schlitz Brewing Co.*, 253 F. Supp. 129 (N.D. Cal.), *aff'd mem.*, 385 U.S. 37 (1966).[8]

---

[7] The FTC notes (at 10, 20) that *Phillips* was affirmed by the Supreme Court.  Having issued its decision in *Marine Bancorporation* on June 26, 1974, the Supreme Court's summary affirmance (without merits briefing, argument, or opinion) 12 days later cannot be understood to limit the Court's holding in *Marine Bancorporation*.  *See* Stephen M. Shapiro et al., *Supreme Court Practice* § 5.17, at 366 (10th ed. 2013) (precedential effect of summary affirmance is "limited").

[8] The facts also distinguish these pre-*Marine Bancorporation* cases.  *See Phillips*, 367 F. Supp. at 1230 (acquirer was one of the eight largest oil companies in the country but had not yet

---

REPLY IN SUPPORT OF DEFENDANTS' MOTION          Case No. 5:22-cv-04325-EJD

The sole supposed post-*Marine Bancorporation* case that the FTC cites in an attempt to support its theory is, on careful examination, no support at all. *Yamaha* involved a concededly mature, oligopolistic market (this element was not challenged) with eight competitors shrinking down to five in the years preceding the case. It did not involve the acquisition of a target company producing a new product that the acquirer did not itself produce. Rather, *Yamaha* involved an *agreement* that Yamaha would not sell Yamaha-branded outboard motors in the United States. Yamaha had already twice attempted U.S. entry and would have *actually* returned but for the joint venture. Yamaha was therefore an actual and not a potential competitor (as was Brunswick, the other party to the venture). *See Marine Bancorporation*, 418 U.S. at 623 n.24 (company that competed in other geographic markets and with "tentative supply contract" in relevant market was an actual, not potential, competitor); *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 78 (D.D.C. 2017) (similar). The "situation [wa]s very different" and "considerably more definite" than where the purported entrant "had never produced or sold" the relevant product. *Yamaha*, 657 F.2d at 980 n.12 (distinguishing *BOC Int'l Ltd. v. FTC*, 557 F.2d 24, 28-29 (2d Cir. 1977)).

The FTC gamely suggests (at 20) that *Yamaha* is apposite, because Yamaha had not yet sold "high-horsepower" outboard motors, such that the case involved, at least in part, new product entry. But that is wrong, too. Yamaha's high-horsepower model "was marketed in Japan in 1973 and 1974," and it already had actual "plans to market" another high-horsepower model in the United States. *Yamaha*, 657 F.2d at 978; *see id.* at 979 ("The 55-h.p. motor . . . was actually being marketed in Japan in 1973."). *Yamaha*, if relevant authority at all given the Supreme Court's expressed skepticism of "actual potential competition," is no help to the FTC here.

## 2.  The FTC's Actual Potential Competition Claim Is Fatally Speculative

If actual potential competition can ever be a basis for Section 7 liability, it must necessarily be cabined to cases in which there is "clear proof" that the acquiring firm actually was going to enter the target market. *See In re B.A.T. Indus., Ltd.*, 1984 WL 565384, at *10 (FTC Dec. 17, 1984)

---

entered California market); *Schlitz Brewing*, 253 F. Supp. at 138 (the acquirer was an established beer producer that had not yet entered the target geographic market).

("Our review of the legal and economic bases for the actual potential competition doctrine has persuaded us that clear proof that independent entry would have occurred but for the merger or acquisition should be required to establish that a firm is an actual potential competitor."); *see also Twombly*, 550 U.S. at 569 (holding speculation about potential entry insufficient to maintain Section 1 claim and noting that firms "do not expand without limit and none of them enters every market that an outside observer might regard as profitable").  Considering the speculative endeavor of predicting future competition, and the fact that the "likelihood of injury will fall substantially if independent entry is only reasonably probable," the FTC thus admitted that it could bring these claims only in cases where there was "clear proof," based on its assessment of what the law required.  *B.A.T. Indus.*, 1984 WL 565384, at *10.  Given the widespread judicial criticism of the entire theory as inherently speculative, *see* Mot. at 16-17, the FTC understandably sought to save this weapon for its arsenal by acknowledging the need for clear proof.

The FTC does not even attempt to argue that it has pleaded facts that make a plausible claim under this "clear proof" standard.  In an apparent attempt to disclaim its own precedent, *see* Opp. at 15 n.6, the FTC contends instead (at 11-12) that it need only plead facts establishing a "reasonable probability" that Meta would enter – a standard the FTC considered and rejected in *B.A.T. Industries*.  But courts of appeals have repeatedly rejected that lesser standard.  *See Republic of Texas Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F.2d 1026, 1047 (5th Cir. Unit A June 1981) (citing *Mercantile Texas Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 638 F.2d 1255, 1268 (5th Cir. Unit A Feb. 1981)); *United States v. Siemens Corp.*, 621 F.2d 499, 506-07 (2d Cir. 1980); *Atlantic Richfield*, 549 F.2d at 294-95; *see also B.A.T. Indus.*, 1984 WL 565384, at *9 n.34 ("After initially adopting the 'reasonable probability' standard, the Second Circuit . . . recognized its problems and endorsed the 'clear proof' standard instead.").

Ignoring this precedent, the FTC argues (at 14-15) that, even if it can prevail at trial only with "clear proof" of entry, it nonetheless pleads a valid claim by alleging facts to show far less:  a "reasonable probability" of entry.  Unsurprisingly, it has no authority for this farfetched proposition, and it is evident that facts reaching the level of "reasonably probable" do not and cannot establish a plausible claim of "clear proof."

REPLY IN SUPPORT OF DEFENDANTS' MOTION          Case No. 5:22-cv-04325-EJD

Ultimately, the FTC's alleged facts do not make a plausible case under either standard.  The FTC points (at 12-13) to allegations that Meta possesses certain advantages (capital, existing studios, access to its own platform) that could make it a possible entrant.  Those and other speculative allegations that Meta "could" have entered – an oft-repeated phrase in the Amended Complaint (at ¶¶ 5, 10, 57, 59, 62, 68, 77, 86) – fall short of a plausible showing that Meta would actually enter.  *See B.A.T. Indus.*, 1984 WL 565384, at *13 (requiring "concrete internal plans for independent entry"); *Tenneco, Inc. v. FTC*, 689 F.2d 346, 353-54 (2d Cir. 1982) ("interest," "incentive," and "financial resources" to enter only amounted to "unsupported speculation"); *Siemens*, 621 F.2d at 507 ("interest and incentive to enter" was "inadequate to demonstrate the likelihood, much less the certainty," of entry).

The Amended Complaint therefore fails to state a claim in light of the Supreme Court's warning that any actual potential competition claim (if there ever can be one) requires as an element "proof" that "an acquiring firm actually would have entered de novo" but for the acquisition. *Marine Bancorporation*, 418 U.S. at 624.  The FTC's "woulda, coulda, shoulda" does not come close to the necessary facts.

Nor does the FTC allege that Meta's but-for entry would be "imminent."  *Id.* at 623 n.22. The FTC asserts (at 16) that it need not allege the timing of Meta's entry, asking the Court once again to defy contrary instruction in *Marine Bancorporation*.  As the Second Circuit reasoned, an actual potential competition claim without a showing of alternative entry at "some reasonable temporal estimate related to the near future" is "wholly speculative" and "based largely on 'ephemeral possibilities' " of what could happen at some unknown date.  *BOC Int'l*, 557 F.2d at 28-29 (quoting *Marine Bancorporation*, 418 U.S. at 622-23).  So too here.  This is yet another reason why the FTC's transparent efforts to recast Section 7 as a "no merger" tool to be used against any disfavored acquirer should be rejected here.  Its claims have neither legal nor factual support.

## CONCLUSION

Because the FTC has provided no basis to conclude that it could solve the defects in its complaint through another amendment, the Amended Complaint should be dismissed with prejudice.

DATED:  October 31, 2022                    Respectfully submitted,

                                            By: /s/ *Mark C. Hansen*

Christopher J. Cox (Bar No. 151650)         Mark C. Hansen (*pro hac vice*)
HOGAN LOVELLS US LLP                         Aaron M. Panner (*pro hac vice*)
855 Main Street, Suite 200                   Julius P. Taranto (*pro hac vice*)
Redwood City, CA 94063                       Alex A. Parkinson (*pro hac vice*)
Telephone:  (650) 463-4000                   Ana N. Paul (*pro hac vice*)
Facsimile:  (650) 463-4199                   L. Vivian Dong (*pro hac vice*)
chris.cox@hoganlovells.com                   KELLOGG, HANSEN, TODD, FIGEL &
                                                FREDERICK, P.L.L.C.
Lauren Battaglia (*pro hac vice*)            1615 M Street, NW, Suite 400
Logan M. Breed (*pro hac vice*)              Washington, DC 20036
Benjamin Holt (*pro hac vice*)               Telephone:  (202) 326-7900
Charles A. Loughlin (*pro hac vice*)         Facsimile:  (202) 326-7999
HOGAN LOVELLS US LLP                          mhansen@kellogghansen.com
Columbia Square                              apanner@kellogghansen.com
555 Thirteenth Street, NW                    jtaranto@kellogghansen.com
Washington, DC 20004                         aparkinson@kellogghansen.com
Telephone:  (202) 637-5600                   apaul@kellogghansen.com
Facsimile:  (202) 637-5910                   vdong@kellogghansen.com
lauren.battaglia@hoganlovells.com
logan.breed@hoganlovells.com                 Bambo Obaro (Bar No. 267683)
benjamin.holt@hoganlovells.com               WEIL, GOTSHAL & MANGES LLP
chuck.loughlin@hoganlovells.com              201 Redwood Shores Parkway, 6th Floor
                                            Redwood Shores, CA 94065-1134
*Counsel for Defendant Within Unlimited,*   Telephone:  (650) 802-3000
*Inc.*                                       Facsimile:  (650) 802-3100
                                            bambo.obaro@weil.com

                                            Michael Moiseyev (*pro hac vice*)
                                            Chantale Fiebig (*pro hac vice*)
                                            WEIL, GOTSHAL & MANGES LLP
                                            2001 M Street, NW, Suite 600
                                            Washington, DC 20036
                                            Telephone:  (202) 682-7000
                                            Facsimile:  (202) 857-0940
                                            michael.moiseyev@weil.com
                                            chantale.fiebig@weil.com

                                            Diane P. Sullivan (*pro hac vice*)
                                            WEIL, GOTSHAL & MANGES LLP
                                            17 Hulfish Street, Suite 201
                                            Princeton, NJ 08542
                                            Telephone:  (609) 986-1100
                                            Facsimile:  (609) 986-1199
                                            diane.sullivan@weil.com

REPLY IN SUPPORT OF DEFENDANTS' MOTION                    Case No. 5:22-cv-04325-EJD

Eric S. Hochstadt (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
eric.hochstadt@weil.com

*Counsel for Defendant Meta Platforms,*
*Inc.*

REPLY IN SUPPORT OF DEFENDANTS' MOTION          Case No. 5:22-cv-04325-EJD