1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

| | |
|---|---|
| 8 FEDERAL TRADE COMMISSION, | Case No.   5:22-cv-04325-EJD |
| 9 Plaintiff, | **ORDER GRANTING IN PART MOTION TO STRIKE** |
| 10 v. | |
| 11 META PLATFORMS INC., et al., | Re: Dkt. No. 89 |
| 12 Defendants. | |

13          Plaintiff Federal Trade Commission's (the "FTC") moves to strike certain affirmative

14    defenses asserted by Defendants Meta Platforms, Inc. ("Meta") and Within Unlimited, Inc.

15    ("Within," collectively with Meta, "Defendants").  Dkt. No. 89 ("Mot.").  Having considered the

16    parties' briefing and heard oral arguments, the Court GRANTS IN PART the FTC's Motion.

17    **I.      BACKGROUND AND PROCEDURAL HISTORY**

18          On July 27, 2022, the FTC brought this action to enjoin Defendant Meta—one of the

19    largest technology companies in the world and provider of virtual reality ("VR") devices and

20    applications—from consummating its proposed acquisition ("Acquisition") of Defendant Within,

21    a software company that develops VR applications and most relevantly the VR fitness application,

22    "Supernatural."  Dkt. No. 1 ¶ 1.  The FTC sought preliminary injunctive relief pursuant to Section

23    13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), alleging that the

24    Acquisition poses a reasonable probability of lessening competition in violation of Section 7 of the

25    Clayton Act.  *Id.* ¶ 13-14.

26          Both Defendants filed answers to the FTC's Complaint on August 26, 2022, with Meta

27    asserting twenty-two affirmative defenses (Dkt. No. 84) and Within asserting twenty affirmative

1  defenses (Dkt. No. 83).  On September 9, 2022, the FTC filed the instant motion to strike six of

2  Meta's affirmative defenses and three of Within's defenses.  Mot. 2-3.

3       After the Motion was fully briefed, the parties stipulated to the FTC's amendment of its

4  complaint, which removed certain allegations and theories asserted in the initial Complaint.  Dkt.

5  No. 101, 101-1 ("FAC").  The parties further stipulated that Defendants' answers and affirmative

6  defenses shall remain responsive to the FTC's Amended Complaint, Dkt. No. 101, and represented

7  to the Court that the FTC's amendments do not affect the issues raised in the pending Motion.

8  Hr'g Tr. 6:11-19, 7:21-23, Oct. 17, 2022.

9  **II.      LEGAL STANDARD**

10      Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

11 insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

12 Civ. P. 12(f).  The purpose of a motion to strike under Rule 12(f) "is to avoid the expenditure of

13 time and money that must arise from litigating spurious issues."  *SidneyVinstein v. A.H. Robins*

14 *Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

15      "A defense may be insufficient as a matter of pleading or a matter of law."  *G & G Closed*

16 *Cir. Events, LLC v. Nguyen*, 2010 WL 3749284, at *1 (N.D. Cal. Sept. 23, 2010).  "The key to

17 determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair

18 notice of the defense."  *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979).  In this

19 district, defendants provide "fair notice" of an affirmative defense by meeting the *Twombly/Iqbal*

20 pleading standard.  *See, e.g.*, *Goobich v. Excelligence Learning Corp.*, 2020 WL 1503685, at *2

21 (N.D. Cal. Mar. 30, 2020) (collecting cases).  Accordingly, although an affirmative defense "need

22 not include extensive factual allegations . . . it must nonetheless include enough supporting

23 information to be plausible; bare statements reciting legal conclusions will not suffice."  *MIC*

24 *Prop. & Cas. Corp. v. Kennolyn Camps, Inc.*, 2015 WL 4624119, at *2 (N.D. Cal. Aug. 3, 2015).

25      In addition to insufficiently pled defenses, Rule 12(f) permits courts to strike matters that

26 are immaterial or impertinent.  Fed. R. Civ. P. 12(f).  An immaterial matter is "that which has no

27 essential or important relationship to the claim for relief or the defenses being pleaded," and an

28 Case No.: 5:22-cv-04325-EJD
ORDER GRANTING IN PART MOTION TO STRIKE

2

United States District Court
Northern District of California

United States District Court
Northern District of California

1   impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues

2   in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

3   *grounds*, 510 U.S. 517 (1994) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice*

4   *and Procedure* § 1382, at 706–07 (1990)).

5       "In the absence of prejudice to the opposing party, leave to amend [a stricken affirmative

6   defense] should be freely given." *Wyshak*, 607 F.2d at 826.

7   **III.    DISCUSSION**

8       In their briefs, the parties have generally addressed the challenged affirmative defenses in

9   four categories, as follows: (1) bias defenses; (2) constitutional defenses; (3) selective enforcement

10  defense; and (4) equitable defenses.[1]

11      **A.    Bias Defenses**

12      Meta asserts two affirmative defenses arising from Chair Khan's alleged bias.  Meta's

13  Eighteenth Affirmative Defense states that the "FTC is not entitled to relief because the Chair of

14  the FTC is disqualified," and that she has made "numerous public statements that demonstrate her

15  bias against Meta, and in particular its acquisitions, demonstrating her lack of impartiality with

16  respect to Meta's proposed acquisition."  Meta Answer 16-17, Dkt. No. 84.  Meta's Nineteenth

17  Affirmative Defense asserts that the "FTC cannot proceed because it cannot demonstrate

18  likelihood of success on the merits or that the balance of equities favor an injunction, as Chair

19  Khan is disqualified."  Meta Answer 17.

20      The FTC moves to strike these bias-related defenses on two related grounds: first, the

21  Court does not have subject matter jurisdiction to consider Defendants' challenges to the FTC's

22  administrative proceeding; and second, as a result, the issue of Chair Khan's bias is not relevant to

23  this Court's consideration of a Section 13(b) request.  Mot. 10-15.  Defendants respond that (1) the

24  Court's subject matter jurisdiction is provided by Section 13(b) of the FTC Act under which the

25  _____

26  [1] Within's Seventeenth Affirmative Defense is identical to Meta's Seventeenth Affirmative
    Defense; Within's Eighteenth Affirmative Defense is analogous to Meta's Twentieth Affirmative
27  Defense; and Within's Nineteenth Affirmative Defense is identical to Meta's Twenty-First
    Affirmative Defense.  *See* Meta Answer, Dkt. No. 84; Within Answer, Dkt. No. 83.

28  Case No.: 5:22-cv-04325-EJD
    ORDER GRANTING IN PART MOTION TO STRIKE
                              3

1   FTC has brought the present action, and (2) Chair Khan's bias is relevant because "ultimate
2   success" under Section 13(b) contemplates appellate success before a Court of Appeals where
3   Defendants can raise bias and other due process defenses to the FTC's proceedings.  Opp. 11-15.

4          As an initial matter, the Court notes—and the FTC does not appear to dispute—that Meta's
5   Eighteenth and Nineteenth Affirmative Defenses satisfy the requisite pleading standards.  *See,*
6   *e.g.*, *MIC*, 2015 WL 4624119, at *2 ("[A] defense need not include extensive factual allegations
7   [but] must nonetheless include enough supporting information to be plausible.").  Both defenses
8   go beyond mere recitation of legal doctrines and contain factual allegations substantiating
9   Defendants' assertion that Chair Khan is biased and should be disqualified as a Commissioner.
10  Accordingly, the Court finds that these affirmative defenses have provided the FTC with fair
11  notice of the defenses and the factual bases underlying them.

12                    **1.     Subject Matter Jurisdiction**

13         The FTC first asserts that district courts do not have subject matter jurisdiction to consider
14  a party's challenges to the FTC's structure or the underlying administrative proceedings, including
15  those based on the alleged bias of Chair Khan.  Mot. 10-11.  Such challenges, it argues, should be
16  heard by a Court of Appeals, not a district court, following an appeal from the final FTC order in
17  the administrative proceedings.  Mot. 11-12; 15 U.S.C. § 45(c).

18         To support this position, the FTC relies primarily on the recent Ninth Circuit opinion in
19  *Axon Enterprise, Inc. v. F.T.C.*, 986 F.3d 1173 (9th Cir. 2021), *cert. granted in part*, 142 S. Ct.
20  895 (2022).  There, the FTC initiated an administrative complaint against Axon's acquisition of a
21  competitor, and Axon filed suit in federal court seeking relief from the FTC's allegedly
22  unconstitutional administrative proceedings.  *Id.* at 1177.  The Ninth Circuit affirmed the district
23  court's dismissal of Axon's complaint for lack of subject matter jurisdiction, holding that the FTC
24  Act impliedly barred jurisdiction in district court and required Axon to first proceed through the
25  agency process.  *Id.*  In so holding, the Ninth Circuit applied the *Thunder Basin* factors established
26  by the Supreme Court to determine whether district court jurisdiction was impliedly precluded.
27  *Id.* at 1180-88; Mot. 11-15.  The FTC argues that this Court similarly does not have subject matter

28  Case No.: 5:22-cv-04325-EJD
    ORDER GRANTING IN PART MOTION TO STRIKE

1    jurisdiction to consider Defendants' affirmative defenses raising the same type of claims that *Axon*

2    would have precluded. Mot. 14 (citing *Jarkesy v. S.E.C.*, 803 F.3d 9 (D.C. Cir. 2015) (affirming

3    dismissal under the *Thunder Basin* factors where plaintiffs alleged the SEC was biased and had

4    prejudged their charges in the underlying agency proceedings)).

5             Although *Axon* is helpful in clarifying the Court's jurisdiction to hear claims brought by

6    parties *against* an FTC administrative proceeding, the Court agrees with Defendants that *Axon*

7    does not bear upon subject matter jurisdiction in the present case.  Neither party dispute this

8    Court's subject matter jurisdiction over the FTC's claim.  *See* FAC ¶¶ 16-17 (citing 28 U.S.C. §

9    1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising

10   under any Act of Congress regulating commerce or protecting trade and commerce against

11   restraints and monopolies.")).  Defendants also have not asserted any counterclaims seeking relief

12   over which the Court may need to exercise jurisdiction, nor does the FTC argue that Meta's

13   Eighteenth and Nineteenth Affirmative Defenses should be designated as counterclaims.  *See* Fed.

14   R. Civ. P. 8(c)(2).  Furthermore, unlike *Axon* where the precluded issues were raised offensively

15   by a plaintiff to block underlying administrative proceedings, here, the purportedly precluded

16   issues are raised defensively *in response to* a complaint filed by the FTC.  Although the FTC

17   counters that these are formalistic distinctions without a difference, it also acknowledged in oral

18   arguments that no court has relied on the *Thunder Basin* analysis to strike an affirmative defense

19   for lack of subject matter jurisdiction, which the FTC urges the Court to do so here.  Hr'g Tr.

20   17:11-20, Oct. 21, 2022, Dkt. No. 172.

21            Accordingly, the Court is satisfied that its subject matter jurisdiction is secure over the

22   FTC's claim for Section 13(b) preliminary injunctive relief, as well as the affirmative defenses

23   raised by Defendants in their answers.

24                         **2.      Pertinence to Section 13(b) Preliminary Injunction**

25            In its Motion, the FTC also argues that Defendants cannot insert their bias arguments—

26   arguments that Defendants would otherwise be barred from bringing as a complaint per *Axon* and

27   *Jarkesy*—by recasting them as defenses rebutting the FTC's required showing for Section 13(b)

28   Case No.: 5:22-cv-04325-EJD
     ORDER GRANTING IN PART MOTION TO STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  relief.  Mot. 12-13.  Defendants respond that they may assert Chair Khan's alleged bias as a

2  defense because, regardless of whether district courts can properly hear such arguments, a Court of

3  Appeals may hear those arguments in an appeal from an FTC final order.  15 U.S.C. § 45(c).  And

4  "ultimate success" under Section 13(b), Defendants argue, contemplates appellate success before a

5  Court of Appeals.  Opp. 11-13.  The FTC notes in reply that "ultimate success" only refers to

6  success before the Federal Trade Commission on antitrust merits.  Reply 5.

7        As discussed *supra* at Section II, Rule 12(f) permits the Court to strike any impertinent

8  matters, *i.e.*, matters that "consist[] of statements that do not pertain, and are not necessary, to the

9  issues in question."  *Fantasy*, 984 F.2d at 1527; Fed. R. Civ. P. 12(f).  Courts in the Ninth Circuit

10  have stricken defenses that raise irrelevant issues to the action, as "[s]triking these defenses

11  advances the essential function of Rule 12(f) by avoiding the expenditure of time and money in

12  litigating [] spurious issue[s]."[2]  *F.T.C. v. Lights of Am. Inc.*, 2011 WL 13308569, at *5 (C.D. Cal.

13  Apr. 29, 2011); *see also F.T.C. v. Loss Mitigation Servs.*, 2010 WL 11519447, at *2 (C.D. Cal.

14  Feb. 17, 2010) ("Courts may strike affirmative defenses as insufficient when they are inapplicable

15  to the claims asserted.").  Accordingly, the Court must assess whether Defendants' bias-related

16  affirmative defenses are pertinent to the FTC's Section 13(b) request for a preliminary injunction.

17            a.    "Ultimate Success"

18        The Court first addresses whether Section 13(b) requires evaluation of the FTC's success

19  in its own administrative forum or before a Court of Appeals.  Mot. 12-13; Opp. 11-12.  Section

20  13(b) provides, in relevant part, "Upon a proper showing that, weighing the equities and

21  considering the Commission's likelihood of ultimate success, such action would be in the public

22  interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction

23  may be granted without bond."  15 U.S.C § 53(b)(2).  The Ninth Circuit has interpreted this

24  statutory directive as a two-part inquiry: the Court must "1) determine the likelihood that the

25

26  [2] At least one court has also stricken affirmative defenses asserted against the FTC where such
defenses would "threaten to shift litigation attention and discovery towards the FTC's actions,
27  rather than Defendants' actions."  *F.T.C. v. Am. Tax Relief, LLC*, 2011 WL 13135578, at *1 (C.D.
Cal. Oct. 19, 2011).

28  Case No.: 5:22-cv-04325-EJD
ORDER GRANTING IN PART MOTION TO STRIKE
6

1   Commission will ultimately succeed on the merits and 2) balance the equities." *F.T.C. v. Warner*

2   *Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984) (emphasis added) (citing *F.T.C. v. Simeon*

3   *Mgmt. Corp.*, 532 F.2d 708, 713–14 (9th Cir. 1976)).

4          Although neither party has alerted the Court to any authority directly addressing in which

5   forum "ultimate success" should be measured, the overall weight of case law applying Section

6   13(b) supports the FTC's interpretation, *i.e.*, that courts predict likelihood of success on the merits

7   at the FTC's administrative proceedings.  For example, in *F.T.C. v. Simeon Mgmt. Corp.*, Judge

8   Orrick denied the FTC's request for preliminary injunction by finding that it did "not have a

9   strong likelihood of establishing [the requisite showing] *at the administrative proceedings on their*

10  *complaint before the Commission . . . .*"  391 F. Supp. 697, 704 (N.D. Cal. 1975) (emphasis

11  added).  On appeal, the Ninth Circuit held that Judge Orrick had applied the correct standard,

12  which it characterized as a "determination on the likelihood that the FTC will succeed on the

13  merits in *proceedings for a final cease-and-desist order*."  532 F.2d at 713–14.

14         Other federal courts have similarly focused their Section 13(b)'s predictive inquiry on the

15  underlying agency proceedings rather than on a hypothetical appeal from a yet-to-be-developed

16  administrative record.  *See F.T.C. v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001) ("To

17  determine likelihood of success on the merits we measure the probability that, *after an*

18  *administrative hearing on the merits*, the Commission will succeed in proving . . .") (emphasis

19  added); *F.T.C. v. Staples, Inc.*, 239 F. Supp. 3d 1, 5 (D.D.C. 2017) ("Under Section 13(b), the

20  Court's task is to assess the likelihood of whether or not the government can prevail *at a*

21  *subsequent administrative hearing before the Federal Trade Commission*, not whether the

22  proposed merger would violate the Clayton Act.") (emphasis added); *F.T.C. v. Swedish Match*,

23  131 F. Supp. 2d 151, 155 (D.D.C. 2000) ("[T]he Commission must demonstrate the likelihood that

24  it will succeed in proving, *after a full administrative trial on the merits*, that the effect of [the]

25  acquisition [] may be substantially to lessen competition.") (emphasis added).

26         Defendants primarily rely on two excerpts from *Simeon* and *Warner* to support their

27  interpretation of "ultimate success."  Opp. 11-12.  Neither case, however, extend as far as

28  Case No.: 5:22-cv-04325-EJD
ORDER GRANTING IN PART MOTION TO STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Defendants want them to.  In *Simeon*, the Ninth Circuit did remark that a "favorable initial

2  decision does not necessarily assure the FTC of ultimate success," but there was otherwise no

3  reference or indication that "ultimate success" should be based on what a Court of Appeals may

4  consider.  532 F.2d at 715.  To the contrary, *Simeon* instructed courts considering a Section 13(b)

5  request to focus on the FTC's proceedings and expressly declined to comment on the case's future

6  disposition following the FTC's final decision.  *Id.* at 715-16 ("In predicting whether such success

7  is likely, it is necessary to determine whether the *FTC's* initial decision applied the proper legal

8  standard.") (emphasis added); *id.* at 717 ("We intimate no view in this opinion as to the

9  appropriate disposition in that case [after the Commission has reached a final decision].").

10  Defendants also refer to *Warner*'s quotation of the commonly iterated Section 13(b)

11  standard, that the FTC meets its burden if it "raise[s] questions going to the merits so serious,

12  substantial, difficult and doubtful as to make them fair ground for thorough investigation, study,

13  deliberation and determination by the FTC in the first instance and ultimately by the Court of

14  Appeals."  742 F.2d at 1162 (emphasis added) (quoting *F.T.C. v. Nat'l Tea Co.*, 603 F.2d 694, 698

15  (8th Cir. 1979)).  Despite the brief reference to the Court of Appeals at the close of this standard,

16  the quote's primary focus is on the Court's evaluation *of the merits* and makes no suggestion that

17  the Court should also include non-merits issues that may only be raised on appeal.  Indeed, the

18  opinion from which this quote originated had emphasized that the scope of the Section 13(b)

19  inquiry is necessarily limited and narrow.  *See F.T.C. v. Lancaster Colony Corp.*, 434 F. Supp.

20  1088, 1091 (S.D.N.Y. 1977) ("As a practical matter, a district court can hardly do more at so early

21  a stage of antitrust litigation than to make a considered estimate of the FTC's apparent chances of

22  success based upon what must necessarily be an imperfect, incomplete and fragile factual basis.").

23  Finally, Defendants argue that, if success is measured by the FTC's success in its

24  administrative proceedings, then any "likelihood of success" inquiry would be perfunctory

25  because the FTC has not lost a case in its home forum for the past quarter-century.  Opp. 12.  This

26  argument mischaracterizes the Court's role in a Section 13(b) request.  District courts do not

27  determine "likelihood of success" by a statistical calculation of the parties' odds, but instead are

28

charged with exercising their "independent judgment" and evaluating the FTC's case and evidence on the merits. *Lancaster*, 434 F. Supp. at 1090. And, notwithstanding the FTC's success rate, this obligation has resulted in district courts occasionally reaching differing conclusions from those in the underlying FTC proceedings. *See Simeon*, 532 F.2d at 715-16 (noting that district court had denied Section 13(b) application as unlikely to succeed on the merits, but the FTC subsequently reached a contrary conclusion).

In summary, the Court considers Section 13(b)'s "likelihood of ultimate success" inquiry to mean the likelihood of the FTC's success on the merits in the underlying administrative proceedings, as opposed to success following a Commission hearing, the development of an administrative record, and appeal before an unspecified Court of Appeals.

b.      "Success on the Merits" and "Balancing of Equities"

Having determined where its predictive inquiry should be focused, the Court evaluates whether Chair Khan's alleged bias is pertinent to the FTC's success on the merits or the balancing of equities. *See Warner*, 742 F.2d at 1160. The Court finds that neither prong of the Section 13(b) inquiry would permit consideration of the FTC's alleged bias.

With respect to the first prong, the Court interprets "on the merits" here to mean the action's Section 7 antitrust merits, as distinguishable from any procedural due process issues arising from the FTC's proceedings. First, the oft-cited standard for "likelihood of ultimate success" describes merits questions as those that would require "thorough investigation, study, deliberation and determination by the FTC," a characterization that is consistent with a "preliminary assessment of [a] merger's impact on competition." *Warner*, 742 F.2d at 1162; *see also H.J. Heinz Co.*, 246 F.3d at 714 ("To determine likelihood of success on the merits we measure the probability that, after an administrative hearing on the merits, the Commission will succeed in proving that the effect of the [] merger 'may be substantially to lessen competition, or to tend to create a monopoly.'"). Put differently, "thorough investigation, study, deliberation and determination by the FTC" would be an odd description for issues that can only arise out of the FTC's own proceedings, such as those relating to the FTC's authority, bias, or due process

Case No.: 5:22-cv-04325-EJD
ORDER GRANTING IN PART MOTION TO STRIKE
9

violations.  Second, Defendants have not identified any case where a district court—in evaluating the likelihood of FTC success for a Section 13(b) injunction request—considered evidence of the FTC's alleged bias or administrative due process violations.  *See* Hr'g Tr. 28:9-17, Oct. 21, 2022.  To the contrary, the Ninth Circuit in *Warner*, when confronted with facts that could have suggested bad faith from the FTC, did *not* address or consider those facts in its "success on the merits" discussion and instead affirmed that its task was to "make only a preliminary assessment of the merger's impact on competition."[3]  *Warner*, 742 F.2d at 1162.  Given that courts have typically reserved their "on the merits" discussions to substantive antitrust questions and none have considered issues of agency bias on a Section 13(b) action, the Court finds that Chair Khan's bias is not pertinent to its assessment of the FTC's success on the merits.

Nor is Chair Khan's bias pertinent to the Court's balancing of equities under Section 13(b).  Although Defendants' allegations of agency bias or due process violations appear to be relevant equitable considerations at first glance, courts applying Section 13(b) consider a narrower set of equities.  Public equities, which include "economic effects and pro-competitive advantages for consumers and effective relief for the commission," are accorded greater weight than private equities.  *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *see also Lancaster*, 434 F. Supp. at 1096 ("The equities to be weighed here are not the usual equities of private litigation but public equities.").  By contrast, "private equities alone do not outweigh the Commission's showing of likelihood of success." *Warner*, 742 F.2d at 1165.  Moreover, the private equities considered on a Section 13(b) request are not typically those arising out of the FTC's administrative proceedings themselves, but rather the private consequences resulting from the requested injunction.  *Id.* (considering private equities of forcing the defendants to abandon the joint venture, the companies' inability to operate effectively due to uncertainties over the proposed

---

[3] Notably, the referenced evidence in *Warner* were internal FTC memoranda recommending that the Commission *not* challenge the merger in question, which resembles one of Defendants' arguments here.  *See* Meta Answer 1 ("Ignoring the FTC staff who conducted a review of this transaction and determined that no enforcement action was warranted, Chair Khan engineered a 3-2 Commission vote to overrule the staff.").

Case No.: 5:22-cv-04325-EJD
ORDER GRANTING IN PART MOTION TO STRIKE
10

1      transaction, and allowing shareholders to reap their benefits from the merger). Accordingly, the

2      Court also finds that Chair Khan's bias would not be pertinent in its balancing of equities.

3              The Court emphasizes that these conclusions are primarily driven by the narrow review

4      accorded to district courts by Section 13(b) to evaluate "likelihood of ultimate success." *See supra*

5      Section III(A)(2)(a); *Warner*, 742 F.2d at 1164 (noting that "the issue in this action for preliminary

6      relief is a narrow one"); *cf. F.T.C. v. Food Town Stores, Inc.*, 539 F.2d 1339, 1342 (4th Cir. 1976)

7      ("The only purpose of a proceeding under § 13 is to preserve the status quo until FTC can perform

8      its function."). In other words, the Court is not turning a blind eye to Meta's defenses but rather

9      focusing its sights on the direction set by statute. The Court makes no opinion as to Defendants'

10     likelihood of success on its objections to the FTC's agency process, which they may raise on

11     appeal from an FTC final order or could have conceivably raised as a request for pre-enforcement

12     relief. *See Axon*, 986 F.3d at 1182-83 (quoting *Tilton v. S.E.C.*, 824 F.3d 276, 286 (2d Cir. 2016)

13     (noting pre-enforcement review may be available where "proceeding itself posed a risk of some

14     additional and irremediable harm beyond the burdens associated with the dispute resolution

15     process"). Within the limited Section 13(b) framework, however, Meta's bias-related defenses

16     "do not pertain, and are not necessary, to the issues in question." *Fantasy*, 984 F.2d at 1527.

17             Accordingly, the Court finds that Chair Khan's bias is not pertinent to its consideration of

18     the FTC's success on the merits or the balancing of equities. Because these issues with Meta's

19     bias-related defenses are legal and foundational in nature, amendment would be futile. *See F.T.C.*

20     *v. OMICS Grp. Inc.*, 2017 WL 6806802, at *4 (D. Nev. Dec. 15, 2017), report and

21     recommendation adopted, 2018 WL 297581 (D. Nev. Jan. 3, 2018). The Court also finds that the

22     FTC would likely be prejudiced by permitting Defendants' bias-related defenses to stand, as they

23     would "threaten to shift litigation attention and discovery towards the FTC's actions, rather than

24     Defendants' actions." *F.T.C. v. Am. Tax Relief, LLC*, 2011 WL 13135578, at *1 (finding

25     prejudice where "[a]ll of the true affirmative defenses that Defendants have raised open up entirely

26     new areas to discovery").

27             The Court therefore GRANTS the FTC's Motion and STRIKES Meta's Eighteenth and

28     Case No.: 5:22-cv-04325-EJD
       ORDER GRANTING IN PART MOTION TO STRIKE
                                                    11

United States District Court
Northern District of California

Nineteenth Affirmative Defense WITHOUT LEAVE TO AMEND.

**B.      Constitutional Defenses**

Both Defendants also assert identical constitutional defenses, alleging that the FTC's exercise of executive authority violates Article II of the United States Constitution and that the present proceedings against Defendants are barred by the Due Process Clause.  Meta Answer 14-15; Within Answer 12-13, Dkt. No. 13; *see also supra* n.1.

The Court's assessment of these constitutional affirmative defenses overlaps significantly with its analysis of Defendants' bias-related defenses, particularly regarding the Court's ability to consider these arguments in the limited procedural posture of a Section 13(b) preliminary injunction request.  *See supra* Section III(A)(2).  Accordingly, to the extent Defendants' constitutional defenses are predicated on Chair Khan's alleged bias or procedural deficiencies, these defenses would likewise be stricken without leave to amend.

However, the Court finds that Defendants' constitutional defenses are inadequately pled, as each consists of a single sentence asserting relief arising out of either Article II of the U.S. Constitution or the Due Process Clause.  In the absence of any factual allegations, Defendants' constitutional defenses do not provide fair notice as to the bases for these defenses and, therefore, are insufficient "even under the most liberal of pleading standards."  *MIC Prop. v. Kennolyn Camps, Inc.*, 2015 WL 4624119, at *5.  For the same reasons, the Court also cannot ascertain that further factual amendments would be futile.

Accordingly, the Court GRANTS the FTC's Motion as to Meta's Seventeenth and Twenty-First Affirmative Defenses and Within's Seventeenth and Nineteenth Affirmative Defenses. These defenses are STRICKEN WITH LEAVE TO AMEND.

**C.      Selective Enforcement**

Meta's Fourteenth Affirmative Defense states, "The Complaint reflects improper selective enforcement of the antitrust laws."  Meta Answer 16.  The FTC moves to strike this defense for failing to plead any factual basis or, alternatively, failing to meet the heightened pleading standard for a *de facto* "selective prosecution" defense.  Mot. 5-8.  Meta responds that the Court must

1   accept their allegations as true in the pleading stage.  Opp. 23.

2          The FTC expends multiple paragraphs explaining why Meta's "selective enforcement"

3   defense is in fact a "selective prosecution" defense and subject to higher pleading requirements.

4   Mot. 6-10.  Prosecutorial decisions do enjoy a presumption of regularity and constitutionality that

5   law enforcement decisions do not and, therefore, selective prosecution defenses must contain

6   additional allegations that other similarly situated individuals were *not* prosecuted.  *See United*

7   *States v. Sellers*, 906 F.3d 848, 852-54 (9th Cir. 2018).  However, Meta's Fourteenth Affirmative

8   Defense—regardless of whether it is framed as a "selective enforcement" or "selective

9   prosecution" defense—does not allege *any* underlying factual basis, which would fail the broader

10  *Twombly/Iqbal* plausibility pleading standard.[4]  In an effort to present facts supporting a "selective

11  prosecution" defense, Meta proffers an example of a similar acquisition that the FTC had

12  approved in its opposition brief.  Opp. 23-24.  Although the Court may not consider facts outside

13  of those in Meta's answer, *see J & J Sports Prods., Inc. v. Jimenez*, 2010 WL 5173717, at *2 (S.D.

14  Cal. Dec. 15, 2010), Meta's proffered facts suggest that amendment would not be futile.[5]

15         Accordingly, Meta's Fourteenth Affirmative Defense is inadequately pled.  Therefore, the

16  Court will GRANT the FTC's motion to strike Meta's Fourteenth Affirmative Defense with

17  LEAVE TO AMEND.

18         **D.      Equitable Defenses**

19         Meta's Twentieth Affirmative Defense states, "Because Chair Khan is disqualified, the

20  FTC cannot seek, obtain, or enforce any equitable remedy under the doctrines of unclean hands,

21  estoppel, or other equitable doctrines."  Meta Answer 17.  Within's Eighteenth Affirmative

22  Defense states, "The FTC is equitably estopped from asserting its claims."  Within Answer 13.

23

24  _____

[4] Although it finds Meta's pleading at this time to be deficient under either characterization, the
25  Court will note that the overall thrust of Meta's defense more closely resembles an objection to a
    prosecutor's "selective prosecution," rather than an investigator's "selective enforcement."
26  [5] Nonetheless, the Court echoes the observation made by the Honorable Richard J. Leon that it is
    "difficult to even conceptualize how a selective enforcement claim applies in the antitrust context,
27  where each merger 'must be functionally viewed' in 'the context of its particular industry' and in
    light of a 'variety of factors.'"  *United States v. AT & T Inc.*, 290 F. Supp. 3d 1, 4 (D.D.C. 2018).
28  Case No.: 5:22-cv-04325-EJD
    ORDER GRANTING IN PART MOTION TO STRIKE

United States District Court
Northern District of California

The FTC challenges both Defendants' equitable affirmative defenses for failing to meet the *Twombly/Iqbal* pleading standard, as well as failing to plead additional specific allegations required to assert equitable defenses against the government. Mot. 15-18. Defendants respond that they have adequately pled the required affirmative misconduct by alleging the "knowing participation by a biased and disqualified government official." Opp. 21.

Both Defendants' single-sentence references to equitable doctrines do not provide sufficient notice "even under the most liberal of pleading standards," much less under the additional pleading requirements for asserting equitable defenses against the government. *MIC Prop. & Cas. Corp. v. Kennolyn Camps, Inc.,* 2015 WL 4624119, at *5 (N.D. Cal. Aug. 3, 2015); *see also Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989). Meta's affirmative defense—though it summarily references Chair Khan's disqualification—fails to explain how this single reference would satisfy all or even some of the required elements for unclean hands or estoppel against the government. *See Watkins*, 875 F.2d at 706; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 517 F. Supp. 3d 994, 1000 (N.D. Cal. 2021) (discussing unclean hands defense asserted against the government). Furthermore, Meta's defense is drafted in the disjunctive, leaving the FTC to guess which other equitable defenses Meta may raise, if any.

Accordingly, the Court finds that both Defendants' equitable defenses are inadequately pled. Although the FTC argues that amendment would be futile, Mot. 16-17, the Court does not have enough information to make that determination when Defendants have not yet provided any factual allegations and have not yet confirmed which equitable defenses they are asserting. The Court will GRANT the FTC's motion to strike Meta's Twentieth Affirmative Defense and Within's Eighteenth Defense with LEAVE TO AMEND.

## IV.    CONCLUSION

The FTC's Motion to Strike Defendants' Affirmative Defenses is GRANTED IN PART, as follows:

1.   Meta's Eighteenth and Nineteenth Affirmative Defenses are STRICKEN WITHOUT LEAVE TO AMEND;

Case No.: 5:22-cv-04325-EJD
ORDER GRANTING IN PART MOTION TO STRIKE
14

2.   Meta's Fourteenth, Seventeenth, Twentieth, and Twenty-First Affirmative Defenses are STRICKEN WITH LEAVE TO AMEND within seven (7) days of this Order;

3.   Within's Seventeenth, Eighteenth, and Nineteenth Affirmative Defenses are STRICKEN WITH LEAVE TO AMEND within seven (7) days of this Order.

**IT IS SO ORDERED.**

Dated:  November 2, 2022

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California