# EXHIBIT 1

LETITIA JAMES
Attorney General State of New York
Henry B. Smith
California State Bar No. 313801
Assistant Attorney General
Henry.Smith@ag.ny.gov

Office of the New York Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8627

*Counsel for Amicus Curiae State of New York*
(Additional counsel listed in signature block)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>META PLATFORMS, INC., AND<br>WITHIN UNLIMITED, INC.,<br><br>*Defendants.* | Case No. 5:22-cv-04325-EJD-SVK<br><br>**[PROPOSED] BRIEF FOR THE STATES OF NEW YORK, ALASKA, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, IDAHO, ILLINOIS, MARYLAND, MASSACHUSETTS, MINNESOTA, MISSISSIPPI, MONTANA, NEBRASKA, NEVADA, NEW JERSEY, NEW MEXICO, NORTH CAROLINA, NORTH DAKOTA, OREGON, RHODE ISLAND, UTAH, AND WASHINGTON, THE DISTRICT OF COLUMBIA, AND THE TERRITORY OF GUAM AS AMICI CURIAE IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION AND INTEREST OF AMICI .................................................. 1

ARGUMENT ....................................................................................................... 3

I.   The Amici States' Experience Demonstrates That the Equities and Public Interest
     Favor a Preliminary Injunction of Meta's Acquisition of Within...................................... 3

     A.   A Preliminary Injunction Is Necessary to Preserve the Status Quo While
          the FTC Undertakes a Full Adjudication of Meta's Acquisition of Within. .......... 3

     B.   State Enforcement Efforts Underscore the Dangers That Acquisitions by
          Digital Platforms Like Meta May Pose to Competition and Innovation. ............... 4

     C.   Meta's Acquisition of Within Poses Dangers to Competition and Innovation....... 8

II.  The FTC Is Likely to Prevail on the Merits Because Meta's Acquisition of Within
     Likely Would Substantially Lessen Competition. ......................................................... 10

CONCLUSION................................................................................................... 13

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)...........................................................................................12

*FTC v. Procter & Gamble Co.*,
    386 U.S. 568 (1967)...........................................................................................12

*FTC v. Warner Commc'ns Inc.*,
    742 F.2d 1156 (9th Cir. 1984) ............................................................................3

*In re Google Digital Advert. Antitrust Litig.*,
    Nos. 21-md-3010, 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022).......................2

*Massachusetts v. Microsoft Corp.*,
    373 F.3d 1199 (D.C. Cir. 2004) ..........................................................................1

*New York v. Facebook, Inc.*,
    549 F. Supp. 3d 6 (D.D.C. 2021) ........................................................................4

*United States v. Marine Bancorporation, Inc.*,
    418 U.S. 602 (1974)...................................................................................... 11-12

*United States v. Microsoft*,
    253 F.3d 34 (D.C. Cir. 2001) ..............................................................................1

**Laws**

15 U.S.C.
    § 18.................................................................................................................10
    § 45.................................................................................................................10
    § 53...................................................................................................................3

**Miscellaneous Authorities**

Ben Lang, *FTC Sues to Block Meta's Acquisition of Top VR Fitness App Developer*,
    Road to VR (July 27, 2022), https://www.roadtovr.com/meta-supernatural-within-
    acquisition-price-ftc-scrutiny-report/.................................................................9

C. Scott Hemphill & Tim Wu, *Nascent Competitors*, 168 U. Pa. L. Rev. 1879 (2020),
    https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=9715&context=pen
    n_law_review.....................................................................................................6

Colleen Cunningham et al., *Killer Acquisitions*, 129 J. Pol. Econ. 649 (2021),
    https://www.journals.uchicago.edu/doi/epdf/10.1086/712506.................................6

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

1

**Miscellaneous Authorities**                                                        **Page(s)**

2

3
Comments from Att'ys Gen. in Response to Request for Information on Merger
   Enforcement (Apr. 21, 2022), https://www.naag.org/wp-
   content/uploads/2022/08/Public-Comments-of-23-State-Attorneys-General-.pdf ...................2

4

5
Cristina Caffarra et al., *"How Tech Rolls": Potential Competition and "Reverse"*
   *Killer Acquisitions*, Ctr. for Econ. Pol'y Rsch. (May 11, 2020),
   https://new.cepr.org/voxeu/blogs-and-reviews/how-tech-rolls-potential-
   competition-and-reverse-killer-acquisitions ............................................................6

6

7
Federal Trade Comm'n, *Non-HSR Reported Acquisitions by Select Technology Platforms,*
   *2010-2019: An FTC Study* (Sept. 2021),
   https://www.ftc.gov/system/files/documents/reports/non-hsr-reported-acquisitions-select-
   technology-platforms-2010-2019-ftc-study/p201201technologyplatformstudy2021.pdf .........5

8

9

10
Jon Fingas, *'Beat Saber' Now Has an Official Song Designed to Keep You Fit*, Engadget
   (Apr. 12, 2020), https://www.engadget.com/beat-saber-fitbeat-024917974.html ............... 9-10

11

12
*Meta Platforms, Inc. (META) CEO Mark Zuckerberg on Q2 2022 Results -*
   *Earnings Call Transcript*, Seeking Alpha (July 29, 2022),
   https://seekingalpha.com/article/4527416-meta-platforms-inc-meta-ceo-mark-
   zuckerberg-on-q2-2022-results-earnings-call-transcript ......................................................10

13

14
Nancy Schimelpfening, *I Tried It: 'Supernatural' VR Workout on Oculus Quest*,
   Healthline (Mar. 4, 2021), https://www.healthline.com/health-news/i-tried-it-
   supernatural-vr-workout-on-oculus-quest#Supernatural-vs.-Beat-Saber ...........................10

15

16

17
Press Release, Eur. Comm'n, *Mergers: Commission Fines Facebook €110 Million for*
   *Providing Misleading Information About WhatsApp Takeover* (May 18, 2017),
   https://ec.europa.eu/commission/presscorner/detail/en/IP_17_1369 ..............................7

18

19
Simple Investing, *Meta: The Metaverse Is Becoming a Reality*, Seeking Alpha (Oct. 22, 2022),
   https://seekingalpha.com/article/4548312-meta-metaverse-becoming-reality .....................10

20

21
Stigler Comm. on Digit. Platforms, Final Report (Sept. 2019),
   https://www.chicagobooth.edu/-/media/research/stigler/pdfs/digital-platforms---
   committee-report---stigler-center.pdf ..................................................................5

22

23
Tim Bajarin, *Could Fitness Be the Killer App for the Metaverse? Or Is It Gaming? Or*
   *Both?*, Forbes (Dec. 24, 2021),
   https://www.forbes.com/sites/timbajarin/2021/12/24/could-fitness-be-the-killer-
   app-for-the-metaverse-or-is-it-gaming-or-both/?sh=294291b1146f ...................................9

24

25

26
Tim Wu & Stuart A. Thompson, *The Roots of Big Tech Run Disturbingly Deep*,
   N.Y. Times (June 7, 2019),
   https://www.nytimes.com/interactive/2019/06/07/opinion/google-facebook-
   mergers-acquisitions-antitrust.html ..................................................................7

27

28
Within (VR/AR), *Summary*, Crunchbase,
   https://www.crunchbase.com/organization/vrse/companyfinancials.............................9

iii

**Miscellaneous Authorities**                                            **Page(s)**

*Workout Near, Go Far: Stay Fit with 'Supernatural,' the Daily Fitness Adventure Out
    Now on Oculus Quest*, Meta Quest: Oculus Blog (Apr. 23, 2020),
    https://www.oculus.com/blog/workout-near-go-far-stay-fit-with-supernatural-the-
    daily-fitness-adventure-out-now-on-oculus-quest-/..................................................................10

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

## INTRODUCTION AND INTEREST OF AMICI

The States of New York, Alaska, California, Connecticut, Delaware, Hawaii, Idaho, Illinois, Maryland, Massachusetts, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Oregon, Rhode Island, Utah, and Washington, the District of Columbia, and the Territory of Guam ("Amici States") file this amicus brief in support of the Federal Trade Commission's motion for a preliminary injunction against Meta Platforms' proposed acquisition of Within Unlimited. As co-enforcers of the federal antitrust laws and enforcers of their own state antitrust laws, the Amici States have unique experience and interest in promoting the competition, innovation, and economic dynamism that are key drivers of the Amici States' economies, and in protecting their citizens from anticompetitive harms, including those arising from acquisitions that eliminate potential competition. The Amici States file this brief to protect businesses and consumers in their States from harm that may result if the FTC is denied the opportunity to fully adjudicate the lawfulness of Meta's acquisition of Within before the acquisition takes place.

The Amici States' experience demonstrates that the equities and the public interest favor a preliminary injunction of Meta's acquisition of Within. The proposed acquisition fits neatly into a pattern of recent acquisitions by Meta that have facilitated its rapid rise to dominance of digital spaces, including the virtual reality space at issue in this case, and that have substantially harmed competition, innovation, and consumers. The Amici States' experience also demonstrates that the FTC is likely to prevail on the merits because Meta's acquisition of Within may substantially lessen competition and tend to create a monopoly by eliminating both perceived and actual potential competition.

The Amici States have long been at the forefront of efforts to investigate and address the potential harms to competition raised by digital platforms. More than two decades ago, a bipartisan coalition of States, coordinating with the United States, filed an antitrust complaint against an early dominant tech player, Microsoft, resulting in a landmark decision and a remedial decree requiring Microsoft to take numerous actions to promote competition in the market for personal computer operating systems. *See United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) (en banc); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004).

The Amici States have since continued their leading role in investigating the potential anticompetitive effects of digital platforms' actions and in taking enforcement action when necessary. For example, a bipartisan coalition of States, coordinating with the FTC, are currently litigating an antitrust case arising from defendant Meta's acquisitions and monopolization in the personal social networking market. In that case, the States' and FTC's investigations have revealed that Meta (previously Facebook) engaged in a strategy to cement its monopoly by "buying or burying" nascent and potential competitors, which chilled innovation and deterred investment in social networking alternatives, and freed Meta to weaken user privacy and data protection and to allow misinformation and violent or otherwise objectionable content to proliferate on its platform.[1] States are also litigating antitrust enforcement actions against other digital platforms, like Google, related to harms that these platforms have allegedly caused to competition, innovation, and, ultimately, to consumers.[2] And earlier this year, the Attorneys General of a bipartisan coalition of States submitted public comments to the FTC and the U.S. Department of Justice, urging robust merger enforcement to protect potential competition.[3]

---

[1] *See, e.g.*, Compl. ¶¶ 4-8, *New York v. Facebook, Inc.*, No. 20-cv-3589 (D.D.C. Dec. 21, 2020), ECF No. 53-1 ("*New York* Compl."); *accord* Am. Compl. ¶¶ 11, 66, 105, 127, 129, 217, 233, 240, *FTC v. Meta Platforms, Inc.*, No. 20-cv-3590 (D.D.C. Sept. 8, 2021), ECF No. 82 ("*FTC* Am. Compl.").

[2] *See, e.g.*, *In re Google Digital Advert. Antitrust Litig.*, Nos. 21-md-3010, 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) (largely denying Google's motion to dismiss); Compl., *Colorado v. Google LLC*, No. 20-cv-3715 (D.D.C. Jan. 4, 2021), ECF No. 60; First Am. Compl., *Utah v. Google LLC*, No. 21-cv-5227 (N.D. Cal. Nov. 1, 2021), ECF No. 188.

[3] Comments from Att'ys Gen. in Response to Request for Information on Merger Enforcement (Apr. 21, 2022) (internet). (For sources available on the internet, full URLs appear in the Table of Authorities. All URLs were last visited on November 7, 2022.)

**ARGUMENT**

Section 13(b) of the FTC Act empowers courts to issue interim injunctive relief to preserve the status quo while the FTC decides the legality of an acquisition in an adjudicatory agency proceeding. *See* 15 U.S.C. § 53(b). In evaluating such interim relief, the court does not decide the merits, but rather whether preliminary relief is in the public interest, as determined by the equities and the FTC's likelihood of success on the merits. *See id.* Here, the Amici States' experience demonstrates that the equities strongly favor a preliminary injunction, and that the FTC is likely to prevail on the merits.[4]

**I.    The Amici States' Experience Demonstrates That the Equities and Public Interest Favor a Preliminary Injunction of Meta's Acquisition of Within.**

    **A.    A Preliminary Injunction Is Necessary to Preserve the Status Quo While the FTC Undertakes a Full Adjudication of Meta's Acquisition of Within.**

The FTC's requested preliminary injunction is necessary to preserve the status quo until the FTC adjudicates whether Meta's acquisition of Within is lawful. As the Ninth Circuit has emphasized, at this preliminary stage, an injunction to preserve the status quo is appropriate so long as the FTC raises questions serious enough to provide "fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals." *FTC v. Warner Commc'ns Inc*., 742 F.2d 1156, 1162 (9th Cir. 1984) (quotation marks omitted). The FTC has satisfied that standard here. The experience of the Amici States, discussed further below, supports the FTC's view that Meta's proposed acquisition of Within threatens to substantially harm competition in the emerging virtual reality space. Particularly in light of the historical pattern of anticompetitive acquisitions by Meta, it is crucial that the FTC be permitted to undertake a thorough, careful review of Meta's proposed acquisition of Within before it is allowed to go forward.

---

[4] For many of the same reasons that the FTC's motion for a preliminary injunction should be granted, Meta's pending motion to dismiss the FTC's complaint (ECF No. 108) is meritless and should be denied.

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

Moreover, the States' past enforcement efforts underscore that Meta's acquisition of Within should be preliminarily enjoined now, before the damage is done. If the preliminary injunction is not granted, the acquisition will proceed, and Meta will be able to access Within's confidential strategic information and to begin integrating the firms. Immediate harms to competition and innovation may result. And Meta will likely argue in any future related antitrust challenge—as it successfully argued in the district court in the States' pending antitrust case against Meta—that it will be too late to unwind any competitive harms that result from the acquisition of Within once the acquisition has closed.[5] Accordingly, the public interest strongly supports a preliminary injunction to preserve the status quo while the FTC's adjudication proceeds.

**B.    State Enforcement Efforts Underscore the Dangers That Acquisitions by Digital Platforms Like Meta May Pose to Competition and Innovation.**

In recent years, it has become increasingly clear to the Amici States through their investigations and enforcement actions that digital markets are especially prone to threats to competition, innovation, and consumers. Digital platforms like Meta's, which facilitate interactions and transactions between users in a digital space, can amass market power across multiple complementary markets and features, allowing them to dominate entire digital realms, as Meta has dominated the personal social networking space and now increasingly dominates the virtual reality space at issue here. Meta's dominance has allowed it to become a gatekeeper, giving it power to dictate the terms of access to its digital spaces for other firms and for consumers. Wielding such market power, Meta has thrived by exploiting users' data, both to keep users engaged with its products and to sell profitable targeted advertising. Meta's digital platforms share a distinctive set of features that can help entrench dominance.

---

[5] *See New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 29-31, 35-38 (D.D.C. 2021). Although the district court dismissed the States' complaint against Meta largely on the basis of timeliness considerations, the States' appeal is pending in the D.C. Circuit. *See New York v. Meta Platforms, Inc.*, No. 21-7078 (D.C. Cir.). The FTC's parallel action also remains pending in the district court. *See FTC v. Meta Platforms, Inc.*, No. 20-cv-3590 (D.D.C.).

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

First, Meta's digital platforms exhibit strong *network effects*. The more users its platforms have, the more appealing they become for other users to join and use. Such network effects pose a substantial barrier to entry for potential competitors because users do not want to switch to new platforms that do not have as many other users.

Second, and relatedly, Meta's digital platforms exhibit strong *economies of both scale and scope*. The platforms benefit from growing by adding more users (scale) and by expanding into features that complement those the platform already offers (scope). The additional users and features increase network effects, provide more data to the platform, and can increase entry barriers that rivals must overcome.

Third, Meta's digital platforms exhibit *close-to-zero marginal costs* to reach new users. A new user can join and use an established platform like Meta's Facebook platform at virtually no cost to the platform. Thus, once a platform establishes strong network effects, it is well positioned to grow rapidly into a dominant, gatekeeper position, and to amplify barriers to entry for new competitors.[6]

It also has become increasingly clear to the Amici States that digital platforms like Meta's have often cemented market dominance in large part through acquisitions. A recent FTC study of acquisitions of $1 million or more revealed that, from 2010 to 2019, five leading digital platforms (Amazon, Apple, Facebook/Meta, Google/Alphabet, and Microsoft) bought some 616 companies. In many cases, the platforms acquired relatively small, young companies.[7]

And as leading economists have emphasized, such acquisitions by digital platforms like Meta may present serious threats to the public interest by empowering already dominant incumbents to eliminate nascent or potential competition, and to discontinue innovation by the platform, the

---

[6] *See generally* Stigler Comm. on Digit. Platforms, Final Report (Sept. 2019) (underline). (internet).

[7] FTC, *Non-HSR Reported Acquisitions by Select Technology Platforms, 2010-2019: An FTC Study* 13, 36-37 (Sept. 2021) (internet).

5

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

target firm, or both.[8] Indeed, sophisticated incumbent companies sitting at the center of a digital ecosystem, like Meta in virtual reality, are uniquely positioned to quickly identify acquisition targets that threaten their dominant positions.[9]

The Amici States' experience shows that Meta's prior acquisitions have harmed competition in a variety of ways—underscoring that the FTC should be allowed to adjudicate the lawfulness of Meta's current acquisition of Within before the acquisition is completed and potentially harms competition. Meta's past acquisitions have sometimes eliminated nascent existing competitors operating in the same core space as the platform. For instance, Meta acquired Instagram, a growing social networking competitor, for a hefty premium of $1 billion.[10] It has since become clear to the States that this acquisition harmed competition by helping Meta eliminate an emerging competitor and entrench its market power over personal social networking services. In fact, as the States learned from their investigation, Meta CEO Mark Zuckerberg acknowledged at the time of the Instagram acquisition that a rationale for the acquisition was to "neutralize" a nascent competitor.[11]

At other times, by acquiring complementary businesses that were operating outside of the platform's core functionality, Meta has eliminated *potential* competition. For example, Meta acquired leading messaging app WhatsApp for an extraordinary sum of nearly $19 billion in an effort to prevent WhatsApp from exploiting its large user base to become a competitor of Meta in social networking.[12] Meta also acquired at least one firm—Onavo, which facilitated analysis of app usage data—for the purpose of allowing Meta to identify more emerging competitive threats to eliminate.

---

[8] *See, e.g.*, Colleen Cunningham et al., *Killer Acquisitions*, 129 J. Pol. Econ. 649 (2021) (internet); Cristina Caffarra et al., *"How Tech Rolls": Potential Competition and "Reverse" Killer Acquisitions*, Ctr. for Econ. Pol'y Rsch. (May 11, 2020) (internet).

[9] *See* C. Scott Hemphill & Tim Wu, *Nascent Competitors*, 168 U. Pa. L. Rev. 1879, 1905-06 (2020) (internet).

[10] *See New York* Compl., *supra*, ¶¶ 107-128; *accord FTC* Am. Compl., *supra*, ¶¶ 80-106.

[11] *See New York* Compl., *supra*, ¶¶ 102, 114-116 (quotation marks omitted); *accord FTC* Am. Compl., *supra*, ¶¶ 89-107.

[12] *See New York* Compl., *supra*, ¶¶ 149-175; *accord FTC* Am. Compl., *supra*, ¶¶ 107-129.

6

and to preclude existing rivals from having access to the same capabilities.[13] In acquiring complementary businesses outside its core functionality, Meta cemented its dominance by adding to its network effects and economies of scale and scope—thereby generating valuable new user engagement and data for the platform. For instance, after acquiring WhatsApp, Meta exploited WhatsApp's user data to benefit Meta's core platform.[14]

Meta's acquisitions also have suppressed innovation. For example, after Meta acquired Instagram, it terminated work on its own innovative alternative: Facebook Camera.[15] In other cases, Meta has shut down the services of innovative acquired firms altogether, having accomplished its goal of eliminating a nascent or potential competitor or denying the firm to an existing rival.[16] In fact, Meta has reportedly shut down nearly half of its acquisitions.[17]

But, because Meta's pattern of anticompetitive acquisitions was not clear until recently, the States did not challenge their lawfulness until later, when anticompetitive effects were already substantial. That history highlights the need to permit the FTC's thorough adjudication of Meta's latest proposed acquisition now, *before* the acquisition proceeds.

---

[13] *See New York* Compl., *supra*, ¶¶ 137-148; *accord FTC* Am. Compl., *supra*, ¶¶ 69-74.

[14] *See New York* Compl., *supra*, ¶¶ 176-178; *accord FTC* Am. Compl., *supra*, ¶¶ 127, 153. In fact, Meta exploited WhatsApp's data despite promising regulators responsible for reviewing the acquisition that it would not do so. Meta was ultimately fined €110 million for misleading the regulators. *See* Press Release, Eur. Comm'n, *Mergers: Commission Fines Facebook €110 Million for Providing Misleading Information About WhatsApp Takeover* (May 18, 2017) (underline). 

[15] *New York* Compl. ¶ 124; *accord FTC* Am. Compl., *supra*, ¶¶ 84-85, 98-99.

[16] *See, e.g.*, *New York* Compl., *supra*, ¶ 184; *accord FTC* Am. Compl., *supra*, ¶¶ 74-76.

[17] Tim Wu & Stuart A. Thompson, *The Roots of Big Tech Run Disturbingly Deep*, N.Y. Times (June 7, 2019) (underline).

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

### C.    Meta's Acquisition of Within Poses Dangers to Competition and Innovation.

Having achieved dominance in personal social networking, Meta has turned its attention to the rapidly growing virtual reality space. Meta has acknowledged that its strategy is to "us[e] acquisitions opportunistically" to bolster its position as a leading virtual reality company, just as it previously used acquisitions as part of its strategy to dominate personal social networking.[18]

The need to allow the FTC to adjudicate the lawfulness of Meta's acquisition of Within now, before the acquisition goes forward, is underscored by Meta's recent moves toward a dominant position in each part of the virtual reality space—largely through acquisitions. Meta has moved toward a dominant position in (1) the headset used to access the virtual reality environment, with its Meta Quest 2, the leading virtual reality headset in the United States; (2) the apps, with number one game Beat Saber and many other popular titles; and (3) app distribution, with the Quest Store, the leading virtual reality app store.[19] As it previously did in the social networking space, Meta has used serial acquisitions to move toward dominance in the virtual reality space—as in its acquisitions of the Oculus headset manufacturer that provided the basis for Meta's market-leading Quest 2, and the Beat Saber game studio and numerous other app studios.[20] The appendix to this brief lists seventeen publicly disclosed virtual reality–related acquisitions by Meta, largely in the last two years.

By purchasing Within, the creator of the app Supernatural, Meta seeks to expand its developing virtual reality dominance into the fast-growing and highly concentrated market for virtual reality dedicated fitness apps—i.e., apps designed to allow users to exercise through a struc- tured workout in their own homes.[21] Virtual reality fitness is, in the words of Within's founder and CEO, a "killer use case" for virtual reality; it has been driving many new users to buy Meta's virtual

---

[18] Am. Compl. for a Prelim. Inj. (Am. Compl.) ¶ 7 (Oct. 7, 2022), ECF No. 101-1.

[19] *See id.* ¶¶ 2-5.

[20] *See, e.g.*, *id.* ¶¶ 3-4.

[21] *See id.* ¶ 35.

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

reality headsets and to begin using virtual reality products.[22] Meta is poised to, and perceived as likely to, enter the virtual reality dedicated fitness market independently by introducing its own competing app.[23] But, instead, Meta now proposes to buy the leading existing virtual reality dedicated fitness app, Supernatural, to eliminate the need for competition and innovation.[24]

The Amici States' enforcement experience strongly suggests that Meta's acquisition of Within threatens harms to competition and the public interest similar to the harms from Meta's past efforts to use acquisitions to entrench market dominance in the personal social networking market. By purchasing Within, Meta will have bought a dominant position in the rapidly growing dedicated fitness segment of the virtual reality space, and removed competitive rivalry between Within and Meta and related incentives for Within to take risks, innovate, and introduce new products, features, and experiences. At the same time, Meta will have helped cement its dominance in the virtual reality space as a whole, by bringing new, fitness-focused users into Meta's suite of virtual reality products. Thus, the acquisition will raise entry barriers for other potential competitors in the virtual reality space. Meta's reported willingness to pay over $400 million for the acquisition of Within, several times the total funding Within received over its entire corporate existence, suggests that Meta is willing to pay a large premium to lock in its dominance[25]—just as Meta was willing to pay large premiums for the same purpose when it previously acquired Instagram and WhatsApp (see *supra* at 6). The equities therefore strongly support a preliminary injunction to preserve the status quo while the FTC's challenge to the acquisition proceeds.

---

[22] *See id.* ¶¶ 8, 71 (quotation marks omitted); *see also* Tim Bajarin, *Could Fitness Be the Killer App for the Metaverse? Or Is It Gaming? Or Both?*, Forbes (Dec. 24, 2021) (internet).

[23] *See, e.g.*, Am. Compl. ¶¶ 68, 79, 93; Jon Fingas, *'Beat Saber' Now Has an Official Song Designed to Keep You Fit*, Engadget (Apr. 12, 2020) (internet).

[24] *See* Am. Compl. ¶¶ 8, 11.

[25] *See* Ben Lang, *FTC Sues to Block Meta's Acquisition of Top VR Fitness App Developer*, Road to VR (July 27, 2022) (internet); Within (VR/AR), *Summary*, Crunchbase (internet).

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

**II.      The FTC Is Likely to Prevail on the Merits Because Meta's Acquisition of Within Likely Would Substantially Lessen Competition.**

The FTC is likely to prevail on the merits because Meta's acquisition of Within likely would substantially lessen competition and tend to create a monopoly in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45.

Based on their experience, the Amici States agree with the FTC that Meta's acquisition of Within likely would eliminate both perceived and actual potential competition in violation of the antitrust laws. Meta has strong incentives to fortify its dominance in the virtual reality space by expanding into the dedicated fitness market. Moreover, while Meta does not currently have its own virtual reality dedicated fitness app, the company's already dominant position and ongoing massive investments in virtual reality and related technologies—totaling more than $25 billion since 2020[26]—give Meta ideal means to develop a competing dedicated fitness app, particularly by adapting its existing leading virtual reality app, Beat Saber, which already has a fitness dimension.[27]

Indeed, Meta is already innovating to position itself to enter the virtual reality dedicated fitness market to compete against Supernatural. It has (1) released FitBeat, a Beat Saber audio track designed to keep users fit; (2) launched a fitness advertising campaign around Beat Saber's expanded music; and (3) promoted fitness using, for example, Oculus Move, a tool that tracks active time and calories burned.[28] For its part, Within responded to Meta's perceived likely entry by differentiating its Supernatural app with (1) music; (2) wide-ranging fitness movement; and (3) trainer-coaches and expert-choreographed work-out routines.[29] Thus, Meta and Within are currently inno-

[26] *See Meta Platforms, Inc. (META) CEO Mark Zuckerberg on Q2 2022 Results - Earnings Call Transcript*, Seeking Alpha (July 29, 2022) (internet); Simple Investing, *Meta: The Metaverse Is Becoming a Reality*, Seeking Alpha (Oct. 22, 2022) (internet).

[27] S*ee* Am. Compl. ¶ 68.

[28] *See* Fingas, *supra*; Am. Compl. ¶ 64.

[29] *See, e.g.*, Nancy Schimelpfening, *I Tried It: 'Supernatural' VR Workout on Oculus Quest*, Healthline (Mar. 4, 2021) (internet); *Workout Near, Go Far: Stay Fit with 'Supernatural,' the Daily Fitness Adventure Out Now on Oculus Quest*, Meta Quest: Oculus Blog (Apr. 23, 2020) (internet).

10

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

vating against each other in anticipation of Meta's market entry. Meta's proposed acquisition of Within would eliminate not only this present rivalrous innovation, but also the resulting direct product competition between Meta, Within, and other industry participants if Meta enters the dedicated fitness market.

Meta is therefore a powerful *actual* potential competitor in the market for virtual reality dedicated fitness apps, already innovating actively, and well positioned to enter the market through internal expansion or by purchasing a nondominant app. Similarly, Meta is a powerful *perceived* potential competitor, which existing market participants view as likely to enter the market for virtual reality dedicated fitness apps.

Meta's acquisition of Within is precisely the sort of acquisition that the Supreme Court has recognized as likely to eliminate potential competition in violation of Section 7. As the Supreme Court has explained, the factors pertinent to any potential competition case include "[1] the economic feasibility and likelihood of de novo entry, [2] the capabilities and expansion history of the acquiring firm, and [3] the performance as well as the structural characteristics of the target market." *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 642 (1974). As the Amici States' experience with Meta and other digital platforms makes clear, all of these factors suggest that Meta's acquisition of Within would unlawfully eliminate potential competition. As a platform that increasingly dominates and seeks to entrench dominance in the virtual reality space, Meta has a highly feasible and likely route to de novo entry into a complementary virtual reality market (dedicated fitness apps), especially given its existing Beat Saber app. Meta's capabilities are also much greater and its expansion history is much more aggressive than typical entrants. And the virtual reality space is hospitable to dominant platforms like Meta because of network effects and economies of scale and scope, magnifying the risk that the already highly concentrated fitness app segment will become more concentrated by Meta's acquisition, rather than benefitting from deconcentrating effects of Meta's independent entry.

Although Meta's motion to dismiss asserts that antitrust claims based on eliminating potential competition are rare, the Supreme Court has blocked an acquisition that eliminates potential competition in a situation that closely parallels the situation here. In *FTC v. Procter & Gamble Co.*,

the Supreme Court blocked dominant household products supplier Procter & Gamble's acquisition of Clorox, the leading manufacturer of a complementary household product, bleach—even though Procter & Gamble was not at the time a competitor in the market for bleach. *See* 386 U.S. 568, 568-72, 580 (1967). The Court did so because Procter & Gamble was a powerful potential competitor to Clorox in the bleach market, just as Meta is a powerful potential competitor to Within here. As the Court explained, Procter & Gamble "was engaged in a vigorous program of diversifying into product lines closely related to its basic products." *Id.* at 580. So too here, Meta has been diversifying its virtual reality products. And the Court further explained that Procter & Gamble had recently launched a new cleaner in a market adjacent to the bleach market. Bleach was thus "a natural avenue of diversification" for Procter & Gamble since it was "complementary to Procter's products" and already "sold to the same customers through the same channels" as Procter & Gamble's existing products. *Id.* Here, a virtual reality dedicated fitness app would be complementary to Meta's other virtual reality products and would be sold to virtual reality users through the same channels as existing Meta products, like Beat Saber. Meta's acquisition of Within is thus a formidable threat to potential competition for the same reasons as the Procter & Gamble acquisition of Clorox that the Supreme Court found unlawful.

Moreover, contrary to Meta's suggestion in its motion to dismiss, Meta's entry as a leading competitor need not be certain in order for the FTC to have a Section 7 claim. In enacting that provision, Congress aimed to address threats to competition while they were "still in [their] incipiency," before market power was cemented. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 317-18 & n.32 (1962). Congress therefore was concerned "with probabilities, not certainties," and prohibited any acquisitions the effect of which "'*may*'" be substantially to lessen competition or to tend to create a monopoly. *See id.* at 323 (quoting Section 7). That standard recognizes that "[u]nequivocal proof that an acquiring firm actually would have entered de novo but for a merger is rarely available." *See Marine Bancorporation*, 418 U.S. at 624. Meta's acquisition of Within may substantially lessen competition or tend to create a monopoly; thus, it should be preliminarily enjoined.

1

**CONCLUSION**

2        The Court should grant the preliminary injunction sought by the FTC.

3   Dated: New York, New York

4           November 7, 2022                    Respectfully submitted,

5                                               LETITIA JAMES
                                                  *Attorney General*
6                                                 *State of New York*

7                                               /s/ Henry B. Smith

8
                                                Henry B. Smith
9                                               California State Bar No. 313801
                                                Assistant Attorney General
10                                              Henry.Smith@ag.ny.gov

11                                              Barbara D. Underwood*
                                                  *Solicitor General*
12                                              Judith N. Vale*
                                                  *Deputy Solicitor General*
13                                              Philip J. Levitz*
                                                  *Assistant Solicitor General*
14

15                                              Christopher D'Angelo*
                                                  *Chief Deputy Attorney General,*
16                                                *Economic Justice Division*
                                                Elinor R. Hoffmann*
17                                                *Chief, Antitrust Bureau*
                                                Jay Himes*
18                                              Daniel P. Weick*
                                                  *Special Litigation Counsel*
19                                              Benjamin Cole*
20                                              Nathaniel Kosslyn*
                                                Beatriz Marques*
21                                                *Assistant Attorneys General*

22                                              Office of the Attorney General
23                                              28 Liberty Street
                                                New York, NY 10005
24                                              (212) 416-8627

25
                                                *Counsel for Amicus Curiae State of New York*
26                                              *Not admitted in the Northern District of California

27                                              (*Counsel list continues on next page.*)

28

13
[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

TREG R. TAYLOR
  *Attorney General*
  *State of Alaska*
P.O. Box 110300
Juneau, AK 99811

ROB BONTA
  *Attorney General*
  *State of California*
455 Golden Gate Avenue,
  Ste. 11000
San Francisco, CA 94102

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 North French Street,
  5th Fl.
Wilmington, DE 19801

HOLLY T. SHIKADA
  *Attorney General*
  *State of Hawaii*
425 Queen Street
Honolulu, HI 96813

LAWRENCE G. WASDEN
  *Attorney General*
  *State of Idaho*
954 West Jefferson Street,
  2nd Fl.
P.O. Box 83720
Boise, ID 83720

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street,
  12th Fl.
Chicago, IL 60601

BRIAN E. FROSH
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

MAURA HEALEY
  *Attorney General*
  *Commonwealth of*
  *Massachusetts*
One Ashburton Place, 18th Fl.
Boston, MA 02108

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
445 Minnesota Street, Ste. 1400
St. Paul, MN 55101

LYNN FITCH
  *Attorney General*
  *State of Mississippi*
P.O. Box 220
Jackson, MS 39205

AUSTIN KNUDSEN
  *Attorney General*
  *State of Montana*
P.O. Box 200151
Helena, MT 59620

DOUGLAS J. PETERSON
  *Attorney General*
  *State of Nebraska*
2115 State Capitol
Lincoln, NE 68508

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
P.O. Box 45029
124 Halsey Street, 5th Fl.
Newark, NJ 07102

HECTOR BALDERAS
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Villagra Building
Santa Fe, NM 87504

JOSHUA H. STEIN
  *Attorney General*
  *State of North Carolina*
P.O. Box 629
Raleigh, NC 27690

DREW H. WRIGLEY
  *Attorney General*
  *State of North Dakota*
1720 Burlington Drive, Ste. C
Bismarck, ND 58504

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

SEAN D. REYES
  *Attorney General*
  *State of Utah*
P.O. Box 140873
160 East 300 South, 5th Fl.
Salt Lake City, UT 84114

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
800 Fifth Avenue, Ste. 2000
Seattle, WA 98104

KARL A. RACINE
  *Attorney General*
  *District of Columbia*
400 6th Street, NW
Washington, D.C. 20001

LEEVIN TAITANO CAMACHO
  *Attorney General*
  *Territory of Guam*
590 South Marine Corps Drive,
  Ste. 901
Tamuning, GU 96913

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK

### Appendix: Virtual Reality–Related Acquisitions by Meta*

| Hardware & Technology Acquisitions | | | Application & Studio Acquisitions | | |
|---|---|---|---|---|---|
| 1. | 2014 | Oculus: VR headset manufacturer. | 1. | 2019 | Beat Games: creator of Beat Saber. |
| 2. | 2016 | Zurich Eye: visual navigation for machines. | 2. | 2020 | Sanzaru Games: creator of fantasy combat game Asgard's Wrath. |
| 3. | 2019 | CTRL-Labs: wristbands that monitor motor neurons for movement. | 3. | 2020 | Ready at Dawn Studios: creator of zero-gravity adventure game Lone Echo II, and online team sports game Echo VR. |
| 4. | 2019 | Scape Technologies: visual positioning technology helping machines to understand their surroundings. | 4. | 2021 | Downpour Interactive: creator of team-based combat game Onward. |
| 5. | 2020 | Mapillary: spatial mapping and imaging. | 5. | 2021 | Bigbox VR: creator of multiplayer combat game Population: One. |
| 6. | 2020 | Lemnis Technologies: lens technology. | 6. | 2021 | Unit 2 Games: creator of a collaborative platform for creating and playing users' own games, Crayta. |
| 7. | 2021 | ImagineOptix: lenses for VR headsets. | 7. | 2021 | Twisted Pixel Games: creator of various virtual reality games, including combat and mystery thriller games. |
| 8. | 2022 | Lofelt: technology that replicates touch in a virtual setting. | 8. | 2022 | Camouflaj: creator of Marvel comic-based game Iron Man VR |
| | | | 9. | 2022 | Armature Studio: creator of virtual reality combat game Resident Evil 4. |

*Sources:*

Alejandro Medellin, *How Meta Plans to Dominate the Metaverse: Buy Everything in Sight*, Input (Dec. 22, 2021), https://www.inputmag.com/tech/how-meta-plans-dominate-metaverse-buy-every-vr-company.

Jasmine Teng, *Metaverse Shopping Spree: What Facebook's VR Acquisitions Tell Us About Its Future*, Quartz (Nov. 9, 2021), https://qz.com/2086381/what-facebooks-vr-acquisitions-tell-us-about-metas-future/.

Nick Statt, *Meta Acquires Three New VR Game Developers for Oculus Studios*, Protocol (Oct. 11, 2022), https://www.protocol.com/bulletins/meta-oculus-studios-game-developer.

Peter Kafka, *Facebook Is Quietly Buying Up the Metaverse: Can Mark Zuckerberg M&A a New Monopoly?*, Vox (Nov. 11, 2021), https://www.vox.com/recode/22776461/facebook-meta-metaverse-monopoly.

Salvador Rodriguez, *Meta Acquires Berlin Startup to Boost Virtual Reality Ambitions* (Sept. 2, 2022), https://www.wsj.com/articles/meta-acquires-berlin-startup-to-boost-virtual-reality-ambitions-11662147631.

Staff of Subcomm. on Antitrust, Com. & Admin. L. of the H. Comm. on the Judiciary, 116th Cong. Investigation of Competition in Digital Markets 11, 423-30 (2020), https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519.

[PROPOSED] BRIEF FOR THE STATES OF NEW YORK ET AL. AS AMICI CURIAE
Case No. 5:22-cv-04325-EJD-SVK