# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 5:22-cv-04325-EJD<br><br>**DECLARATION OF VINCENT S. LAM IN SUPPORT OF META PLATFORMS, INC'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED (ECF NO. 215)**<br><br>Dept.:   Courtroom 4 – 5th Floor<br>Judge:  Hon. Edward J. Davila |

Pursuant to Civil Local Rule 79-5(f)(3), I declare as follows:

1. I am an Assistant Vice President and the Chief IP Litigation Counsel at HTC America, Inc. ("HTCA"), which is not a party to the above-captioned case. I have been employed by HTCA since 2010 and practiced law at DLA Piper US LLP prior to joining HTCA. I am a member in good standing of the State Bar of California, and admitted to practice before this Court. During my time at HTCA, the company has launched dozens of new products. The facts stated in this declaration are based on my own personal knowledge and, if called as a witness, I could and would testify to those facts.

2. I submit this declaration in response to Meta Platforms, Inc.'s ("Meta") Administrative Motion to Consider Whether Another Party's Materials Should Be Sealed (ECF No. 215) in connection with Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, the Declaration of Aaron M. Panner in Support of Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, Exhibit Index, and Exhibit 8.

3. I understand that although there is a presumption of public access to judicial records, that right is not absolute, and a court may seal documents offered in evidence at a trial upon showing

compelling reasons to keep certain information confidential. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 330 F.3d 1122, 1135 (9th Cir. 2003); *see also* Civil L.R. 79-5(b). A compelling reason to seal judicial records exists when those records might "become a vehicle for improper purposes," such as use of the records to release trade secrets or confidential business information that might harm a litigant's competitive standing. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve . . . as sources of business information that might harm a [third party's] competitive standing." (citations omitted)).

4.   I also understand that confidential business information includes product development plans and marketing strategies. *See Adtrader, Inc. v. Google LLC,* No. 17-cv-07082-BLF, 2020 WL 6391210, at *1, (N.D. Cal. Mar. 24, 2020) ("Courts have found that a party has demonstrated compelling reasons warranting sealing where 'confidential business material, marketing strategies, product development plans could result in improper use by business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies.'"), *citing Algarin v. Maybelline, LLC*, No. 12-cv-3000 AJB DHB, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014); *Bauer Bros. LLC v. Nike, Inc.*, No. 09-cv-500–WQH–BGS, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) (finding compelling reasons to seal because "public disclosure of Nike's confidential business materials, including marketing strategies . . . product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development."). Moreover, there is also a compelling reason to file an exhibit under seal where that exhibit divulges confidential business information unrelated to the public's understanding of the judicial proceeding in which the exhibit is presented. *Guzman v. Chipotle Mexican Grill, Inc.,* No. 17-cv-02606-HSG, 2020 WL 1171112, *2 (N.D. Cal. Mar. 11, 2020).

5.   HTCA has narrowly tailored its sealing requests, and the portions of the highly confidential documents and materials that HTCA seeks to keep under seal are tangential to this litigation generally and to the motion for which the documents were submitted in support.

1    Accordingly, HTCA seeks to file under seal the documents, or portions thereof, described in the
2    table below:

| Document | Portions To Be Filed Under Seal |
|---|---|
| Opposition | Page 4, Line 19 |
| Panner Declaration | Page 2, Lines 4-5 |
| Exhibit Index | Page 1, Lines 22-23 |
| Exhibit 8 | Entire Document |

6.   The above cited materials in Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, the Declaration of Aaron M. Panner in Support of Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, Exhibit Index, and Exhibit 8 reflect highly confidential and competitively sensitive information about HTCA's business and marketing practices and product details related to upcoming product releases.  That information is internal to HTCA only, and even then, HTCA maintains this information as highly confidential within the company and takes extensive steps to limit employee access to this non-public information. For instance, only certain top-level employees are informed of the details of new products that have not yet been released. Employees who receive this information must often sign non-disclosure agreements which prohibit discussing or disseminating the information to anyone who is not on a need-to-know basis. There is a physical separation of teams working on products under development from the rest of the company (e.g., separate office buildings, separate floors within a building, partitions within offices). HTCA also restricts access to servers that store this information, with only very few HTCA employees given access. When an employee is provided access, HTCA takes the further precaution of prohibiting this information from being downloaded onto the employee's computer or printed from his computer.

7.   These extensive steps to limit access to the information, even within the company, are taken in order to protect against any prospect of this extremely sensitive information becoming public. Being "first" (i.e., the first to launch a new product line or feature set) gives companies a competitive advantage in the virtual reality industry. Thus, public disclosure of the information would lead to substantial competitive harm to HTCA. If such information were publicly disclosed,

1 | a competitor would be able to copy the innovative features, capabilities, and development plans of
2 | HTCA's new product and circumvent "the time and resources necessary in developing their own
3 | practices and strategies." *Adtrader, Inc.*, 2020 WL 6391210, at *1. The competitor could beat
4 | HTCA to the market on the new product line or feature set without having to put in all the time,
5 | resources and money that HTCA has. As a result, this would undermine HTCA's strategic position
6 | in the virtual reality industry and cause devastating and irreparable harm, and the unsealing of the
7 | information would result in injury to HTCA that could not be avoided through any less restrictive
8 | alternative to sealing.

9 |     I declare under penalty of perjury under the laws of the United States that the foregoing is
10 | true and correct.

12 | Executed this 18th day of November 2022, in San Diego, California.

By: _____
Vincent S. Lam