Mark C. Hansen (*pro hac vice*)
mhansen@kellogghansen.com
Aaron M. Panner (*pro hac vice*)
apanner@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999

Michael Moiseyev (*pro hac vice*)
michael.moiseyev@weil.com
Chantale Fiebig (*pro hac vice*)
chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
*Counsel for Defendant Meta Platforms, Inc.*

Christopher J. Cox (Bar No. 151650)
chris.cox@hoganlovells.com
HOGAN LOVELLS US LLP
855 Main Street, Suite 200
Redwood City, CA 94063
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
*Counsel for Defendant Within Unlimited, Inc.*

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>    Defendants. | Case No. 5:22-cv-04325-EJD<br><br>**DEFENDANTS' OPPOSITION TO STATES' MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF**<br><br>Dept.:  Courtroom 4 – 5th Floor<br>Judge:  Hon. Edward J. Davila |

This Court should deny the motion filed by 22 states, Guam, and the District of Columbia (the "States") to submit an amicus brief in support of the motion for preliminary injunction filed by the Federal Trade Commission ("FTC") because (1) the motion is untimely and inconsistent with the Court's scheduling order, and (2) the brief that the States seek to file would not assist the Court.

## ARGUMENT

"Whether to permit a nonparty to submit an amicus brief is a matter of judicial discretion." *Karuk Tribe of Cal. v. United States Forest Serv.*, 2005 WL 8177401, at *2 (N.D. Cal. June 30, 2005). "[A]micus curiae briefs can be a real burden on the court . . . [and] impose[] a burden of study and the preparation of possible response on the parties." *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000). For that reason, such briefs should not be permitted unless they are "timely, useful, or otherwise necessary to the administration of justice." *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). In this case, the proposed brief is neither timely nor useful and therefore the motion should be denied.

**The Brief Is Untimely:** After the FTC initiated this case in July, the parties jointly proposed an expedited schedule to ensure that the FTC's motion for a preliminary injunction – which, if granted, would kill the parties' deal – could be resolved in advance of the deadline established in the parties' merger agreement. The Court entered that schedule on September 6, 2022, providing for a 25-page opening brief in support of the FTC's motion, to be filed by October 31, 2022, with the Defendants' brief to follow two weeks later. There is no provision in the schedule for amicus briefs.

In light of that schedule, the States' motion is untimely. This case has been well publicized, and the scheduling order was public (as was the parties' proposal – adopted by the Court in all relevant respects – which was filed on August 22). Accordingly, the States should have filed any motion for leave to participate in that briefing well in advance of the filing of the FTC's opening brief, to allow for orderly consideration of that motion prior to the submission of briefing. *See Friends of Animals v. United States Fish & Wildlife Serv.*, 2021 WL 4440347, at *2 (D. Utah Sept. 28, 2021) (denying motion for leave to file brief as untimely where "the State Amici knew or should have known of the case's pendency and their interest in the litigation to timely seek leave"). Yet the

States filed their motion for leave to add an additional brief on the Plaintiff's side a week *after* the FTC filed its opening brief and just seven days before Defendants were required to file their opposition – with a hearing date on the motion for leave that is well after the FTC will have filed any reply in support of its motion.[1] To argue that such a motion is timely defies common sense: the case is on an expedited schedule, and the parties have their hands full completing the necessary fact development, expert analysis, legal briefing, and hearing preparation before the presentation of evidence begins on December 8. No one planned for the States' participation, and nothing excuses their failure to participate sooner if they had any basis for concern about the transaction.[2]

Furthermore, allowing an additional brief on one side risks "circumvent[ing] the page limitations on the parties' briefs, to the prejudice of any party who does not have an amicus ally." *Nat'l Org. for Women, Inc.*, 223 F.3d at 617. The parties agreed to restrictive page limitations to ensure that argument would be presented efficiently, mindful of the burden that this expedited proceeding places on the Court. The States' brief would extend one side's briefing by half. District courts have denied motions for leave to file amicus briefs for just this reason. *See, e.g.*, *United States v. Microsoft Corp.*, 2016 WL 11782815, at *2 (W.D. Wash. Nov. 14, 2016) (agreeing with concern that "these proposed briefs were intended to effectively sidestep the page limits") (internal quotation marks omitted).

The States' citation (at 1) to the Federal Rules of *Appellate* Procedure, which generally permit amici to file seven days after the party they are supporting, *see* Fed. R. App. P. 29(a)(6),

---

[1] District courts commonly deny untimely motions for leave to file amicus briefs. *See, e.g.*, *Texas v. United States*, 2021 WL 2172837, at *2 (S.D. Tex. Mar. 5, 2021); *Vashisht-Rota v. Harrisburg Univ.*, 2020 WL 12812014, at *2 (S.D. Cal. Aug. 6, 2020); *United States v. Yaroshenko*, 86 F. Supp. 3d 289, 290 (S.D.N.Y. 2015); *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 130 n.1 (W.D.N.Y. 2003); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1271, 1274 (D.N.M. 2002).

[2] None of the cases that the States cite in support of their motion involved an expedited preliminary injunction proceeding.

hardly bolsters their motion. On the contrary, this preliminary injunction proceeding – with its expedited briefs and strict page limits – bears no resemblance to an ordinary federal appeal, in which the default schedule generally leaves 30 days or more for the preparation of responsive briefs, extensions are common, and each party is afforded 13,000 words for principal briefs (again, with expansions of the word limit often granted where amici participate). *See generally* Fed. R. App. P. 32. These differences make clear that any motion for leave to participate as amici in this proceeding should have been filed weeks if not months earlier.

***The Proposed Brief Would Not Assist the Court:*** The States provide no reason to conclude that their brief will offer the Court anything of value to its resolution of this case beyond the parties' presentation. The FTC "ha[s] more than adequate counsel," *Microsoft*, 2016 WL 11782815, at *2, and the States do not and cannot claim to have any "unique information that the parties' lawyers could not provide," *Okechuku v. United States*, 2019 WL 6497876 (N.D. Tex. Dec. 3, 2019). The States do not even pretend that they bring any additional *legal* expertise or insight to bear here, nor could they: other than their own enforcement actions, they cite only four cases, all of which the parties have thoroughly addressed in their briefs.[3] Such motions to file duplicative briefing are routinely denied. *See, e.g.*, *Monarch Beverage Co., Inc. v. Johnson*, 2014 WL 7063019 (S.D. Ind. Dec. 11, 2014) ("Although the presence of only a few new case citations in an amicus brief may indicate that its content is *not* unique, the inverse is not necessarily true."). Additional citations to academic sources and informal opinion pieces advocating for changes in law likewise are of no value to the Court's inquiry under existing law.

The States' brief is principally devoted to purported grievances that have nothing to do with the Reality Labs business of Meta Platforms, Inc. ("Meta"), much less the acquisition of Within Unlimited, Inc. ("Within") that the FTC challenges in this case. For example, the States emphasize alleged facts that are not before this Court – that is, allegations in their suit filed in the District

---

[3] *United States v. Marine Bancorporation*, 418 U.S. 602 (1974); *FTC v. Procter & Gamble Co.*, 386 U.S. 568 (1967); *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962); and *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156 (9th Cir. 1984).

3

1 Court for the District of Columbia in late 2020, which accused Meta (then Facebook) of violating
2 the antitrust laws by acquiring Instagram (in 2012), WhatsApp (in 2014), and through policies
3 governing other apps' access to Facebook's "Platform." *See* Mot. Ex. 1, at 1-2, 6-7.  Regardless,
4 the States' complaint against Facebook was dismissed, and the markets and theories involved in that
5 complaint have nothing to do with virtual reality ("VR") or fitness.  *See New York v. Facebook*, 549
6 F. Supp. 3d 6 (D.D.C. 2021), *appeal pending sub nom. New York v. Meta Platforms, Inc.* (D.C.
7 Cir.).  The States' filing of an untimely and meritless lawsuit on factually unrelated matters (the
8 only apparent "experience" that the States tout (at Mot. at 2, Mot. Ex. 1, *passim*)) does not show
9 they have anything to contribute here.

10        The States likewise offer no basis for any assertion that the acquisition at issue here – of a
11 VR application with a small number of users, which has no aspirations to building a VR platform of
12 its own, and with which Meta is not alleged to compete – has anything even facially in common
13 with Facebook's long-ago acquisitions of Instagram and WhatsApp.  Of course, one can hope that
14 this transaction will produce similar benefits for users:  in the case of Instagram, Facebook took a
15 small startup with few employees and no revenues and built it into one of the most popular
16 applications in history, with more than one billion users worldwide enjoying its diverse content for
17 free.  In the case of WhatsApp, Facebook took a promising messaging application with a low-cost
18 subscription model and made it free, enhancing communication services (not just messaging but
19 voice, video, conference calling, and much more) for more than two billion people around the
20 globe.  If Meta's acquisition of Within creates even a fraction of such benefits, it will be a great
21 thing indeed.

22        Nor do the States contribute any other information that could assist the Court.  For example,
23 the States cite to a recent FTC study showing that Amazon, Apple, Google/Alphabet, Microsoft,
24 and Meta collectively acquired some 600 companies for $1 million or more over a decade.  *See*
25 Mot. Ex. 1, at 5 (citing FTC, *Non-HSR Reported Acquisitions by Select Technology Platforms,*
26 *2010-2019: An FTC Study*).  But the States do *not* make any claim that this FTC study reached any
27 conclusion that these acquisitions were harmful to competition in any respect; nor could they.
28 Although the FTC acquired the data underlying its report for the express purpose of analyzing the

effects of those acquisitions on competition,[4] the FTC notably did not include any such analysis in its final report. Moreover, subsequent academic research performed by (now former) FTC economists, including the lead economist who worked on that very FTC study as well as the former Director of the FTC's Bureau of Economics, demonstrated that there is *no* evidence that the acquisitions of companies in a technology business area have had the effect of deterring competition, entry, or investment in that area.[5] On the contrary, the economic evidence actually shows that in areas where acquisitions have occurred, there tends to be an increase in acquisitions by other firms as well, which undermines any claim that the studied acquisitions deter competition.[6]

The States' brief does no more than assert, without evidence, that this transaction will harm competition. Such naked political advocacy adds nothing to the just resolution of this case, which will be based on the law and the facts.

---

[4] *See* Press Release, FTC, *FTC to Examine Past Acquisitions by Large Technology Companies* (Feb. 11, 2020), https://www.ftc.gov/news-events/news/press-releases/2020/02/ftc-examine-past-acquisitions-large-technology-companies.

[5] *See* Jin, Leccese & Wagman, *How Do Top Acquirers Compare in Technology Mergers? New Evidence from an S&P Taxonomy*, Int'l J. Indus. Org. (forthcoming), *available at* https://www.sciencedirect.com/science/article/abs/pii/S0167718722000662?via%3Dihub (Nov. 12, 2022) ("*Top Acquirers*") ("Empirically, at least in the period and categories we study, technology acquisition does not shield [Google, Apple, Facebook, Amazon, and Microsoft ('GAFAM')] from potential competition in the same category that may arise from other GAFAM members or other firms acquiring in the same industry categories."); *see also* Jin, Leccese & Wagman, *Do Mega Firms' Acquisitions Chill Startup Innovation? New Evidence from Technology Venture Investment*, Nat'l Bureau of Econ. Rsch. (June 2022) at 4; *see also* Prado & Bauer, *Big Tech Platform Acquisitions of Start-ups and Venture Capital Funding for Innovation*, Info. Econs. & Pol'y 100973, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3787127 (Mar. 25, 2022).

[6] *See* Jin, Leccese & Wagman, *Top Acquirers* at 2 ("Over time, more and more GAFAM and other top acquirers acquire in the same categories").

# CONCLUSION

The Court should deny the motion.

DATED: November 21, 2022

Respectfully submitted,

By: /s/ *Mark C. Hansen*

| | |
|---|---|
| Christopher J. Cox (Bar No. 151650)<br>HOGAN LOVELLS US LLP<br>855 Main Street, Suite 200<br>Redwood City, CA 94063<br>Telephone: (650) 463-4000<br>Facsimile: (650) 463-4199<br>chris.cox@hoganlovells.com<br><br>Lauren Battaglia (*pro hac vice*)<br>Logan M. Breed (*pro hac vice*)<br>Benjamin Holt (*pro hac vice*)<br>Charles A. Loughlin (*pro hac vice*)<br>HOGAN LOVELLS US LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, DC 20004<br>Telephone: (202) 637-5600<br>Facsimile: (202) 637-5910<br>lauren.battaglia@hoganlovells.com<br>logan.breed@hoganlovells.com<br>benjamin.holt@hoganlovells.com<br>chuck.loughlin@hoganlovells.com<br><br>*Counsel for Defendant Within Unlimited, Inc.* | Mark C. Hansen (*pro hac vice*)<br>Aaron M. Panner (*pro hac vice*)<br>KELLOGG, HANSEN, TODD, FIGEL &<br>  FREDERICK, P.L.L.C.<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>Telephone: (202) 326-7900<br>Facsimile: (202) 326-7999<br>mhansen@kellogghansen.com<br>apanner@kellogghansen.com<br><br>Bambo Obaro (Bar No. 267683)<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway, 6th Floor<br>Redwood Shores, CA 94065-1134<br>Telephone: (650) 802-3000<br>Facsimile: (650) 802-3100<br>bambo.obaro@weil.com<br><br>Michael Moiseyev (*pro hac vice*)<br>Chantale Fiebig (*pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street, NW, Suite 600<br>Washington, DC 20036<br>Telephone: (202) 682-7000<br>Facsimile: (202) 857-0940<br>michael.moiseyev@weil.com<br>chantale.fiebig@weil.com<br><br>Liz Ryan (*pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>200 Crescent Court, Suite 300<br>Dallas, TX 75201<br>Telephone: (214) 746-8158<br>liz.ryan@weil.com<br><br>Eric S. Hochstadt (*pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>eric.hochstadt@weil.com<br><br>*Counsel for Defendant Meta Platforms, Inc.* |