Mark C. Hansen (*pro hac vice*)
mhansen@kellogghansen.com
Aaron M. Panner (*pro hac vice*)
apanner@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL &
    FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999

Michael Moiseyev (*pro hac vice*)
michael.moiseyev@weil.com
Chantale Fiebig (*pro hac vice*)
chantale.fiebig@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
*Counsel for Defendant Meta Platforms, Inc.*

Christopher J. Cox (Bar No. 151650)
chris.cox@hoganlovells.com
HOGAN LOVELLS US LLP
855 Main Street, Suite 200
Redwood City, CA 94063
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
*Counsel for Defendant Within Unlimited, Inc.*

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No. 5:22-cv-04325-EJD<br><br>**DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DR. HAL J. SINGER**<br><br>Dept.: Courtroom 4 – 5th Floor<br>Judge: Hon. Edward J. Davila |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................................1

I.    Dr. Singer Improperly Relied on Qualtrics' "Expertise" And Failed To Verify Its Data or Methodology ............................................................................................................2

II.    Dr. Singer's Survey is Facially Unreliable ........................................................................5

CONCLUSION ................................................................................................................................8

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, at a time convenient for the court, Defendants Meta Platforms, Inc. ("Meta") and Within Unlimited, Inc. ("Within") shall move and hereby do respectfully move this Court for an order to strike the opinion of the FTC's economic expert, Dr. Hal Singer, that VR dedicated fitness apps constitute a relevant product market.

This Motion To Strike is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; all other pleadings on file in this action; and any other written or oral argument that Defendants may present to the Court to support this Motion.

DATED:  December 15, 2022                Respectfully submitted,

                                          By: /s/ *Mark C. Hansen*

# TABLE OF AUTHORITIES

Page

**CASES**

*A & M Recs., Inc. v. Napster, Inc*, 2000 WL 1170106 (N.D. Cal. Aug. 10, 2000) .....................3, 5

*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2010 WL 11478992
    (N.D. Cal. July 21, 2010), *aff'd*, 525 F. App'x 612 (9th Cir. 2013).....................................7

*AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273 (N.D.N.Y. 2021) ............................7

*Autozone, Inc.*, *In re:*, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016),
    *aff'd* 789 F. App'x 9 (9th Cir. 2019).................................................................................5, 7

*Avila v. Willits Env't. Remediation Tr.*, 2008 WL 360858 (N.D. Cal. Feb. 6, 2008) .......................1

*Casey v. Home Depot*, 2016 WL 7479347 (C.D. Cal. Sept. 15, 2016)............................................6

*ConAgra Foods, Inc.*, *In re*, 90 F. Supp. 3d 919 (C.D. Cal. 2015),
    *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ...........6

*ConAgra Foods, Inc.*, *In re*, 302 F.R.D. 537 (C.D. Cal. 2014)........................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).............................................1

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .......................................................1

*F.T.C. v. Com. Planet, Inc.*, 642 F. App'x 680 (9th Cir. 2016) ........................................................2

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025
    (9th Cir. 2010).........................................................................................................................5

*Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625 (W.D. Wash. 2011) ...................................2

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017) .............................................2

*Kim v. Benihana, Inc.*, 2022 WL 1601393 (C.D. Cal. Mar. 25, 2022) .......................................2, 4

*Live Concert Antitrust Litig.*, *In re*, 863 F. Supp. 2d 966 (C.D. Cal. 2012) ....................................2

*M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073 (9th Cir. 2005).................................................5

*Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476 (C.D. Cal. 2008),
    *aff'd*, 639 F.3d 942 (9th Cir. 2011)......................................................................................7

*Mooring Cap. Fund, LLC v. Knight*, 388 F. App'x. 814 (10th Cir. 2010) .....................................2

*NetAirus Techs., LLC v. Apple, Inc.*, 2013 WL 12322092 (C.D. Cal. Oct. 23, 2013) ................. 5, 6

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) ............................................................................. 5

*San Francisco Baykeeper v. City of Sunnyvale*, --- F. Supp. 3d ---, 2022 WL 4133299
    (N.D. Cal. Sept. 12, 2022) ......................................................................................................... 2

*Scantlin v. Gen. Elec. Co.*, 2011 WL 13130835 (C.D. Cal. Apr. 8, 2011) ........................................ 2

*Sound View Innovations, LLC v. Hulu, LLC*, 2019 WL 9047211 (C.D. Cal. Nov. 18, 2019),
    *aff'd*, 33 F.4th 1326 (Fed. Cir. 2022) ......................................................................................... 4

*Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011),
    *aff'd*, 521 F. App'x. 592 (9th Cir. 2013) .................................................................................... 7

*York v. Starbucks Corp.*, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ......................................... 2

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) ........................................................ 4

**OTHER MATERIALS**

*Reference Manual on Scientific Evidence* (3d ed. 2011) ........................................................ 3, 6, 7

Defendants Meta Platforms and Within Unlimited respectfully move to strike the opinion of the FTC's economic expert, Dr. Hal Singer, that VR dedicated fitness apps constitute a relevant product market. Dr. Singer blindly relied on Qualtrics for the survey that provides the indispensable basis for his market-definition opinion; such reliance on the expertise of an absent (and undisclosed) expert is impermissible, rendering his entire opinion in support of the FTC's market definition fatally unreliable under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("evidentiary standard set forth in *Daubert*" applies to motions to strike expert testimony); *Avila v. Willits Env't. Remediation Tr.*, 2008 WL 360858, at *16 (N.D. Cal. Feb. 6, 2008) (striking expert testimony that failed to satisfy Rule 702). Furthermore, even if Dr. Singer knew how his survey was implemented, the survey results are so obviously nonsensical that his reliance on that data violates *Daubert* standards.

**ARGUMENT**

Dr. Singer's opinion in support of the FTC's market definition is squarely based on his "hypothetical monopolist test"; indeed, he has admitted that he has offered no market-definition opinion independent of that test. *See* Singer Test. 416:5-418:11. He has likewise conceded – as he must – that his test is based solely on a survey implemented by Qualtrics. Singer Test. 416:5-418:11; 540:16-18 ("I rely on the survey analysis to get the actual loss."); PX0016 ¶¶ 3, 34. His reliance on that survey data violates basic *Daubert* standards for two independent reasons.

*First*, Dr. Singer admits he relied on Qualtrics' survey implementation simply because (Dr. Singer says) Qualtrics is an expert at implementing surveys. Singer Test. 463:20-464:4. The FTC offers no evidence or expert opinion from Qualtrics – or from anyone else – that the survey on which Dr. Singer relies was implemented according to accepted survey principles or that the sample from which Qualtrics drew was representative of the Supernatural users that Dr. Singer said were in his target population. Where, as here, an expert fails to independently verify the validity of underlying data and instead relies on someone else's un-offered, untested, and unadmitted expertise, *Daubert* requires exclusion.

*Second*, the data that Dr. Singer has produced – his survey results – are transparently flawed and unreliable. Nearly every survey respondent submitted multiple answers that reflect either deliberately incorrect answers (perhaps to receive payment for completing the survey) or an inability to understand even basic questions. Dr. Singer offers no justification for waving aside these obviously incorrect answers while trusting the answers on which he relies. Although Dr. Singer repeatedly adverted the 21 respondents who checked all of the boxes on the survey, he did not dispute that 90 respondents said that they regularly use 10 or more fitness applications. Such a result demonstrates that either the results of the survey are nonsense or that the population he reached is so fitness obsessed (and so willing to spend on fitness) that it cannot be considered representative.

Dr. Singer's failure to apply reliable methodology in conducting a hypothetical monopolist test requires excluding his market-definition opinion in its entirety. *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 987-89, 994 (C.D. Cal. 2012).

## I.     Dr. Singer Improperly Relied on Qualtrics' "Expertise" And Failed To Verify Its Data or Methodology

"Case law plainly holds that an expert cannot adopt another's data without verifying its validity and reliability." *York v. Starbucks Corp.*, 2011 WL 8199987, at *14 (C.D. Cal. Nov. 23, 2011); *see Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011) (similar). For similar reasons, "[a]n expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert." *Scantlin v. Gen. Elec. Co.*, 2011 WL 13130835, at *4 (C.D. Cal. Apr. 8, 2011) (quoting *Mooring Cap. Fund, LLC v. Knight*, 388 F. App'x. 814, 821 (10th Cir. 2010)); *see Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) (similar). "[A]n expert whose proffered testimony relies on another expert's theories that have been or may be excluded as unreliable should also be excluded." *San Francisco Baykeeper v. City of Sunnyvale*, --- F. Supp. 3d ---, 2022 WL 4133299, at *10 (N.D. Cal. Sept. 12, 2022) (Davila, J.); *see F.T.C. v. Com. Planet, Inc.*, 642 F. App'x. 680, 682 (9th Cir. 2016) (affirming exclusion of consumer survey where expert did not conduct the survey himself); *Kim v. Benihana, Inc.*, 2022 WL 1601393, at *8 (C.D. Cal. Mar. 25, 2022) (excluding opinion where

expert relied on survey but admitted he "did not even request access to the 'raw' or underlying survey data to assess independently whether" the results were "accurate"); *A & M Recs., Inc. v. Napster, Inc.*, 2000 WL 1170106, at *7-*8 (N.D. Cal. Aug. 10, 2000) (declining to rely on expert who "played a minimal role in overseeing the administration of the survey" and had "limited knowledge of how the[] surveys were conducted").

Exclusion under these standards is required here. During his testimony, Dr. Singer was asked for basic facts about how his survey was implemented, including the panels of people to whom the survey was sent, how the survey panels were selected, how many panels were used, how many companies were involved in implementing the survey, whether those panels were representative of the market he was testing, how many people or Supernatural users ultimately received the survey, what the response rate was, and what incentives recipients were provided to complete the survey. Although he claimed in his expert report that he had "[w]ork[ed] alongside . . . Qualtrics" to "implement[]" the survey, PX0015 ¶ 62, Dr. Singer knew none of these basic facts. *See*, *e.g.*, Singer Test. 465:6-7 ("I don't get to interface with [any third party panel providers]"); *id.* 478:13-14 ("Q. How many received the survey? A. We don't know."); *cf.* Reference Manual on Scientific Evidence 375-76 (3d ed. 2011) ("The secondary expert who gives an opinion about the adequacy and interpretation of a survey not only should have general skills and experience with surveys . . . but also should demonstrate familiarity with . . . the survey being discussed").

Far from establishing familiarity with the survey methodology and implementation, Dr. Singer blindly deferred to Qualtrics. *See* Singer Test. 366:14-17 ("once we have the instrument, we hand it off to Qualtrics . . . they do everything on the back end"). Dr. Singer professed unabashed ignorance regarding the critical determinations of who would be sampled (i.e., which people would actually receive the survey) and how to ensure that the responses were representative. "I'm depending on Qualtrics and the quality of Qualtrics to stand behind its survey results, no matter whether they do it if they're virtually [sic] integrated or if they use third parties." Singer Test. 465:12-14; *see also id*. 468:16-21 ("I've done very little investigation of Cint . . . I can infer that if Qualtrics uses them and Qualtrics is the gold standard, then at least Qualtrics believes that these panel providers are sound and of high quality"). Dr. Singer did nothing to investigate or verify that

3

Qualtrics had employed reliable methods, and his assumptions regarding how the survey was conducted were wrong. *Compare* Singer Test. 466:8-10 ("Q. Were you aware that Qualtrics does not maintain its own panels of survey respondents? . . . A. That it fully outsources? I'm not aware of that.") *and* Singer Test. 465:24-466:7 ("I was uncertain as to how many [panels] they used" *with* DX1317 (Qualtrics email explaining that "Qualtrics does not maintain its own panels of survey respondents" and instead "engaged three panel firms to implement Econ One's survey") *and* DX1325 ¶ 5 (Qualtrics declaration stating: "Qualtrics does not maintain its own panels of survey respondents but instead subcontracts these services to third parties to fulfil[l] customer requests"). Dr. Singer did not know how participants were compensated. Singer Test. 483:10-11. Indeed, Dr. Singer never spoke to Qualtrics at all. Singer Test. 464:22-23 ("I have a project manager and she is the person who interacts with Qualtrics."). Such lack of rigor is impermissible. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014) (explaining that an expert cannot adopt another's data without verifying its validity and reliability).

If Dr. Singer and the FTC wished to rely on Qualtrics' alleged expertise, they should have disclosed that expert. That would have given Meta the opportunity to obtain discovery into the survey methodology and implementation, so that it could investigate and "direct[ly] challenge" the survey's reliability. *See Sound View Innovations, LLC v. Hulu, LLC*, 2019 WL 9047211, at *14 (C.D. Cal. Nov. 18, 2019), *aff'd*, 33 F.4th 1326 (Fed. Cir. 2022) (expert "cannot rely on the undisclosed opinion of another expert to support his analysis"); *see also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012) ("An expert's lack of familiarity with the methods and the reasons underlying someone else's projections virtually precludes any assessment of the validity of the projections through cross-examination."). Making matters worse, Dr. Singer does not even assert that Qualtrics ever claimed – much less provided any documentation to establish – that it had obtained reliable responses from a representative sample of Supernatural subscribers. Regardless, Dr. Singer should not be permitted deflect questions about the survey by pointing to the Qualtrics black box.

As in *Kim*, where an expert improperly relied on another expert's summary of a survey without validating the survey data for himself, Dr. Singer's opinion based on the Qualtrics survey

should be excluded.  *See* 2022 WL 1601393, at *8; *see also A & M Recs., Inc.*, 2000 WL 1170106, at *7-*8; Singer Test. 416:5-418:11 (no market definition opinion without survey); PX0016 ¶¶ 3, 34 (same).

## II. Dr. Singer's Survey is Facially Unreliable

Independently of Dr. Singer's improper deference to the expertise of Qualtrics, Dr. Singer's opinions based on the survey should be struck because the survey's results are unreliable on their face.

For a survey to be admissible, the proponent must show it to be (1) "conducted according to accepted principles" and (2) "relevant" to the issues in the case.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1036 (9th Cir. 2010).  A survey should be excluded as unreliable if it "suffer[s] from serious methodological flaws."  *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005); *In re: Autozone, Inc.*, 2016 WL 4208200, at *16 (N.D. Cal. Aug. 10, 2016) ("[S]ubstantial deficiencies in the design or execution of a survey of individuals is grounds for its complete exclusion."), *aff'd* 789 F. App'x 9 (9th Cir. 2019); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005) (affirming exclusion where "the survey's creator did not qualify as an expert on designing or analyzing consumer surveys," and the expert failed to show that "the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner.").  Where, as here, the proposed testimony is based on data collected from a survey, the admissibility of the survey is dispositive of the admissibility of the testimony.  *NetAirus Techs., LLC v. Apple, Inc.*, 2013 WL 12322092, at *6 (C.D. Cal. Oct. 23, 2013).

A simple tally of the answers demonstrates Dr. Singer's survey to be thoroughly unreliable. For example, 21 of the survey respondents said that they use all 27 branded fitness products in the survey more than once a month – nearly a physical impossibility, which Dr. Singer admits is implausible.  Singer Test. 504:4-8; 512:10-14; *see also id.* 504:10-25; 507:21-508:1; 509:18-24; 511:9-16; 513:5-514:1.  Effectively acknowledging that these responses need to be thrown out, Dr. Singer asserts that it does not change his results.  Singer Test. 537:5-10.  But he presented no basis for that ipse dixit, and he elsewhere insisted that 150 survey respondents was the minimum

5

required.  *See* Singer Test. 454:21-25 ("So we did the math . . . that told us that we needed to get to 150 in order to say something . . . to make an extrapolation to the population of Supernatural users").  Moreover, Dr. Singer never claimed that he could defend his results if more than the 21 were dropped, yet he did not dispute that 48 respondents said that they regularly used (and paid the subscription for, *see* PX0015 App. 3) an "Icaros," a device that Dr. Singer had never heard of. Singer Test. 506:9-22.  He did not dispute that 43 respondents said that they used (and paid the subscription for) two different connected rowing machines.  Singer Test. 522:14-16.  He did not dispute that 37 respondents said that they used (and paid the subscriptions for) three different connected fitness bikes.  Singer Test. 522:10-13.  And he did not dispute that 90 of the respondents – 60% of the sample – claimed to use 10 or more fitness products more than once a month.  Singer Test. 523:1-4.

   Dr. Singer tried to deflect this critique by repeatedly claiming that only 21 of the responses to his survey were unreliable (*see, e.g.*, Singer Test. 484:19-485:3; 487:6-17; 507:11-15; 510:23-511:3; 525:22-526:7), but in fact a substantial *majority* of his responses included responses that were incredible on their face.  Courts exclude surveys predicated on impossible responses because such responses, particularly on the scale present here, illustrate that the data is fundamentally unreliable.  *See*, *e.g.*, *Casey v. Home Depot*, 2016 WL 7479347, at *17 (C.D. Cal. Sept. 15, 2016) (excluding survey where respondents provided "inconsistent" responses); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 950-51 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (excluding where answers "indicate[] some misunderstanding among the survey respondents").

   Dr. Singer provides no reason why the court should trust *any* of his survey responses given their obvious lack of credibility – including in responses to the only questions indicating whether the respondent actually subscribes to Supernatural.  Instead, Dr. Singer says we "just have to assume that [respondents are] telling the truth."  Singer Test. 539:16-17.  Courts disagree.  *See, e.g.*, *NetAirus Techs.*, 2013 WL 12322092, at *5 ("A survey that generates answers from respondents who have no basis to provide them is not one conducted according to accepted principles.") (citing Reference Manual on Scientific Evidence 386 (3d ed. 2011)); *see also* Singer Test. 538:15-16

("They could have been confused by the question. They could have been liars."). Some methodological deficiencies may affect the weight of the survey and not its admissibility, "*so long as the data are reliable.*" *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *4 (N.D. Cal. Apr. 7, 2011) (emphasis in original), *aff'd*, 521 F. App'x. 592 (9th Cir. 2013). Here, where a majority of respondents offered highly implausible answers, the survey – and Dr. Singer's market definition testimony – warrants exclusion. *See AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 339 (N.D.N.Y. 2021) (excluding expert when "the data relied on by [the] expert [was] so patently unreliable as to render it inadmissible").

Moreover, even on the assumption that Dr. Singer somehow reached a sample of 150 Supernatural users that included 90 people who regularly use *and pay for* 9 other fitness products, his sample would be so plainly unrepresentative as to make his results irrelevant. A user who pays hundreds of dollars a month for fitness products will be far more willing to accept a $1 price increase on one of those products than a typical fitness struggler who pays $19 per month for just one. It is Dr. Singer's burden to establish the representativeness of the survey sample. *See Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 485 (C.D. Cal. 2008) ("Even when one begins [a survey] with a random sample, one should take measures to assure that nonresponses are random and provide analysis of the reasons of nonresponse."), *aff'd*, 639 F.3d 942 (9th Cir. 2011). His failure to ensure the representativeness of the sample, or explain how he has preserved his survey's integrity despite nonrepresentativeness, neglects basic accepted principles of survey conduct and warrants striking his opinion. *See Autozone,* 2016 WL 4208200, at *17-*19 (excluding survey where expert failed to account for representativeness, low response rate, and non-response bias, among other requirements); *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2010 WL 11478992, at *14 (N.D. Cal. July 21, 2010), *aff'd*, 525 F. App'x 612 (9th Cir. 2013); *NetAirus Techs.*, 2013 WL 12322092, at *4 (excluding where "[t]he survey did not take measures to adjust for response rates to balance the gender of [the] respondents"); *see also* Reference Manual on Scientific Evidence 383 (3d ed. 2011) ("It is incumbent on the expert presenting the survey results to analyze the level and sources of nonresponse, and to assess how that nonresponse is likely to have affected the results.").

## **CONCLUSION**

Defendants' motion to strike should be granted.

| | | |
|---|---|---|
| 1 | DATED:  December 15, 2022 | Respectfully submitted, |
| 2 | | By: /s/ *Mark C. Hansen* |
| 3 | Christopher J. Cox (Bar No. 151650) | Mark C. Hansen (*pro hac vice*) |
| | HOGAN LOVELLS US LLP | Aaron M. Panner (*pro hac vice*) |
| 4 | 855 Main Street, Suite 200 | KELLOGG, HANSEN, TODD, FIGEL & |
| 5 | Redwood City, CA 94063 | FREDERICK, P.L.L.C. |
| | Telephone:  (650) 463-4000 | 1615 M Street, NW, Suite 400 |
| 6 | Facsimile:  (650) 463-4199 | Washington, DC 20036 |
| | chris.cox@hoganlovells.com | Telephone:  (202) 326-7900 |
| 7 | | Facsimile:  (202) 326-7999 |
| | Lauren Battaglia (*pro hac vice*) | mhansen@kellogghansen.com |
| 8 | Logan M. Breed (*pro hac vice*) | apanner@kellogghansen.com |
| 9 | Benjamin Holt (*pro hac vice*) | Bambo Obaro (Bar No. 267683) |
| | Charles A. Loughlin (*pro hac vice*) | WEIL, GOTSHAL & MANGES LLP |
| 10 | HOGAN LOVELLS US LLP | 201 Redwood Shores Parkway, 6th Floor |
| | Columbia Square | Redwood Shores, CA 94065-1134 |
| 11 | 555 Thirteenth Street, NW | Telephone:  (650) 802-3000 |
| 12 | Washington, DC 20004 | Facsimile:  (650) 802-3100 |
| | Telephone:  (202) 637-5600 | bambo.obaro@weil.com |
| 13 | Facsimile:  (202) 637-5910 | |
| | lauren.battaglia@hoganlovells.com | Michael Moiseyev (*pro hac vice*) |
| 14 | logan.breed@hoganlovells.com | Chantale Fiebig (*pro hac vice*) |
| | benjamin.holt@hoganlovells.com | WEIL, GOTSHAL & MANGES LLP |
| 15 | chuck.loughlin@hoganlovells.com | 2001 M Street, NW, Suite 600 |
| 16 | *Counsel for Defendant Within Unlimited, Inc.* | Washington, DC 20036 |
| | | Telephone:  (202) 682-7000 |
| 17 | | Facsimile:  (202) 857-0940 |
| | | michael.moiseyev@weil.com |
| 18 | | chantale.fiebig@weil.com |
| 19 | | Liz Ryan (*pro hac vice*) |
| | | WEIL, GOTSHAL & MANGES LLP |
| 20 | | 200 Crescent Court, Suite 300 |
| 21 | | Dallas, TX 75201 |
| | | Telephone:  (214) 746-8158 |
| 22 | | liz.ryan@weil.com |
| 23 | | Eric S. Hochstadt (*pro hac vice*) |
| | | WEIL, GOTSHAL & MANGES LLP |
| 24 | | 767 Fifth Avenue |
| | | New York, NY 10153 |
| 25 | | Telephone:  (212) 310-8000 |
| 26 | | Facsimile:  (212) 310-8007 |
| | | eric.hochstadt@weil.com |
| 27 | | *Counsel for Defendant Meta Platforms, Inc.* |
| 28 | | |